Gloria Juarez, California State Bar No. 109115
**LAW OFFICES OF GLORIA JUAREZ**
P.O. Box 4591
Montebello, CA  90640-9310
Tel: 213-598-4439
Fax: 714-919-0254
Email: gloria@thegjlaw.com
        tootsieglo@sbcglobal.net
ATTORNEYS FOR RELATOR EMILY ROE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA; <br> and <br> THE STATE OF CALIFORNIA*;* <br> *ex. Relator* Emily Roe., an individual; <br> Plaintiffs, <br><br> vs. <br><br> STANFORD HEALTHCARE BILLING DEPARTMENT, STANFORD HEALTH CARE (FORMERLY KNOWN AS STANFORD HOSPITALS AND CLINICS), DR. FREDERICK DIRBAS, DEBRA ZUMWALT, THE BOARD OF DIRECTORS OF THE STANFORD HEALTH CARE, THE BOARD OF DIRECTORS OF THE LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, THE LELAND JUNIOR UNIVERSITY, THE BOARD OF TRUSTEES OF STANFORD UNIVERSITY, STANFORD HEALTH CARE ADVANTAGE,  and DOES 1-10, inclusive, <br><br> Defendants. | **Case No.: CV17-08726-DSF(AFMx)** <br> JUDGE:  Hon. Dale S. Fischer <br><br><br> **RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; DECLARATIONS OF GLORIA JUAREZ AND EMILY ROE IN SUPPORT THEREOF** <br><br> [Filed herewith Notice of Lodgment of Exhibit] <br><br><br> HEARING DATE: February 10, 2020 <br> TIME:            1:30 p.m. <br> CTRM:     7D (First Street Courthouse) <br>             350 West 1st Street <br>             Los Angeles, CA 90012 <br><br> Complaint Filed:          Dec. 4, 2017 <br> First Amended Complaint: June 22, 2018 <br> FAC *Unsealed*:            July 30, 2019 |

i

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

I.   Summary of Opposition to Motion To Dismiss…………………………..…..…....1

   •   There are Legally Sufficient *Substantive* Basis to Deny the Motion
       Because Moving Parties' Pleading References Factual Matters Not
       in the Record …………..…………………………………………………....1

   •   There *are* Substantial *Statutory* Basis to Deny the Motion to Dismiss………..2

   •   There are Further *Procedural* Basis to Deny the Motion Because Moving
       Parties' Motion to Dismiss Could Have Been Largely Avoided If The
       Parties Conferred With Specificity. (As Required Under Local Rule 7−3)……..3

II.   Background ………………....………………………………………………....5

III   Procedural History ……………………………………………………………...6

IV.   Legal Statutes governing False Claims Acts …………...…….….………….......8

       A. False Claims Acts (FCA) 31 U.S.C. §3730. ………..……….… ………...8

       B. False Claims Encourages Private Enforcement of Suits §3730(b)(2)………9

       C. Goal of FCA Provisions is to Augment the DOJ's Limited Resources…….9

       D. The Penalties for FCA Violations are Severe. ………… …………………..9

       E. The Government's Notice To Decline Intervention Has No Bearing on the
       Merit Of A False Claims Act . The Notice Simply Authorizes Relator to Take
       Over Nearly All Aspects of the Case Except Settlement or Dismissal………...9

V.   Legal Standard for Motion to Dismiss ………..…………………………..10

       A.  At This Point in the Litigation Relators' Amended Complaint Meets All
       Applicable Standards To Survive Defendants' Motions to Dismiss…………..11

       B.  Defendants Have Routinely Prejudicially and Improperly Referenced Non-
       Intervention in Their Pleadings and This Should Cease ………………………11

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

VI.    The Public Disclosure Bar Does Not Apply to Plaintiffs FCA Claims…………12

     A.  The Correct Version of the Law is the 2010 Version……………………13

     B.  The Public Disclosure Bar is No Longer Jurisdictional…………………13

     C.  The Definition of Public Disclosure was Narrowed in the Post-2010 Amendments. …………………………………………………………….....14

     D.  The 'Public Disclosures' Are Not Substantially the Same as Alleged in the Complaint……………………………………………………………....15

     E.  The Relator is the Original Source……………………………………18

     F.  "FOIA" Requests Do Not *Disqualify* an Original Source Claimant……..19

VII.   Relator Has Sufficiently Alleged Falsity ……………………………….....21

     A. The First Amended Complaint Contains Sufficient Allegations of Falsity …………………………………………………………………………21

     B. Relator's Claims Clearly Allege an Objective Falsehood…………………23

VIII.  Relator has Sufficnetly Alleged that Defendants Violated the FCA Under the Alter Ego Theory.  Alternatively, the Court Should Grant Relators Leave to Amend if  Need Be……………………………………………………… …..27

IX.    Conclusion…………….…………………………………………………...25

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**

2 <u>**Case Law**</u>

3 *A-1 Ambulance Service, Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000)...15

4 *Ashcroft v. Iqbal,* 556 U.S 662, 687 (2009) ………………………………….10

5 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ……………………10

6 *Berg v. Honeywell Int'l, Inc.*, 502 F. App'x 674, 677 (9th Cir. 2012).  ………..14,23

7 *Bly- Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ………………..21

8 *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)……....22

9 *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996)….15

10 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ……………………………..10

11 *Rockwell Int'l Corp,* 127 S. Ct. 1397, 1407 (2007) ………………………………10

12 *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) …………………………10

13 *Siebert v. Gene Sec. Network, Inc.*, No. 11–cv–01987–JST,

14     2013 WL 3052882, *2 (N.D. Cal. June 17, 2013) …………………………10

15 *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

16     *cert. denied,* 132 S. Ct. 2101 (2012) ………..………………..………10

17 *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) …………………11

18 *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994) …..7

19 *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,

20     245 F.3d 1048, 1052 (9th Cir. 2001)……………………………..…..11

21 *U.S. v. Halifax Hosp.  Med. Ctr.*, No. 6:09-cv-1002-Orl-31DAB,

    2012 WL 921147(M.D. Fla. 2012).……………….……………… ………11

22 *U.S. ex rel. Manion v. St. Luke's Regional Medical Center,*

    *Ltd.*, No. CV 06-498-S-EJL, 2008 WL 906022 (D. Idaho 2008) ………..11

23 *U.S. ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672,

24     2012 WL 6645537, *144 n. 3 (E.D. Pa. 2012)………………………... …12

25 *U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*,

    417 F.3d 450, 455 (5th Cir. 2005)  ………………..………………12

26 *U.S. ex rel. May & Radcliffe v. Purdue Pharma L.P.*,

    737 F.3d 908, at 917 (4th Cir. 2013) ……………………………… 14

27

28

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

*U.S. ex rel. Schumer v. Hughes Aircraft*, 63 F.3d 1512 (9th Cir.  1995) ………………16

*U.S. ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1189 (9th Cir. 2001) … …....16

*United States v. Aurora Las Encinas, LLC, et al.*,

      No. CV 10-01031 (C.D. Cal. Apr. 12, 2013) ………………………..………16

*United States v. Catholic Healthcare*, 445 F.3d 1147, 1152 (9th Cir. 2006) …………...16

S*chindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885 (2011). ……………....16

U.*S. ex rel. Assoc. Against Outlier Fraud v. Huron*,

      09-CV-1800, 2012 U.S. Dist. LEXIS 19858 (S.D.N.Y. Feb. 16, 2012) ……...19

*U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*,

      324 F.3d 492, 495 (7th Cir. 2003) …………………………………………17

*U.S. ex rel. Babushka v. Crane Co.*, 40 F.3d 1509, 1512 (8th Cir. 1994). ………………17

*U.S. ex rel.  Adams  v.  Wells  Fargo Bank, N.A.*,

      No. 2:11–cv–00535–RCJ–PAL,  2013 WL 6506732,

      *5 (D. Nev. Dec. 11, 2013)……. ………………………………………… 19

*U.S. ex rel. Lamers v. City of Green Bay* 168 F.3d 1013, 1018 (7th Cir. 1999)…...........19

*U.S. ex rel. Harmon v. Trinity,* No. 2:12- CV-00089-JRG,

      2014 WL 47258 (E.D. Tex Jan. 6, 2014) …………………………………20

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*

637 F.3d 1047 (9th Cir. 2011) ………………………………………………..21

**Other References**

*See* https://www.supremecourt.gov/opinions/16pdf/15-513_43j7.pdf

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

**STATUTES**

31 U.S.C. 3730(e)(4)(B)

31 U.S.C. § 3729

31 U.S.C. § 3730(b)

31 U.S.C. ' 3730(d)

31 U.S.C. § 3730(c)(3)

31 U.S.C. § 3730(b)(1)

31 U.S.C. ' 3730(d)

31 U.S.C. § 3730(b)(2) and (3)

31 U.S.C. § 3730

31 U.S.C. § 3730(b)(1)

31 U.S.C. §3730(e)(4)(A) (2010)

31 U.S.C. 3730(e)(4)(B)


**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 9

Rule 12

Rule 12(b)(6)

Fed. Rules of Civ. P. 41(a)(1)(A)(i)


**LOCAL RULES**

Rule 7−3


**CALIFORNIA STATUTES**

Cal. Insurance Code § 1871

 Cal. Gov't Code §§ 12650-12656

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Relator Emily Roe submits this RESPONSE to Defendants Debra Zumwalt, Stanford Healthcare ("SHC"), The Leland [Stanford] Junior University, and Stanford Healthcare Advantage ("SHCA") (hereinafter collectively "Defendants") Rule 12 (b)(6) "Motion to Dismiss" (hereinafter "MTD") this action. Relator respectfully requests that this Court *deny* Defendants' *legally insufficient MTD* because of the following Substantive, Statutory, and Procedural defects.

**There are Legally Sufficient *Substantive* Basis to Deny the Motion to Dismiss Because Moving Parties' Pleading References Substantial Factual Matters Not in The Record.**

(1) Defendants have made phantom references to the court record in their Motion to Dismiss, and in many instances prejudicial blatant fabrications of the truth. (Mot. 23:7)

(2) First, Defendants misrepresent to the court that "state and federal agencies" have declined to intervene "five separate times", which is untrue. The United States declined to intervene in 2018 and 2019 (after the First Amended Complaint, hereinafter "FAC"), and the State declined. That is not 5 declinations. (Motion 1:24)

(3) Second, Defendants also misrepresent to the court that the complaint has been amended twice, and that the court should not allow a "third amendment" which is patently untrue. There has clearly only been one amendment to the Complaint. (Motion 25:4) (*See* Exh. "W", Complaint filed on Dec. 4, 2017)

(4) Then, Defendants further misrepresent to the court that "*Relator expressly defines all 19 listed Defendants as "Stanford*" and then attempts to make fraud allegations against the entire group [19]", which is also untrue. There are not nineteen ("**19**") Defendants, by any stretch. (Motion 19:26)

(5) Fourth, Defendants again <u>misrepresent</u> that Relator's own surgical and billing records are "public" and "legally irrelevant", and that Exhibits[1] to the Complaint [FAC] are all "publicly" available thus the "public disclosure bar", which are also <u>untrue</u>. The California Constitution Article 1, Sect. 1 grants that medical and financial records are "non-public" therefore, Relator's *own* billing and insurance ledgers do not meet the "public disclosure bar" asserted by Defendants. (Mot. 6:21-28).

(6) Finally, Defendants <u>misrepresent</u> that Defendant Debra Zumwalt is "*uninvolved*" in Defendants' business operations and that the FAC is an "*impermissible nuisance*" because she is only "general counsel". However, the FAC details Ms. Zumwalt's direct role as a billing compliance officer, her falsity conduct, and names Zumwalt no less than 44 times. Zumwalt's June 6, 2018 dated correspondence specifically as to "Stanford" healthcare revenues is attached as Exhibit "Z". Zumwalt is not "*uninvolved*". (*See* MTD. 22:24-28) (Decl. Juarez ¶24)

**<u>There are Also Substantial *Statutory* Basis to Deny the Motion to Dismiss.</u>**

(7) Defendants seek to dismiss the FAC based on Defendants' misstatements of "original source". Pursuant to 31 U.S.C. 3730(e)(4)(B), Relator is the "original source" of the information and has "direct and independent knowledge" of the information underlying the allegations in the lawsuit, rather than information based on prior "public disclosure". *Rockwell Int'l Corp,* 127 S. Ct. 1397, 1407 (2007). (*See* FAC ¶¶182-188)

(8) U.S.C. 3279 does not in any manner prohibit <u>informal discovery</u>, as was the source of the *additional* paragraphs and exhibits in the FAC, filed on June 22, 2018. Here however, there is no ambiguity that (1) Relator had a direct and *previous* personal relationship with Defendants through her tenure as a Stanford patient (whereby she gathered exemplars of Defendants' upcoding patterns), or (2) Realtor's training and standing as a practicing surgeon and medical coder, and first-hand knowledge of

---

[1] Pursuant to Fed. Rule Civ. P. 26(a) parties may obtain and produce most of what would otherwise be produced in the early stages of discovery.

**RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Stanford's healthcare billing schemes,  all qualify Relator as an "original source" to the government. (*See* FAC ¶38, 39, 77, and ¶¶179-187) (Decl. Roe ¶¶3-6)

(9) Pursuant to 31 U.S.C. § 3730(c)(3) since the "Government elected not to proceed with the action, the person who initiated the action [Relator] shall have the right to conduct the action". Notably, 31 U.S.C. § 3730(b)(1) authorizes the qui tam Relator to maintain this action in the name of the U.S., the real party in interest.  Relator is sanctioned to incur and advance all costs and legal fees in this action. The legislature clearly intends that *many* filed FCA cases are litigated by non-government parties on behalf of the government.[2]

**There are Legally Sufficient *Procedural* Basis to Deny the Motion Because Moving Parties' Rule 12 (6)(b) Motion to Dismiss Could Have Been Largely Avoided if The Parties Met and Conferred With Specificity (As Required Under Local Rule 7−3).**

(10)   Defendants failed to meet their burden to meet and confer pursuant to Local Rule 7-3[3], or with *any* specificity under Fed. Rule Civ. P. 12(b)(6), as to the actual basis which with they have now moved the court to dismiss.

(11)   Stanford's MTD generally speaking  lists 3 assertions to dismiss under Rule 12(b)(6) ("original source"/"public disclosure bar",  jurisdictional challenge, and claims as to each Defendant), but essentially none of what Stanford actually alleges in

---

[2] District courts are aware that since on or about January 2018, the Department of Justice (DOJ) is intervening on a minute fraction of FCA cases under the current Trump administration. On point here, is that the DOJ's offices and attorneys have much been reduced and been subject to multiple "furloughs". (Decl. Juarez ¶12) (See (Exh.  H)

Defendants' attempt to misconstrue the DOJ's declination to intervene in this case appears misguided, if not in bad faith as discussed *infra.*

Moreover, pursuant to the Granston  memo, the government is empowered to move to dismiss frivolous or unmeritorious FCA cases pursuant to 31 U.S.C §3730 (c)(2)(A). (See Decl. Juarez ¶13, Exhibit "G").   https://assets.documentcloud.org/documents/4358602/Memo-for-Evaluating-Dismissal-Pursuant-to-31-U-S.pdf) The Government has explicitly stated in this case that it does not wish to move to dismiss this action, which has now been before the DOJ for more than 2 years. In fact, the investigation having now fully confirmed the fraud allegations, the DOJ stated on November 1, 2019  that it is "continuing to monitor this case and can seek to intervene is appropriate (after declination)".  (Decl. Juarez ¶14) (See Exh. "F", DOJ letter from Frank Kortum)

[3] Local Rule 7−3, requires counsel to engage in a pre−filing conference "to discuss thoroughly. . . the substance of the contemplated motion and any potential resolution."

3

its boilerplate MTD were ever in Stanford's MTD correspondence to Relator. (Decl. Juarez ¶ 11) (See Exh. "E" Jan. 3, 2020 Letter)

(12)   What Stanford <u>actually</u> stated in its correspondence to Relator as basis for its MTD was "*failure to identify relator*" which was not applicable to Rule 12 (b)(6).   In fact, Defendants' most relevant correspondence which is four <u>(4) days</u> before they filed their MTD stated "*a motion we intend to file*" and only seeking "*the basis of the motion is that the case should be dismissed under Rule 10(a) because the Relator is not identified*". However, that was not cited even once in the MTD (*See* Exh. "E" )

(13)   Defendants failed to raise at any time before filing their MTD, any perceived defects as to the "original source bar" in the complaint. Moreover, should Defendants have believed there was such a specific defect, they did not communicate that to Relator.  Even if Defendants had communicated that reasonably, there is no explanation why Defendants failed to correspond in any manner as to any disputes which could be easily corrected by amendment.

(14)   In most instances the parties would agree to any amendment that would cure the alleged defect. Relator in fact suggested that *after* parties' planned January 6th, 2020 meeting, if there were disputes as to the FAC there could be a stipulation of parties *if necessary,* to narrowly tailor the remaining allegations. Defendants declined to discuss. Defendants then cancelled the January 6, 2020 Los Angeles meeting at the 11th hour. (Decl. Juarez ¶17) (*See* Exh. "C" Rel. 12/31/19 Letter)

(15)   Although Local Rule 7-3 and general principles require "defendant's counsel clearly articulate with specify contentions as to the deficiencies in the complaint", and that "plaintiff's counsel carefully evaluate the same", Defendants here failed in entirety to comply with this practice.  Hence, Defendants  arguably lack standing to have filed the Motion, or herein seek the Court's order to dismiss. Hence Defendant's Motion is *arguendo* also premature at best and could foreseeably for the reasons described herein be *denied with prejudice*.

(16)   Defendants appear to have surreptitiously filed their MTD as an afterthought which struck on January 7, 2020. Defendants failed to meet and confer or list even a *single* meaningful discussion as relevant to the MTD. Instead, Defendants' correspondence ("meet and confer") as to a motion to dismiss is entirely disjointed from their actual Motion. (*See* Decl. Juarez ¶11, and Exh. "E").

**<u>Based on the foregoing</u>**, Defendants' motion should also be either *denied*, or deemed *moot for extreme lack of compliance with Local Rule 7-3.*  Accordingly, responding party respectfully requests that the Court *deny* Stanford's motion *with prejudice*, and grant such other and further relief, including but not limited to an award of costs and reasonable attorneys' fees, to which responding party may be entitled.

## II.   BACKGROUND

This is a very interesting and meritorious False Claims Action (herein "FCA"), brought on behalf of co-Plaintiffs, the United States of America ("hereinafter "U.S.") the State of California (hereinafter "State"), (herein collectively "Plaintiffs") against Defendants Stanford *et al.* for false and fraudulent healthcare billings spanning a decade. This case was filed on behalf of Plaintiffs, *ex relatione* Relator Emily Roe pursuant to the Civil FCA including 31 U.S.C.§§ 3729-33 and   Cal. Gov't Code §§ 12650-12656.

The FAC alleges that Defendants' collective fraud conduct is blackboarded to have cost taxpayers and the public shy of half a billion dollars per annum in unjust enrichment. (FAC ¶32)

The FAC alleges that billers improperly and aggressively scrubbed claims, used "cheat sheets", and employed institutional-wide schemes to appeal properly denied claims. Defendants, a purported "non-profit", are not only one of the top 3 most profitable hospitals in the U.S., but they employ in excess of <u>300 billing staff</u> for their 613 bed hospital.  Using artifice, Defendants reported a hefty $4.5 billion-dollar earnings in 2016

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

(statistically equates to an *astonishing* $7.3 million dollars in revenues per hospital bed per year) [4]. (*See* FAC ¶¶3:7, 31)

The FAC summarizes 5 key fraud schemes by Defendants and provides exemplars of each scheme whereby Defendants did the following knowingly of their falsity, or blatant disregard for the truth: (1) Unbundled and billed pre-operative visits in violation of global surgery rules; (2) Upcoded units of surgical supplies and medical goods; (3) Unbundled and upcoded pathology codes where they billed multiple units instead of one; (4) Upcoded office visit codes to the highest level paying codes; 5) Upcoded and improperly billed physician assistants ("PA") services as medical doctors (M.D.).(*See* FAC ¶7)

The FAC alleges that Defendants instructed their medical billers and coders to always bill at the maximum level and fees, regardless of the lack of substantiating medical record, reasonableness, or medical necessity. The FAC also alleges that Defendants aggressively billed, upcoded, and then pursue denied claims *vis-a vis* appeals for denied claims. (*See* FAC ¶ 3) (*See* Decl. Gaines, generally)

The FAC details that when Stanford fraudulently billed the government for M.D. services provided by a PA, it did so with blatant disregard for the truth and to obtain unjust enrichment of 15-20% more per claim.(*See* FAC ¶ 205) Relator describes that her own knowledge and interaction with Stanford PAs as the "original source" basis to investigate why Defendants' PAs were not properly billing under their own name, or why a full-time surgical PA had annual billings of $195 in her own name. (*See* FAC ¶¶197-203)

Relator shared this information through a disclosure statement to all government Plaintiffs on or about November 26, 2017. (*See* FAC ¶107, 108, and Decl. Roe ¶¶3-7)

Moreover, Relator's "original information" of examination of her own and family's claims showed that Defendants' billings were contrary to the medical records, and the records were contrary to the services provided. (*See* FAC ¶¶88-90)

### III.   PROCEDURAL HISTORY

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

On <u>December 4, 2017</u> this FCA was filed under seal and served only on Plaintiffs pursuant to 31 U.S.C. § 3730(b)(2) and (3). (*See* Doc. No. 1,  Exh. "W") The action remained under seal pursuant to U.S.C. § 3279 *during* statutory review by Plaintiffs. Plaintiffs and Relator have met and conferred regularly since case inception, and worked courteously, cooperatively, and with civility[5] in this case. (Decl. Juarez ¶2)

 Pursuant to the federal False Claims Act, 31 U.S.C. § 3730(b)(4)(B), on April 4, 2018 the United States of America (hereinafter "U.S.") notified the Court of its decision not to intervene *without prejudice* in the above captioned action. (*See* Doc. No. 12)

<u>On June 22, 2018</u> the FAC was then filed which demonstrated expanded fraud and abuse patterns, as well as added a cause of action pursuant to Cal. Gov't Code §§§ 12650-12656 for Medi-Cal Claims.  (*See* Docket No. 15)

Accordingly, the U.S. requested enlargement of the seal pursuant to U.S.C. 3279 *et. seq.* to evaluate the FAC.[6] Parties stipulated to an extension of the seal.  On Feb. 13, 2019 the Court ordered enlargement of the seal to July 30, 2019. (*See* Doc. No. 27)

On July 16, 2019 the U.S. filed its further notice of election to decline intervention *without prejudice*.  (*See*  Docket No. 30)  Nevertheless, the U.S. has requested to be served on all pleadings and orders in this action, and remains a real party in interest in the federal FCA claim, entitled to joinder the Complaint at any time, participate in settlement discussions with the parties, file a Complaint-in-intervention, and share in any recovery that may be obtained. 31 U.S.C. ' 3730(d); *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994). (*See* Exh. "F", DOJ communication of interest)

On <u>July 30, 2019</u> the case was unsealed by stipulation of Plaintiffs, and Order of this court as reflected in Docket Entry No. 32.  Since that time, Relator and Plaintiffs have

---

[5] Justice Bedsworth of the Fourth Appellate District quoted on our profession's best practices of "cooperation, courtesy, and civility".

[6] Defendants' healthcare <u>fraud</u> has been *confirmed* by the investigating government entities, and the only dispute remains as to the total dollar amount of the fraud and per claim penalties pursuant to U.S.C 3279. (Decl. Juarez ¶25)

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

been in substantial discussions and have meaningfully met and conferred. Therefore, on December 4, 2019 in order to narrowly tailor the claims in this Federal District to the U.S.C. 3279 (Medicare) and Cal. Gov't Code §§§ 12650-12656 State (Medi-Cal) claims, parties stipulated thereto and Relator noticed a voluntary dismissal *without prejudice* the Second Cause of Action ("Violation of Cal. Insurance Code § 1871 et seq") pursuant to Fed. Rules of Civ. P. 41(a)(1)(A)(i). (Parties had not previously dismissed any state or federal court action based on the same claims against Defendants.)

On December 17, 2019 Defendants were personally served the Summons and Complaint (FAC). (*See* Docket No. 47) Notwithstanding that all Defendants are either known employees, agents, departments, and/or alter egos of Defendants whose agent of process is Debra Zumwalt, five[7] have knowingly attempted to evade service.

On December 31, 2019, in the interest of facilitating informal resolution of parties' disputes, Relator offered to again execute the Rule 4 waiver of service, as requested by Defendants. In Defendants' correspondence setting an in-person meeting for the week of Jan. 6, 2020, Defendants stated intention to meaningfully discuss the case allegations in the Complaint, and possible intent to "mediate". (Decl. Juarez ¶10) (*See* Exh. "A" (CDI letter) and Exh. "B" Dec 16, 2019 letter to mediate) However, as of the date of Relator's filing today, no such response as referenced above has been made by Defendants.

While Relator was awaiting the Rule 4 waiver, Defendants surreptitiously filed their Motion to Dismiss on January 7, 2020. (*See* Doc. No. 42) Accordingly, Relator only then filed the proof of service of Summons. (*See* Docket No. 46 & 47) (Decl. Juarez ¶29)

## IV.   LEGAL STATUTES GOVERNING FALSE CLAIMS ACTS
### A. **False Claims Acts (FCA) 31 U.S.C. § 3730**

---

[7] Defendants who have been evading service since mid-December 2019 include Dr. Fred Dirbas, Stanford Healthcare Billing, The Board of Directors of the Stanford Health Care, and The Board of Directors of the Lucile Salter Packard Children's Hospital at Stanford.

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

In brief,  31 U.S.C. § 3730(b) allows a private party ("relator") to bring a civil action on behalf of the government against any party who has submitted false or fraudulent claims to the government, which is a violation of 31 U.S.C. § 3729.

**B. <u>False Claims Encourages Private Enforcement of Suits.</u>**

 "This result is also consistent with the general purpose of §3730(b)(2), which was enacted as part of a set of reforms meant to "encourage more private enforcement suits," and which was intended to protect the Government's interests, allaying its concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation. It would thus make little sense to adopt a rigid interpretation that prejudices the Government by depriving it of needed assistance from private parties. Pp. 6–7." (*See* https://www.supremecourt.gov/opinions/16pdf/15-513_43j7.pdf)

**C. <u>Goal of FCA Provisions is to Augment the DOJ's Limited Resources.</u>**

The FCA *encourages* private enforcement suits for fraud and imposes civil liability for knowingly submitting to the federal government a false or claim for payment, or a false record or statement that is material to a false or fraudulent claim.  31 U.S.C. § 3730 allow private parties to file an FCA action "for" and "in the name of" the United States.

**D. <u>The Penalties for FCA Violations Are Severe.</u>**

 FCA defendants can be liable for treble damages ($10,000 per false claim), plus hefty civil penalties, plus attorney's fees and costs. By statute, if the government intervenes, the district court can reward the relator between 15% and 25% of the settlement, and if  the government declines to intervene, a court can award the relator between 25% and 30%.

**E. <u>The Government's Notice To Decline Intervention Has No Bearing On The Merit Of A False Claims Act . The Notice Simply Authorizes Relator to Take Over Nearly All Aspects of the Case Except Settlement or Dismissal.</u>**

31 U.S.C. § 3730(b)(4)(B), authorizes the government to notify the Court of its decision not to intervene in the action.  Although the U.S. declines to intervene, 31 U.S.C. § 3730(b)(1), allows the *qui tam* Relator to maintain the action in the name of the U.S. provided, however, that the "action may be dismissed only if the court and the Attorney

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

General give written consent to the dismissal and their reasons for consenting." *Id.*

## V.  LEGAL STANDARD FOR MOTION TO DISMISS

On a motion to dismiss, courts generally accept the material facts alleged in Relator's Complaint, together with all <u>reasonable inferences</u> to be drawn from those facts, *as true*. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (emphasis added).

To survive a motion to dismiss, Relators must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "*Plausibility does not mean probability*, but it requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Siebert v. Gene Sec. Network, Inc.*, No. 11–cv–01987–JST, 2013 WL 3052882, *2 (N.D. Cal. June 17, 2013) (citing *Ashcroft v. Iqbal,* 556 U.S 662, 687 (2009)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the <u>reasonable inference</u> that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied,* 132 S. Ct. 2101 (2012). Plaintiff's complaint may be dismissed *only* when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id*. (emphasis added).

Fraud claims *are* subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Yet, there exist several exceptions and exemptions to this heightened standard.

In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Additionally, courts, when handling cases involving fraud or false claims, have *relaxe*d the standard of Rule 9(b) for several reasons including: to permit discovery in cases where evidence of the fraud is in the exclusive possession of the Defendant. *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001); when allegations involve complex transactions or transactions that occurred over an extended period of time. *U.S. ex rel. Manion v. St. Luke's Regional Medical Center, Ltd.*, No. CV 06-498-S-EJL, 2008 WL 906022 (D. Idaho 2008); and when plaintiffs have provided the defendants with other means of substantiation. *U.S. ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 110 (S.D. Ohio 1998). Nor do Relators have to plead with particularity any of the elements that are relevant to a defendant's affirmative defenses. *U.S. v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31DAB, 2012 WL 921147 (M.D. Fla. 2012).

**A. At This Point in the Litigation Relator's Complaint Meets Applicable Standards For the Court to Reach That Defendants' Motion to Dismiss Must Be Denied.**

Defendants filed a "kitchen sink" Motion in the hopes that this Court might find something in their brief sufficiently persuasive to dispose of this case entirely, however as discussed below, Relator contends Plaintiffs have sufficiently met the pleading standards set forth by Rules 8(a) and 9(b). Additionally, contrary to Defendants' overreaching assertions, this Court *does* have subject matter jurisdiction to hear this case because Relators claims are not barred by 31 U.SC. § 3730(e)(3), "The Public Disclosure Bar."

**B.   Defendants Prejudicially and Improperly Reference "Non-Intervention" in Their Pleadings and This Conduct Should Cease.**

Defendants here, not unlike many other FCA fraud defendants in recent years[8], have repeatedly, improperly and with prejudicial intent misled the Court that the government's

---

[8] See the DOJ Granston memo dated Jan. 10, 2018 ,disseminated a mere 4 weeks after this action was filed on December 4, 2017.  (Exh. "H")

11

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

declination to *not yet* intervene in a case speaks to the merits of Relator's claims, or lack thereof. (Mot 1:24-25) (*Id* pg.2:6-7 and 16-17) (*Id* pg.19, 6-7) (*Id* pg.25:8-9)

Notably, there is no "standing" to argue non-intervention in a MTD. Such a baseless and untrue assertion by Defendants is simply an overreaching effort to taint this Court's view of FCA cases and is universally reviled by courts and should cease immediately. *See U.S. ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2012 WL 6645537, *144 n. 3 (E.D. Pa. 2012) (following "overwhelming weight of authority from other circuits to find that no such presumption [of lack of merit based solely on government's decision to not intervene] should be imposed"); *see also U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) "The statute, however, does not require the government to proceed if its investigation yields a meritorious claim. Indeed, absent any obligation to the contrary, it may opt out for any number of reasons." (*See* Exh. "H")

## VI.   THE "PUBLIC DISCLOSURE BAR" DOES NOT BAR THIS FCA.
### A.   The Correct Version of the Law is the 2010 Version

On March 23, 2010, the Patient Protection and Affordable Health Care Act (PPACA) was signed into law. Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119. The new law significantly amended the public disclosure bar and original source provisions of the False Claims Act. "Congress' recent amendments to the Public Disclosure Bar under the 2010 health care reform law have 'broadened the ability of relators to commence qui tam lawsuits under the Act enormously.'" *U.S. ex rel. Sanchez v. Abuabara*, No. 10-61673-CIV, 2012 WL 1999527, at *2 (S.D. Fla. June 4, 2012).

Importantly, much of the cases cited in support of Defendants' Motion to Dismiss concern the *pre-amendment* version of the public disclosure bar.

The central allegations giving rise to the instant matter occurred well after the March 23, 2010 effective date of PPACA[9]. As such, the correct version of the public disclosure

---

[9] The Original Complaint in this action was filed on December 4, 2017 and invoked fraudulent healthcare claims dating from at least December 12, 2012 onward.

12

bar to be applied is the post-amendment version. Despite Defendants' conclusory footnote suggesting otherwise, this distinction is important, as the amended public disclosure bar is 1) no longer jurisdictional, 2) narrows the scope of the bar, 3) greatly expands the original source exception, and 4) provides the government with veto-like authority to preserve an otherwise barred case.

As amended, Section 3730(e)(4) reads:

A.        The court shall dismiss an action or claim under this section, <u>unless opposed by the Government</u>, if <u>substantially the same</u> allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

B.  For purposes of this paragraph, "original source" means an individual who <u>either</u>

(i)         prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, <u>or</u>

(ii) <u>who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.</u>

31 U.S.C. § 3730(e)(4) (2010) (relevant revisions underlined)

**B.  The Public Disclosure Bar Is No Longer Jurisdictional**

Defendants contend that this court may lack subject matter jurisdiction for "relief under Count IV" because the allegations and transactions in support of those claims were previously publicly disclosed and Congress has barred federal court jurisdiction over such claims under the statutory 'Public Disclosure Bar'". (MTD 25:footnote)

The controlling version of the public disclosure bar is found in the post-amendment version. Because the government, rather than the courts, has the ultimate say in whether the public information disclosure can bar a *FCA,* the issue is no longer jurisdictional.

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

The revised statute "deleted the unambiguous jurisdiction-removing language previously contained in §3730(e)(4) and replaced it with a generic, not-obviously-jurisdictional phrase," making it "clear that the public-disclosure bar is no longer a jurisdiction-removing provision." *See U.S. ex rel. May & Radcliffe v. Purdue Pharma L.P.,* 737 F.3d 908, at 917 (4th Cir. 2013) ("even if the changes somehow did not establish Congress' intent to convert the public disclosure bar into a non-jurisdictional basis for dismissal, the omission of the jurisdictional language would nonetheless require us to treat the amended public disclosure bar as such."); *U.S. ex rel. Cohen v. City of Palmer*, 2013 U.S. Dist. LEXIS 121798 (D. Alaska 2013).

Whether the public disclosure bar is jurisdictional affects litigation in multiple ways. Defendants have raised this issue prior to discovery as a 12(b)(1) or 12(b)(6) motion. As such, the court is not permitted to consider evidence outside the Complaint (as opposed to motions challenging jurisdiction). *Navarro*, 250 F.3d 729.

C. **The Definition of Public Disclosure Was Narrowed In The Post-2010 Amendments.**

The first step in applying the public disclosure bar is to identify the public disclosures. The three fora established by the post-amendment version of the bar are documents which were publicly disclosed:

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media

Defendants purported cited  "public disclosures" can be lumped into a few groups: 1) Medicare adjudicated claims data, 2) miscellaneous other documents, and these do not all fall under 3730(e)(4)(A)(i)-(iii) and as such cannot form the basis for a public disclosure argument. *See U.S. ex rel. Schumer v. Hughes Aircraft*, 63 F.3d 1512 (9th Cir.

1   1995) *vacated on other grounds* 520 U.S. 939 (1997); *Ber*g *v. Honeywell Int'l, Inc.*,
2   502 F. App'x  674, 677 (9th Cir. 2012).

3   **D.  The 'Public Disclosures' Are Not Substantially the Same as Alleged in the FAC.**

4         In order to invoke the bar, the purported disclosures must be "substantially the same
5   allegations and transactions as alleged in the action". 31 U.S.C. §3730(e)(4)(A) (2010).

6         Notably, despite Defendants' demonstrated rampant billing fraud, there has never
7   been a public disclosure of any government prosecuted unsealed FCA against these
8   Stanford Defendants, as compared to the "sister" hospital with the same or similar alleged
9   conduct[10]. Despite Defendants' conclusory claims, Relator herein is not in any way an
10  opportunistic "parasite" (MTD 21:15) who has no information of its own.

11        Rather, Relator is a long-standing patient of Defendants' spanning more than a
12  decade, a medical coding and billing  expert as certified by the American Academy of
13  Professional Coders (AAPC) and, and a practicing physician and surgeon (FAC ¶¶ 179-
14  181) who witnessed first-hand Defendants' organized schemes to "game the system",
15  mislead the Office of Health and Human Services, and misstate material terms in their
16  healthcare claims to government and commercial payors. (FAC ¶¶ 181-185, and 190).

17         Relator was uniquely privy to, and shared with the government prior to filing the
18  complaint, emails, conversations, observances, etc. on the machinations of Defendants in
19  filing false healthcare claims. (*See generally* FAC) The non-public allegations are
20  numerous and include admissions by Defendants that they falsely billed more than 10%
21  of fees in a one hundred thousand dollar claim for healthcare services. (FAC ¶¶183-185))

22        Courts must determine "whether the content of the disclosure consisted of the
23  'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere
24  information.'" *A-1 Ambulance Service, Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir.
25  2000) (quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir.

26  _____

27        [10]   Stanford's sister "non-profit" institution in California (Sutter) with similar billing
     schemes has had at least 3 publicized DOJ and CDI healthcare fraud actions prosecuted and
28   settled for more than $120 adversely to that "non-profit". (Exh. "X" Case. No CGC-18-565398)

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

1996)). For a qui tam suit to be "based upon" a prior public disclosure, the publicly disclosed facts need to be substantially similar to the relator's allegations. *See U.S. ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1189 (9th Cir. 2001).

The Central District of California recently reiterated what a defendant must show in the Ninth Circuit to avail itself of the FCA's jurisdictional "Public Disclosure Bar" in *United States v. Aurora Las Encinas, LLC, et al.*, No. CV 10-01031 (C.D. Cal. Apr. 12, 2013). The Central District denied the defendant hospital's motion to dismiss an FCA case that was brought based on facts that, as in the instant matter, the defendant claimed had previously been published in past litigation, media, and elsewhere. Although the court found that certain facts underlying the FCA claim had been publicly disclosed, those facts did not constitute a "substantially similar allegation of fraud that would constitute the necessary elements of an FCA claim" or "a transaction that shows a misrepresentation to the government." *Aurora* at *9. The *Aurora* court concluded that "none of [the public disclosures cited by defendants] constitutes an allegation or evidence with respect to a transaction that shows any misrepresentation made to the government." *Id*. at *5.

As in *Aurora*, there is no public disclosure here which purports to allege the fraud, as laid out by the Relators in the FAC. *See also U.S. ex rel. McLean v. County of Santa Clara*, C05-01962 HRL, 2011 WL 5223076, *7 (N.D. Cal. Oct. 31, 2011) (ruling there was no public disclosure because Defendants did not point to anything in the public documents showing that both the alleged misstatements and the alleged true statements were publicly disclosed). Defendants must show that the essential elements of the fraud, both the alleged truth and the allegedly fraudulent statements, were publicly disclosed via an enumerated source." *United States v. Catholic Healthcare*, 445 F.3d 1147, 1152 (9th Cir. 2006) abrogated on other grounds by S*chindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885 (2011). No such showing has or can be made here.

Defendants haven't identified public domain material that sufficiently discloses either: (i) a prior, substantially similar allegation of fraud that would constitute the

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

necessary elements of an FCA claim, whether or not alleged as such; or (ii) a transaction that shows a misrepresentation to the government. Even under the pre-amendment version of the public disclosure bar, a "public disclosure" only occurs when "the critical elements exposing the transaction as fraudulent are placed in the public domain." *U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003); *see also U.S. ex rel. Babushka v. Crane Co.*, 40 F.3d 1509, 1512 (8th Cir. 1994).

Defendants' MTD purports to provide information demonstrating that Relators' allegations should be barred by the Disclosure Bar. (*See* MTD 1:21-28)  However, many of the exhibits lodged in support of the FAC are purely foundational. Defendants reference exhibits intended to show this Court that the FAC allegations were, according to Defendants, all based on publicly available information. Quite simply, Defendants' Motion  is a sideshow designed to confuse and conflate the public disclosure bar issue.

Additionally, Defendants claim instances of disclosure that occurred well *after* Relators filed their Original Complaint on December 4, 2017. (*See* Exh. "W") Where documents relied upon as "publicly disclosed" were created after the filing of a relator's complaint those documents <u>cannot</u> appropriately support public disclosure arguments. *See U.S. ex rel. Adams v. Wells Fargo Bank, N.A*., No. 2:11–cv–00535–RCJ–PAL, 2013 WL 6506732, *5 (D. Nev. Dec. 11, 2013). These exhibits clearly don't bar Relators' claim since Relators' filing pre-dates the disclosures. (*See* Exh. "X" 3/29/18 State Complaint*)*

Next, Defendants attempt to use Relator's foundational and background allegations, some of which contain similar information or facts as in Medicare adjudicated claims or other publicly available information to suggest to this court that ALL of Relators' allegations or claims should be barred. This is a blatant aggrandizement. As previously discussed, Relator has pleaded details of Defendants' business operations and government claims so as to develop the necessary background information to establish the factual narrative of this case. Defendants attempt to persuade this Court to invoke the public disclosure bar by citing simplistic allegations that include the, the basic character of

17

1   Defendant's government billing and annual revenues, and the known fact that Defendant
2   a purported "non-profit" has public tax returns. (*See* FAC Exh. "C", "EE, "GG")

3       Even more confusing, Defendants argue that the allegations and exhibits in the FAC
4   including Relator's billing records are "irrelevant" but yet still point this Court to those
5   allegations as reasons for why it should apply the Disclosure Bar. (*See* MTD 6:21-22)

6       Defendants have been forced to scrape the bottom of the barrel of Relator's
7   allegations in an attempt to support their misguided contention that the Public Disclosure
8   Bar applies. Quite simply, this is an attempt to distract this Court.

9       The material issue herein is whether Defendants' nefarious conduct which
10  culminated in creating, submitting, and retaining payment  for false health care claims as
11  known and reported by Relator, were publicly disclosed. The publicly disclosed
12  documents referenced in Relator's FAC are simply foundational, background information
13  that support the proposition that Defendants were saying one thing while doing another.

### E.  The Relator Is the Original Source of This Complaint.

15      Pursuant to 31 U.S.C. 3730(e)(4)(B) Relator has "direct and independent knowledge"
16  of the information underlying the allegations in the lawsuit, rather than information that
17  was the basis for prior public disclosure. *Rockwell Int'l Corp,* 127 S. Ct. 1397, 1407
18  (2007). Even accepting Defendants' arguments as true, the Relators' claims would still
19  survive the public disclosure bar as they are original sources under the post-amendment
20  bar. Although no significant legislative history exists for the 2010 amendments, it is well
21  accepted that the new provision was intended to broaden the definition of "original
22  source." *See, e.g., U.S. ex rel. Harman v. Trinity Indus., Inc.*, No. 2:12-CV-00089-JRG,
23  2014 WL 47258, at *4 (E.D. Tex. Jan. 6, 2014).

24      Defendants rely on various cases in support of their misguided argument that
25  Relator's entire complaint is based upon public disclosure. Relator supplied the vital facts;
26  the who, what, where and when behind the Defendants' fraud. The allegations relate to
27  Defendants intentionally misrepresenting the true services, rendering provider, true

28

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

number of units of surgical implants, and for the express purpose of convincing the government to provide hundreds of millions of dollars of unjust enrichment to Defendants. Defendants' cited exhibits fail to disclose not one single allegation of fraudulent conduct against Defendants by any government entity.

Relator has independent knowledge that materially adds to any publicly disclosed allegations or transactions, and voluntarily provided the information to the government before filing an action. (*See* FAC ¶¶154-156**)** This Relator has not simply cobbled together various public documents to create a piggyback claim. Rather, Relator is an "insider", a long-term Stanford healthcare physician client who is a highly educated and trained surgeon.  (See FAC ¶¶35,179-184 & Exh D, E, K) who witnessed firsthand the substantial efforts by Defendants to intentionally mislead the Government in order to obtain hundreds of millions of taxpayer dollars from Medicare and Medicaid. (*See* FAC ¶ 33)

### F.  "FOIA" Requests Do Not *Disqualify* an Original Source Claimant.

Defendants argue that Relator's reference to public documents like Medicare claims somehow subjects the complaint to the public disclosure bar. In U.*S. ex rel. Assoc. Against Outlier Fraud v. Huron*, 09-CV-1800, 2012 U.S. Dist. LEXIS 19858 (S.D.N.Y. Feb. 16, 2012), the court held that though the relator utilized information he received pursuant to a FOIA request, he was still an original source of the information because the relator had "direct and independent knowledge" of the false claims he asserted in his complaint. *Id*.

The Seventh Circuit observed that a relator who conducted his investigation based on information available to the public "may be viewed by some as a bit of a busybody with his own agenda, but he is certainly not a parasite, and to a certain degree, Congress wanted to encourage busybodies who, through independent efforts, assist the government in ferreting out fraud." *U.S. ex rel. Lamers v. City of Green Bay* 168 F.3d 1013, 1018 (7th Cir. 1999). Later, in *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818 (7th Cir. 2013), the Seventh Circuit reaffirmed the vitality of *Lamers*: [Relator] had never even worked for the city—let alone witnessed or participated in the city's filing of compliance forms. Yet still

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

we found that Lamers's FCA suit had adequate subject-matter jurisdiction because he had direct and independent knowledge derived from 'walk[ing] the streets of Green Bay observing the buses in action.' *Id*. at 838.

A relator's information can be different and more valuable to the government than the information underlying the public disclosure. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 472 (2007) ("The relator may have an eyewitness account or important documents supporting the public allegation, but not available from any other source, which could aid the government.")

Recently, the Eastern District of Texas issued an insightful opinion concerning the original source exception under the post-amendment bar. *U.S. ex rel. Harmon v. Trinity*, No. 2:12- CV-00089-JRG, 2014 WL 47258 (E.D. Tex Jan. 6, 2014). That relator gathered his information from various sources, many of which were equally available to the public. The relator combined this information with his own professional skill and expertise to reach his conclusions about the alleged fraud. *Id*. at *4. The court recognized that the facts forming the basis of the relator's complaint were all available to the public before he filed his complaint, but that the relator was nevertheless an original source. *Id*. at *4-5.

It interpreted the original source exception as "'sweat of the brow' analysis, designed to distinguish between 'individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim.'" *Id*. The court added that "the goal of the disclosure bar is to preserve meritorious investigation while eliminating 'parasitic' lawsuits derived from the morning newspaper." *Id*. at *5.

Here, the Relator's knowledge is "direct" in that her claims stem from personally witnessed and gathered information, gained through her own efforts, rather than by securing the benefits of efforts expended by others. The Relators' knowledge is "independent" because the crux of this cause of action – the falseness of the claims and

20

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

scienter of Defendants– was made plain only through Relator's efforts, and is vastly different than any information that Defendants claims as disclosed prior to filing the FAC.

In conclusion, Defendants' Motion should be denied, as the public disclosure bar is no longer jurisdictional, the Relator's FCA claims are not based upon public disclosures, and the Relator is an original sources of knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions.

## VII.   RELATOR HAS SUFFICIENTLY ALLEGED FALSITY
### A.  **The First Amended Complaint Contains Sufficient Allegations of Falsity**

The heightened pleading standard of Rule 9(b) governs FCA claims in the Ninth Circuit. *Bly- Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). In addition to pleading with particularity, an FCA claim must also plead plausible allegations with "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Twombly*, 550 U.S. at 556. Defendants argue that Relators have failed to establish the falsity of the claims submitted to the government under the heightened pleading standard of Rule 9(b).

In *Cafasso*, relied upon by Defendants, the Court found that "despite Cafasso's access to Defendants' records...she does not identify a single false or fraudulent claim for payment." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047 (9th Cir. 2011). (MTD 12: 5) Unlike *Cafasso* and the other cases relied upon by the Defendants in their  Motion to Dismiss, the FAC *does* contain specific plausible allegations of falsity. The FAC alleges that Defendants' 42 U.S.C. '1320b-7b(f) healthcare claims submitted under *penalty of perjury* for payment contain intentional material misrepresentations, the

truth of which would have extinguished any hope of Defendants receiving healthcare

proceeds. Defendants' misrepresentations are replete throughout the (one-hundred twenty-

three) 123-page FAC and can be summarized and directly referenced as follows:

a. Defendants **_lied_** who the true rendering provider was for healthcare claims to obtain higher fees. FAC ¶¶7, 189-190, 191-193.

b. Defendants **_lied_** about the number of surgical supply units they actually used to get higher fees. FAC ¶¶54, 55, 69, 182,184, 201, 225.

c. Defendants **_lied_** about pre-operative visits to obtain unjust government funds for what they knew were free pre-surgical services. FAC ¶¶ 56,

d. Defendants **_lied_** about making refunds to payors for what they conceded were unbundled and upcoded claims to keep the unjust enrichment FAC ¶¶ 55, 108, 201,221, 224-225.  [See also FAC generally ¶¶ 59-90 "Stanford's Six Billing Schemes")

When reviewing motions to dismiss, the court must accept all factual allegations of

the complaint as true and draw all reasonable inferences in favor of the nonmoving party.

*Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). To survive a

motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570.

Plausibility does not mean probability, but it requires "more than a sheer possibility

that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 687. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The FAC

meets and exceeds this standard. In addition to detailed, particularized factual allegations

regarding Defendants' fraudulent healthcare claims the FAC also "supplies reasonable

indicia that false claims were actually adjudicated and paid by the government." *Ebeid*,

616 F.3d at 999. Relator's first-hand accounts about Defendants' manipulation and

misrepresentations form the basis for the FAC. (FAC ¶¶ 225-226) (*See* Exh." B" to FAC)

Defendants cite many cases which were resolved at the summary judgment stage

and <u>not on a motion to dismiss</u>.[11] In the case of *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1477-78 (9th Cir. 1996), the court specifically found that the same allegations which were subject to summary judgment, were sufficient to survive a motion to dismiss. Parties have not yet had opportunity to engage in discovery which would presumably enable parties to produce evidence and allow resolution of the dispute.

Defendants also cite *Berg* as support for their motion but fail to point out that *Berg* was reversed in part and remanded almost more than three years ago. *Berg v. Honeywell Int'l, Inc.,* No. 13−35617, 2014 WL 2854502 (9th Cir. June 24, 2014).[12] (*See* MTD 9:8) While the Ninth Circuit held that the district court did not err in concluding that the plaintiff's FAC failed to plead alleged fraud with sufficient particularity, the court found that the plaintiff's proposed second amended complaint, which the district court refused to allow to be filed, "set forth sufficient factual detail to properly plead an FCA fraud-in-the-inducement claim under Rule 9(b)." *Id*. What was missing in the underlying complaint in *Berg* was an explanation of the "how" the defendants orchestrated their scheme. In the instant matter, the "how" is simple, it is found in Defendants' medical coding "cheat sheets" themselves as well as (*See* FAC ¶3:7). (Decl. Gaines ¶10)

## A. **Relator's Claims Clearly Allege an Objective Falsehood.**

Defendants' attack on the FAC is premised on belief that Defendants did not conceal any of the pertinent facts from the respective governments. The facts as alleged in the FAC, which must be accepted as true, are that Defendants knowingly[13] misled the

---

[11] *Cafasso* did involve a motion to dismiss, but it was after two full years of discovery. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996) (involved a judgment as a matter of law after trial), *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992) (summary judgment based upon public disclosure); *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 887-88 (8th Cir. 2003) (involved summary judgment after trial); *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1026, 1028-29 (D. Nev. 2006) (involved summary judgment): *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (was summary judgment).

[12] This is an unpublished opinion which is otherwise applicable under 9th Cir. Rule 36-3.

[13] A defendant is liable under the FCA only if it acted "knowingly." 31 U.S.C.§ 3729(b)(1). The defined term "knowingly" is somewhat of a misnomer because it includes both acting with "actual knowledge of the information" and acting with "deliberate ignorance" or *(footnote cont'd on next page)*

23

government in the healthcare payment applications made under penalty of perjury. (*See* FAC ¶¶104,106) Government knowledge, while a <u>potential affirmative defense</u>, if it were even true, which Relator vehemently disputes here, is not an appropriate basis for a motion to dismiss. The Court in *Berg* found "the possibility that [Defendants] may prevail at a later stage of this litigation under the so- called government knowledge defense to FCA liability does not support the conclusion that the Relators' complaint cannot be saved by any amendment." *Berg* at *3. Specifically, the Court found that "[g]overnment officials' knowledge of a claim's falsity is not a defense to liability, but it may be "highly relevant" in demonstrating that the government contractor 'did not submit its claim in deliberate ignorance or reckless disregard of the truth.'" *Id*. citing *U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991). It is therefore appropriate "at the summary judgment stage or after trial, not at the motion to dismiss stage." *Id*. citing *U.S. ex rel. Butler v. Hughes Helicopters, Inc*., 71 F.3d 321, 327 (9th Cir. 1995).

## VIII.   RELATOR HAS SUFFICIENTLY ALLEGED THAT DEFENDANTS VIOLATED THE FCA UNDER THE ALTER EGO THEORY. ALTERNATIVELY, THE COURT SHOULD GRANT RELATORS LEAVE TO AMEND IF NEED BE.

If the Court finds that Relator has unsuccessfully plead a particular fact, such an oversight would be purely a matter of form and should not be considered a deficiency in the case substance. Even if the court regards that the FAC is not legally sufficient as to *all* Defendants, leave should be granted to file a SAC.  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). As such, leave to amend is granted liberally. Fᴇᴅ. R. Cɪᴠ. P. 15(a) ("The Court should freely give leave when justice so requires."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 2008 (9ᵗʰ Cir. 2003) (quoting *Balistreri v.*

---

"reckless disregard of the truth or falsity of the information. *See id.* § 3729(b)(1)(i)–(iii) Although "knowledge must  be pleaded sufficiently to make entitlement to relief plausible," *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1012 (C.D. Cal. 2015), it need not be pleaded with particularity. *See id.* at 1011–12; *see also United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) ("[M]alice, intent, knowledge, and other conditions of a person['s mind, including scienter, can be alleged generally.") (internal quotation omitted).

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

*Pacifica Police Dep't.*, 901 F.2d 696, 701 (9th Cir. 1990)) ("Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.").

## IX.   CONCLUSION

Defendants have failed to cite a legally sufficient statutory basis for bringing this boilerplate motion to dismiss before the Court, after having also failed to meet and confer with specificity in violation of Rule 7-3 for their basis to dismiss.

Taking all FAC allegations in a light most favorable to Relator with all reasonable inferences in Relators' favor, Defendants' Motion should be denied in its entirety. Defendants move the Court to unilaterally expand the scope of the Original Source Bar, and Defendants' interpretation would create a loophole wherein their conduct would not fall under the authority of any FCA protections. This would be a perilous outcome.

Relator's claims are also not foreclosed by the Public Disclosure Bar since the Bar is no longer jurisdictional and the definition of a public disclosure was significantly narrowed by the 2010 Amendments. Additionally, the Relator is the original source who has provided substantial, independent, and new inside information regarding Defendants' false claims, entirely separate and unique from the publicly disclosed background and foundational information referred to by Defendants.

Accepting the FAC allegations as true, Relator alleges numerous objectively false statements or omissions made by Defendants including the intentional preparation and transmission of false healthcare claims, with payments received and knowingly *retained.* Relator's allegations also sufficiently invoke the Alter Ego doctrine since Relator alleged Defendants were all wholly owned subsidiaries who shared common ownership, management, directives, and resources.

In accordance with the foregoing, responding party respectfully requests that the Court *deny* Defendants' Motion to Dismiss, and grant such other and further relief, including but not limited to an award of costs and reasonable attorneys' fees, to which the responding party may be entitled.

25

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

1    Finally, in the event this Court finds Relator's pleading to be deficient in any
2    respect, Relator respectfully requests that this Court grant leave with a reasonable time to
3    amend the Complaint to cure any such deficiency.

4
5    RESPECTFULLY SUBMITTED on this 18th day of January, 2020.

6                              s/ Gloria Juarez
7    ─────────────────────────────
8    GLORIA JUAREZ
     **LAW OFFICE OF GLORIA JUAREZ**
9    Attorneys for Relator, Emily Roe

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

### <u>DECLARATION OF GLORIA JUAREZ IN SUPPORT</u>

1.  I am an attorney duly admitted to practice law before all courts in the State of California, and the Federal Courts. I have personal knowledge of the facts set forth in this Declaration and if necessary, could competently testify thereto under oath.

2.  Plaintiffs and Relator have met and conferred since case inception, and worked courteously, cooperatively, and with civility to resolve the disputes.

3.  Defendants, herein moving party, have declined a number of my requests to meet and confer from August 15, 2019 through September 18, 2019, or engage with Relator in meaningful discussions about the allegations in the Complaint.

4.  From August 15, 2019 through on or about September 18, 2019 Defendants' counsel failed to respond in any manner to multiple communications from my office and the State of California Department of Insurance (CDI). Attached hereto as Exhibit "A" is a true and correct copy of the correspondence from CDI to Stanford counsel Mr. Sheeder dated August 15, 2019.

5.  On December 16, 2019 I sent a meet and confer correspondence to Defendants. I requested that Stanford defense counsel consider the State's offer to mediate the settlement discussions between parties. I also stated "*We are fully agreeable to your proposed collaborative meeting in the first full week of January 2020. In light of Mr. Campin's [State] offer to mediate discussions in this matter, would it be acceptable that we request coordination with his office to join our telephonic conferen*ce?" Attached hereto as Exhibit "B" is a true and correct copy of my correspondence.

6.  On December 26, 2019 I electronically served courtesy copies of the First Amended Complaint and Exhibits on Defendants as represented by Mr. Sheeder at Alston & Bird.

7.  On December 31, 2019 I sent a further meet and confer correspondence to Defendants, a true copy of which is attached hereto as Exh. "C". On this date I also sent further meet and confer email requests to Defendants requesting a three-way conference to discuss the matter, and meet to discuss the case allegations. Defendants did not respond to my conference requests.

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

8. On January 3, 2020 I sent a lengthy meet and confer correspondence to Defendants as to their motion to dismiss based on "pseudonym", asserting basis for and that we would seek Rule 11 sanctions should Defendants file such a frivolous pleading. Attached hereto as Exhibit "D" is a true and correct copy of my communication.

9. Defense counsel Mr. Sheeder sent me an email on or about December 12, 2019 which substantially misconstrued our telephonic conversation through a "follow-up" surreptitious email which also misrepresented that Relator had agreed to dismiss all Defendants except Stanford Healthcare, which was <u>untrue</u>. I, therefore requested all substantive agreements or discussions with Mr. Sheeder be in writing or accordingly memorialized to avoid such aggrandizement.

10. Defendants' January 3, 2020 letter states "*The basis for the motion is that the case should be dismissed under Rule 10(a) because the Relator is not identified and is attempting to proceed improperly under a pseudonym*." I wrote to Defendants that *"I believe that your reliance on Rule 10(a) as to an anonymized Relator is not supported by statute. Furthermore, this new "basis" for a dismissal appears at best frivolous within the meaning of Rule 11(b)(1) and Rule 11(b)(3)."* Attached hereto as Exhibit "E" is a true and correct copy of Defendants' correspondence.

11. The United States here has explicitly stated to me that the government does <u>not</u> wish to move and has no intention to dismiss this action, which has now been before the DOJ for more than 2 years. In fact, the government investigation thus far has fully confirmed the healthcare fraud allegations in the Complaint as to Stanford Defendants.

12. There has never been any intimation by any government agency of dismissing this action for any reason.

13. Pursuant to 31 U.S.C §3730 (c)(2)(A) and as buttressed by the Granston[14] memo issued on January 10, 2018; the government is empowered to move to dismiss

---

[14] Granston memo addresses the DOJ's authority to move to dismiss non-meritorious FCA cases. The Director of the Civil Fraud Section of the Department of

*(footnote cont'd on next page)*

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

non-meritorious FCA cases. Attached hereto as Exhibit "G" is a true and correct copy of the Granston memo *See*

https://assets.documentcloud.org/documents/4358602/Memo-for-Evaluating-Dismissal-Pursuant-to-31-U-S.pdf)

14. The DOJ wrote correspondence to me dated November 1, 2019 that the U.S. is "continuing to monitor this case and can seek to intervene if appropriate (after declination)". Attached hereto as Exhibit "F" is a true and correct copy of the DOJ's letter.

15. I am informed and believe that the current government allocation of resourced and furloughs was the basis of non-intervention of this meritorious case. On January 12, 2019 the Central District DOJ office notified me that the AUSA assigned to this matter was furloughed for some time, and the "skeleton crew" in the DOJ office was unable to undertake substantial work in cases, including this instant action. Attached hereto as Exhibit "H" is a true and correct copy of the DOJ's correspondence to me on the "government shutdowns".

16. Attached hereto as Exhibit "I" is a true and correct copy of my communication with defense counsel dated Dec. 26, 2019.

17. Defendants surreptitiously filed their Motion to Dismiss on Jan. 7, 2020 without ever mentioning the "original source" allegation in their correspondence.  Relator's counsel was in fact awaiting an in-person meeting which was scheduled by Defendants' counsel Mr. Sheeder for the week of January 6, 2020 in Los Angeles.

---

Justice (DOJ), Michael Granston, issued a memo in January 2018. Recent DOJ motions to dismiss echo the government's sentiments reflected in the Granston Memo, and depict its recent push to dismiss unwarranted qui tam actions. For example, in December 17, 2018, the DOJ moved to dismiss 11 qui tam actions brought by National Healthcare Analysis Group (NHCA) against defendants in seven judicial districts. The DOJ argued that the relator's allegations "lack[ed] sufficient merit to justify the cost of investigation and prosecution" and were "contrary to public interest." (See

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

18. My office was monitoring the docket and noted the surprising January 7, 2020 motion to dismiss filing by Defendant, which did not use any of the purported basis by defense counsel Mr. Sheeder.

19. On Jan. 3, 2020 Stanford sent a letter to meet and confer as to filing a Motion to Dismiss "*We request to meet and confer with you about a motion we intend to file on behalf of the Moving Defendants. The basis for the motion is that the case should be dismissed under Rule 10(a) because the Relator is not identified and is attempting instead to proceed improperly under a pseudonym*." Attached hereto as Exhibit "L" is a true and correct copy of that letter.

20. I believe that the prejudice and harm to the public through Defendants' ongoing course of fraudulent healthcare billing conduct is demonstrated through this Complaint, as well as the ballot "Measure F Palo Alto" and the March 28, 2019 UC Berkeley Report on Northern California [Stanford] healthcare costs.

21. Defendant Stanford et al.'s healthcare fraud and unconscionable fees are not only now on the public forefront, they are apparently also well known by parties including carriers like Blue Shield and Anthem Blue Cross who terminated contracts with Defendants. However, without discovery in this action, those documents showing the fraud which are now only in Defendants' possession may not be brought to light. Accordingly, I believe that the right of the public and taxpayers to have this Complaint adjudicated in a court of a law outweighs the argument by Stanford Defendants to dismiss. This healthcare false claims act also supports the public interest.

22. Attached hereto as Exhibit "W" is a true and correct copy of the conformed original Complaint filed on December 4, 2017, as downloaded from pacer.

23. Attached hereto as Exhibit "X" a true and correct caption and last pages of the lawsuit filed by the State through Xavier Becerra in State Court on exorbitant and disproportionate northern California healthcare costs.

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

24. Attached hereto as Exhibit "Z" is the letter by Defendant Debra Zumwalt, Stanford billing compliance officer, on Stanford's billing malfeasance for the November 6, 2018 Palo Alto Measure F vote. Therefore, it is my belief that there is little to no element of credibility as to Stanford's assertion in its Motion that naming Ms. Zumwalt is a "nuisance maneuver". To the contrary, Ms. Zumwalt appears to be at the front and center of Stanford and Stanford healthcare billing and unjust revenues matters.

25. I am personally informed by the government that Defendants' fraud as alleged in this action has been confirmed by the investigating government entity (ies), and the only dispute remains as to the total amount of the fraud and per claim penalties pursuant to FCA statutes.

26. I believe that this untimely motion was largely avoidable had Defendants not unilaterally cancelled at the 11th hour the January 6, 2020 conference which they had unilaterally and voluntarily set to discuss the Complaint. My office was prepared to meet counsel in good faith on January 6th. Moreover, up to and including January 6, 2020 I offered to cooperate with a Rule 4 Waiver of Summons to allow parties to meet and mediate the allegations in the Complaint before commencement of litigation.

27. I also volunteered a stipulation of parties should that be required after our meeting on Jan. 6th, for a Second Amended Complaint. However, Stanford did not respond to my request.

28. Attached hereto as Exhibit "C" is a true and correct copy of my December 31, 2019 correspondence to Stanford counsel volunteering to work with counsel on any perceived deficiencies in the operative Complaint.

29. While awaiting Defendants' Rule 4 waiver for Summons as requested by counsel Mr. Sheeder, Defendants surreptitiously filed their Motion to Dismiss on Jan. 7, 2020. (See Doc. No. 42) Accordingly, Relator only thereafter filed the proof of service of summons with the court. (See Docket No. 46 & 47)

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

30. As a minor housekeeping note, I had reserved spacers for Exhibits N-U, which were ultimately not required. The Response having been prepared fully without these exhibit letters, there was insufficient opportunity to revise the pleading to incorporate the omitted exhibit letters. Thus, there are no Exhibits N-U in this motion.

31. As a result of what I believe was Defendant's declination to properly meet and confer with specificity to their Rule 12 motion, I was required to spend 26.5 hours researching and preparing this opposition to Defendants' motion, and expect to spend further 5.5 hours to prepare and appear for the hearing on February 10, 2020. I have been a California licensed attorney since 1983 and have more than 35 years of experience. A reasonable hourly rate for an attorney with my breadth of experience is $550. Should the court find good cause based on the foregoing, I would respectfully request the court grant such other and further relief, including but not limited to an award of costs and reasonable attorneys' fees, to which responding party may be entitled.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on January 18th, 2020 at Los Angeles, California.


/s/ G. Juarez _____
Gloria Juarez

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

## DECLARATION OF RELATOR

1. I am the Relator in this False Claims Action and have personal knowledge of the facts set forth in this Declaration. If called to do so, I could and would competently testify thereto under oath to the facts herein.

2. I am a physician and surgeon in good standing, duly licensed to practice medicine in the State of California. I am also a certified coder and biller, as certified by the American Association of Professional Coders ("AAPC"). AAPC is the leading recognized governing body of professional healthcare coders and certification in the U.S. I further have expertise and auditing healthcare skills as a retained and designated expert for the State of California in unrelated matters.

3. I and members of my family are *current* patients at Stanford Healthcare, having been so from at least on or about December 2012 to present. As such, I have extensive knowledge and experience with Stanford healthcare and their coding and billing practices.

4. I personally initiated my healthcare fraud investigation into Stanford based on firsthand information and knowledge which I uncovered as a Stanford healthcare recipient. Through examination of my own (and other known) Stanford records, I learned that Stanford routinely unbundled and upcoded claims and aggressively pursued denials of the fraudulent claims to overturn any payment denials from carriers. Accordingly, I have "direct and independent knowledge" of the information underlying the allegations in the lawsuit.

5. Through my insider original source information, I uncovered that certain surgical providers like Dr. Fred Dirbas and his physician assistant "Candace" were unlawfully coding and billing others for pre-operative visits that were part of the global surgical fee, and not chargeable, and that certain members of the Stanford surgical departments also billed under the physician (M.D.) codes, rather than the

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

rendering physician assistant (P.A.) codes, for unjust enrichment. The PA service codes on average pay 15-20% less than the M.D. codes.

6. As a result of my investigation into Stanford's healthcare fraud in 2016, Stanford conceded their conduct in writing and initiated multiple refunds to me and the health carrier respectively of including (1) $341 for an unbundled office visit (Exhibit "A" to FAC), (2) $17,500 for upcoded 2 units of an artificial tissue whereas only 1 unit at most was used.

7. Based on my knowledge, experience, and personal investigation I therefore believe that I am the "original source" of the information and allegations presented in the Complaint

8. Based on my firsthand knowledge, experience, and my further investigation from 2012-2018 to <u>confirm</u> the Stanford Healthcare fraud, I believe that I am the original source of the information and allegations in the First Amended Complaint.

9. The *exemplar* billing data and Medicare adjudicated billing claims which I employed in the First Amended Complaint were simply to demonstrate foundational basis and *confirmation* of Stanford's fraud schemes.  My original source information was based on my personal knowledge and own records.

10. At no time have I relied on "prior public disclosure" or media to formulate my original source fraud allegations. Rather, as background and foundational basis, I have performed due diligence and have regularly examined materials which I attached as supplemental evidence to substantiate and buttress my healthcare fraud allegations, which I am informed and believe to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2020 at Los Angeles, California.

/s/ Eroe
Emily Roe

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, January 18, 2020, a true and correct copy of the RELATOR'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT BY STANFORD ET AL. and EXHIBITS IN SUPPORT THEREOF were served via the United States District Court CM/ECF system on all parties or persons requiring notice.


FRANK SHEEDER
SEAN R. CRAIN (State Bar No. 291515)
Alston & Bird LLP
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400/ Facsimile: 214-922-3899
E-mail: sean.crain@alston.com
**Counsel for Defendants**

Frank D. Kortum
Assistant United States Attorney
Room 7516, Federal Building
300 N. Los Angeles St.
Los Angeles, CA 90012
**Counsel for Plaintiff the United States of America**

Mr. NICHOLAS G. CAMPINS
Senior False Claims Attorney
45 Fremont Street, 21st Floor
P.O. Box 4591
San Francisco, CA  94105
**Counsel for Plaintiff the United States of America**

By   _/s/ Arthur Long_
        Arthur Long
        Assistant to Ms. Juarez, Counsel for Relator

RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS