KIMBERLY K. CHEMERINSKY (State Bar No. 277637)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
Telephone:   213-576-1000
Facsimile:   213-576-1100
Email:        kim.chemerinsky@alston.com

FRANK E. SHEEDER III (Admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone:   214-922-3400
Facsimile:   214-922-3899
E-mail:        frank.sheeder@alston.com

Attorneys for Moving Defendants
**STANFORD HEALTH CARE, STANFORD
HEALTH CARE ADVANTAGE, THE LELAND
STANFORD JUNIOR UNIVERSITY (A/K/A THE
BOARD OF TRUSTEES OF THE LELAND
STANFORD JUNIOR UNIVERSITY), DEBRA
ZUMWALT, and FREDERICK DIRBAS**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>THE STATE OF CALIFORNIA<br>*Ex. Relator* Emily Roe., an individual;<br><br>Plaintiffs,<br><br>v.<br><br>STANFORD HEALTHCARE BILLING DEPARTMENT, STANFORD HEALTH CARE (FORMERLY KNOWN AS STANFORD HOSPITALS AND CLINICS), DR. FREDERICK DIRBAS, DEBRA ZUMWALT, THE BOARD OF DIRECTORS OF THE STANFORD HEALTH CARE, THE BOARD OF DIRECTORS OF THE LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, THE LELAND JUNIOR UNIVERSITY, THE BOARD OF TRUSTEES OF STANFORD UNIVERSITY, STANFORD HEALTH CARE ADVANTAGE and DOES 1-10, inclusive.<br><br>Defendants. | Case No. 2:17-cv-08726-DSF-AFM<br>Assigned to the Honorable Dale S. Fischer, [Courtroom 7D]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT**<br><br>[Filed concurrently with Notice of Motion to Dismiss and Strike Second Amended Complaint; and [Proposed] Order Granting Defendant's Motion Dismiss and Strike Second Amended Complaint]<br><br>Hearing<br><br>Date:   May 4, 2020<br>Time:   1:30 p.m.<br>Ctrm:   7D<br><br>Complaint Filed:  December 4, 2017<br>First Am. Complaint:  June 22, 2018<br>Second Am. Complaint:  March 2, 2020 |

# TABLE OF CONTENTS

**Page(s)**

I.      Introduction ............................................................................. 1

II.     Procedural History and Background .................................. 1

III.    Legal Standard ..................................................................... 2

        A.      Federal Rules of Civil Procedure ("Rule") 8(a) and
                12(b)(6). ...................................................................... 2

        B.      Rule 9(b) ...................................................................... 3

IV.     Argument ............................................................................... 3

        A.      Relator's Claims are Prohibited by the Public
                Disclosure Bar. ........................................................... 4

                1.      Relator's allegations are "substantially the same" as "allegations
                        or transactions" previously disclosed through public sources. .. 5

                2.      Relator is not an "original source" of any information upon
                        which an FCA claim may be based. ........................................... 6

                        a.      Relator did not voluntarily disclose information to the
                                government prior to the relevant public disclosures. ........ 6

                        b.      Relator does not "materially add" to the information she
                                acquired from the government. ........................................ 8

        B.      Relator Cannot State Any Claim for Relief Under the
                FCA. ............................................................................ 10

                1.      Relator's First Six "Causes of Action" Fail to State a Claim ... 10

                        a.      The SAC does not identify a false claim to the government.
                                ........................................................................ 11

                        b.      The SAC does not provide "reasonable indicia that lead to
                                a strong inference" that false or fraudulent claims were
                                submitted to the government. ........................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i.      The SAC is based on impermissible speculation
        based on Relator's surgery. ................................... 15

ii.     The SAC attempts to create inferences based on
        "new" allegations from publicly available
        sources. .............................................................. 17

iii.    The SAC does not satisfy Rule 9(b). ................... 19

2.      Relator's New Seventh Cause of Action is Barred by the Court's
        Previous Order and Fails as a Matter of Law. .......................... 20

C.      Relator has Failed to Properly Serve Dr. Dirbas. ............................... 23

D.      The SAC Should be Stricken Because It Violates L.R.
        5.2-1. ................................................................................................ 25

V.      Conclusion ................................................................................................ 25

ii

1

## **<u>TABLE OF AUTHORITIES</u>**

2

3

**Page(s)**

4

**Cases**

5

*A-1 Ambulance Serv., Inc. v. California*,
   202 F.3d 1238 (9th Cir. 2000) ........................................................................... 6, 9

6

7

*Abers v. Rohrs*,
   217 Cal. App. 4th 1199 (2013) ............................................................................. 24

8

9

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002) ................................................................. 13, 16, 17

10

11

*United States ex. rel. Armstrong-Young v. Carelink Hospice Servs., Inc.*,
   No. 15-CV-04095-WHO, 2018 WL 4773111 (N.D. Cal. Oct. 1, 2018) ................................................................................................................ 11, 18

12

13

14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 3, 13, 19

15

16

*Azar v. Allina Health Servs.*,
   --- U.S. ---, 139 S. Ct. 1804, 204 L. Ed. 2d 139 (2019) ..................................... 14

17

18

*Baker v. FirstCom Music*,
   No. 16-cv-08931 VAP, 2018 WL 2584814 (C.D. Cal. Jan. 16, 2018) ................................................................................................................ 25

19

20

*United States ex rel. Beauchamp v. Academi Training Ctr.*,
   816 F.3d 37 (4th Cir. 2016) .................................................................................. 5

21

22

*United States ex. rel. Bennett v. Biotronik, Inc.*,
   876 F.3d 1011 (9th Cir. 2017) ............................................................................ 18

23

24

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ............................................................................ 20

25

26

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................ 2, 3, 10, 13, 14, 16, 21

27

28

*United States ex rel. California v. City of L.A.*,
 No. cv-02-02278-SJO, 2009 WL 10672350 (C.D. Cal. June 5,
 2009), *aff'd sub nom. United States ex rel. Mosler v. City of Los
 Angeles*, 414 F. App'x 10 (9th Cir. 2010) ...................................................7

*United States ex rel. Calva v. Impac Secured Assets Corp.*,
 No. SACV-16-1983-JVS, 2018 WL 6016152 (C.D. Cal. June 12,
 2018) ...........................................................................................................9

*United States ex rel. Campie v. Gilead Sci., Inc.*,
 No. C-11-0941 EMC, 2015 WL 106255 (N.D. Cal. 2015)........................23

*In re Century Aluminum Co. Sec. Litig.*,
 729 F.3d 1104 (9th Cir. 2013) ..................................................................12

*Choudhuri v. Specialized Loan Servs. LLC*,
 No. 19-cv-00028, 2019 WL 3254130 (N.D. Cal. July 19, 2019)...............24

*United States ex rel. Cook v. Providence Health & Servs.*,
 No. C13-1312RAJ, 2014 WL 4094116 (W.D. Wash. Aug. 18,
 2014) .................................................................................................14, 22

*United States ex rel. Crennen v. Dell Mktg. L.P.*,
 711 F. Supp. 2d 157 (D. Mass. 2010).......................................................13

*United States ex rel. Dan Abrams Co. v. Medtronic, Inc.*,
 No. LA-cv-15-01212 JAK, 2017 WL 4023092 (C.D. Cal. Sept. 11,
 2017).........................................................................................................11

*United States ex. rel. Davidov v. NHIC Corp.*,
 623 F. App'x 376 (9th Cir. 2015)..........................................................8, 18

*United States ex rel. Defatta v. UPS*,
 771 Fed. Appx. 735 (9th Cir. 2019) ..........................................................15

*Diaz v. Intuit, Inc.*,
 No. 5:15-cv-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15,
 2018) ...........................................................................................................5

*Dingle v. Bioport Corp.*,
 388 F.3d 209 (6th Cir. 2004) ....................................................................10

*Escalante v. Barrett/Grider Settlement Plan Adm'r*,
 No. 3:18-cv-00370-MMD-CBC, 2019 WL 177475 (D. Nev. 2019) .................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

*United States ex rel. Fine v. Sandia Corp.*,
   70 F.3d 568 (10th Cir. 1995) ...................................................................... 6

*United States ex. rel. Frazier v. IASIS Healthcare Corp.*,
   812 F. Supp. 2d 1008 (D. Ariz. 2011) ...................................... 7, 11, 17, 19

*United States ex. rel. Gaines v. Stanford Health Care*,
   3:15-cv-05631 (N.D. Cal.) ......................................................................... 8

*United States ex. rel. Gaines v. Stanford Health Care*,
   3:15-cv-05631 (N.D. Cal. Dec. 9, 2015) .................................................... 7

*and United States ex. rel. Gaines v. Stanford Health Care*,
   3:16-cv-02831 (N.D. Cal.) ......................................................................... 8

*United States ex. rel. Gaines v. Stanford Health Care*,
   3:16-cv-02831 (N.D. Cal. Aug. 28, 2017) ................................................. 7

*United States ex. rel. Gaines v. Stanford Health Care*,
   3:16-cv-02831 (N.D. May 25, 2016) .......................................................... 7

*Gonzalez v. Planned Parenthood of L.A.*,
   No. cv-05-8818-AHM-FMOx, 2012 WL 2412080 (C.D. Cal. June
   26, 2012) .................................................................................................... 14

*United States ex rel. Gough v. Eastwestproto, Inc.*,
   No. CV 14-465 DMG, 2018 WL 6929332 (C.D. Cal. 2018) .................... 11

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel.
   Wilson*,
   559 U.S. 280 (2010) .................................................................................... 4

*United States ex rel. Gross v. AIDS Research All.-Chicago*,
   415 F.3d 601 (7th Cir. 2005) .................................................................... 14

*Hagood v. Sonoma Cty. Water Agency*,
   81 F.3d 1465 (9th Cir. 1996) ...................................................................... 8

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
   792 F.3d 1121 (9th Cir. 2015) .................................................................... 6

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
   No. 208-cv-01885CASAGR, 2019 WL 3291582 (C.D. Cal. June
   14, 2019) .................................................................................................... 15

*United States ex rel. Hastings v. Wells Fargo Bank, NA Inc.*,
   656 F. App'x 328 (9th Cir. 2016)...........................................................9

*United States ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ...........................................................13

*Hooper v. Lockheed Martin Corp.*,
   688 F.3d 1037 (9th Cir. 2012) ...........................................................10

*United States ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) ...........................................................14

*United States ex. rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
   No. CV 17-1694 PSG, 2019 WL 3282619 (C.D. Cal. July 16, 2019) ...........................................................4, 8, 9, 22, 23

*United States ex rel. JDJ & Assocs. LLP v. Natixis*,
   No. 15-cv-5427 (PKC), 2017 WL 4357797 (S.D.N.Y. Sept. 29, 2017) ...........................................................9

*United States ex rel. Joseph v. Brattleboro Retreat*,
   No. 2:13-CV-55, 2014 WL 3908432 (D. Vt. Aug. 10, 2014) ...........................................................17

*Justice v. Albertsons Corp.*,
   No. 11-CV-2253-H (BLM), 2012 WL 355031 (S.D. Cal. Feb. 2, 2012) ...........................................................24

*United States ex. rel. Karp v. Ahaddian*,
   No. CV 16-500 PSG, 2018 WL 6333670 (C.D. Cal. Aug. 3, 2018) ...........................................................4, 16, 17

*U.S. ex rel. Kelly v. Serco, Inc.*,
   No. 11-cv-2975 WQH-RBB, 2014 WL 4988462 (S.D. Cal. Oct. 6, 2014), *aff'd sub nom. United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) ...........................................................22

*Kexuan Yao v. Crisnic Fund*,
   No. SACV 10-1299 AG, 2011 WL 3818406 (C.D. Cal. Aug. 29, 2011) ...........................................................24

*United States ex rel. Kraxberger v. Kansas City Power & Light Co.*,
   756 F.3d 1075 (8th Cir. 2014) ...........................................................8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

*Kubin v. Abode Servs. Agency*,
 No. 18-cv-00658-MEJ, 2018 WL 776355 (N.D. Cal. Feb. 8, 2018) ................ 19

*United States ex rel. Lee v. Corinthian Colls.*,
 No. cv-07-1984 PSG, 2013 WL 12114015 (C.D. Cal. Mar. 15,
 2013) ............................................................................................................. 10

*United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984 (9th Cir.
 2011) .............................................................................................................. 20

*Lesnik v. Eisenmann SE*,
 374 F. Supp. 3d 923 (N.D. Cal. 2019) ..................................................... 21, 22

*Lott v. United States Dep't of Labor, DEEOIC*,
 No. 3:11-cv-00258-ECR, 2012 WL 1278779 (D. Nev. Apr. 12,
 2012) .............................................................................................................. 24

*United States ex rel. Lupo v. Quality Assurance Servs.*,
 242 F. Supp. 3d 1020 (S.D. Cal. 2017) ............................................................ 22

*United States ex rel. Marion v. Heald Coll., LLC*,
 No. 5:12-cv-02067-PSG, 2015 WL 4512843 (N.D. Cal. July 24,
 2015) .............................................................................................................. 10

*United States ex. rel. Martinez v. Orange Cty. Glob. Med. Ctr., Inc.*,
 No. 815-cv-01521, 2017 WL 9482462 (C.D. Cal. Sept. 14, 2017) ................... 15

*United States ex. rel. Mastej v. Health Mgmt. Assocs.*,
 591 F. App'x 693 (11th Cir. 2014) .................................................................... 19

*United States ex rel. Mistick PBT v. Hous. Auth. of Pittsburgh*,
 186 F.3d 376 (3d Cir. 1999) .............................................................................. 4

*United States ex rel. Modglin v. DJO Glob. Inc.*,
 114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd sub nom. United States
 v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ...................................... 15

*United States ex rel. Modglin v. DJO Glob. Inc.*,
 48 F. Supp. 3d 1362 (C.D. Cal. 2014) ............................................................. 11

*Neubronner v. Milken*,
 6 F.3d 666 (9th Cir. 1993) ............................................................................... 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

*United States ex rel. Niazi v. CVS Pharmacy, Inc.*,
  No. 15-5518, 2018 WL 654289 (C.D. Cal. Jan. 31, 2018) .......................... 21, 22

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ...................................................................... 5

*United States ex rel. Osheroff v. Humana, Inc.*,
  776 F.3d 805 (11th Cir. 2015) ................................................................. 5, 8

*Patel v. Dameron Hosp.*,
  CIV S-99-1275, 2000 WL 35619441 (E.D. Cal. June 23, 2000) ...................... 24

*United States ex rel. Petratos v. Genentech Inc.*,
  855 F.3d 481 (3rd Cir. 2017) ...................................................................... 16

*Pierson v. Nat'l Inst. For Labor Rels. Research*,
  No. 15 C 11049, 2016 WL 6093490 (N.D. Ill. Oct. 17, 2016) .......................... 24

*Polansky v. Exec. Health Res., Inc.*,
  No. 12-CV-4239, 2019 WL 5790061 (E.D. Pa. Nov. 5, 2019)........................... 14

*United States ex rel. Puhl v. Terumo BCT*,
  No. CV-17-8446, 2019 WL 6954317 (C.D. Cal. Sept. 12, 2019).............. 7, 8, 17

*United States ex rel. Rosales v. San Francisco Hous. Auth.*,
  173 F. Supp. 2d 987 (N.D. Cal. 2001)........................................................... 8

*United States ex rel. Ruhe v. Masimo Corp.*,
  929 F. Supp. 2d 1033 (C.D. Cal. 2012)......................................................... 23

*United States ex rel. Ruhe v. Masimo Corp.*,
  977 F. Supp. 2d 981 (C.D. Cal. 2013), *aff'd*, 640 F. App'x 666 (9th
  Cir. 2016)................................................................................................... 13

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011) .................................................................................... 5

*Scott v. Arizona Ctr. for Hematology & Oncology PLC*,
  No. CV-16-03703-PHX-DGC, 2018 WL 1210903 (D. Ariz. Mar. 8,
  2018)........................................................................................................... 22

*Seal 1 v. Seal A*,
  255 F.3d 1154 (9th Cir. 2001) ...................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

*U.S. ex rel. Solis v. Millennium Pharm., Inc.*,
   885 F.3d 623 (9th Cir. 2018) .............................................................. 6

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................ 3

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................. 3

*United States ex rel. Swoben v. Scan Health Plan*,
   No. cv-09-5013-JFW, 2017 WL 4564722 (C.D. Cal Oct. 5, 2017) .................... 15

*Todd v. Fid. Nat'l Fin., Inc.*,
   No. 12-cv-00666-REB-CBS, 2014 U.S. Dist. LEXIS 130256 (D. Colo. Aug. 19, 2014) ............................................................... 16

*Trollope v. Dep't of Child Support Servs.*,
   No. CV 18-09220-JLS (JDE), 2019 WL 3927349 (C.D. Cal. June 7, 2019) .................................................................................. 24

*United Med. Devices, LLC v. Blue Rock Capital, Ltd.*,
   No. CV16-1255 PSG, 2016 WL 9047123(C.D. Cal. 2016) ......................... 23

*United States ex rel. Zizic v.Q2Adm'rs., LLC*,
   728 F.3d 228 (3d Cir. 2013) .............................................................. 9

*United States v. Ctr. for Diagnostic Imaging, Inc.*,
   787 F. Supp. 2d 1213 (W.D. Wash. 2011) ........................................... 20

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ..................................................... 11, 19, 20

*United States v. N. Am. Health Care, Inc.*,
   173 F. Supp. 3d 943 (N.D. Cal. 2016) ............................................. 8, 16

*United States v. Strock*,
   No. 15-CV-0887, 2018 WL 647471 (W.D.N.Y. Jan. 31, 2018) ...................... 22

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ................................................. 11, 13, 16

*Universal Health Servs. v. United States*,
   136 S. Ct. 1989 (2016) .................................................................. 15

ix

*Verde Media Corp. v. Levi*,
   No. 14-cv-00891 YGR, 2014 WL 3372081 (N.D. Cal. 2014)............................24

*Vineyard v. UPS*,
   No. 16-cv-00125-JST, 2016 WL 1410127 (N.D. Cal. 2016).............................23

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016) .................................................................9

**Statutes**

31 U.S.C. § 3729(a)(1)(G)....................................................................20, 21

31 U.S.C. § 3730(e)(4)(B) ........................................................................6, 8

31 U.S.C. § 3739(e)(4) ...............................................................................3

31 U.S.C. § 3739(e)(4)(A) ...........................................................................4

**Other Authorities**

Rule 4...............................................................................................23, 24

Rule 8(a) ............................................................................................2, 3

Rule 9(b) ...................................................................3, 12, 13, 14, 19, 20

Rule 12(b)(4).......................................................................................3, 23

Rule 12(b)(5)........................................................................................3, 23

Rule 12(b)(6).........................................................................................2, 3

Rule 12(f)...........................................................................................3, 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

## I.   <u>INTRODUCTION</u>

The federal False Claims Act ("FCA") imposes liability for *false* statements to the *government*. Relator's Second Amended Complaint ("SAC") persists in making sweeping assertions of widespread fraud under the FCA based on (1) irrelevant details about her own 2012 surgery involving a *private* insurance company (not a government program), (2) public Medicare claims data she admittedly obtained from the government through Freedom of Information Act ("FOIA") requests, and (3) allegations from other FCA cases, all in support of a single flawed premise—a *corrected mistake* in *one* 2012 case with a *private* insurance company amounts to *fraud* in *all* cases involving *government* health care programs. Courts around the country (including this one) have rejected this flawed logic.

The SAC is still defeated by the public disclosure bar and Relator has still not pleaded a cognizable claim for relief— it remains devoid of the "who, what, when, where, and how" of Relator's specious theories or a single false statement to the government. Stanford Health Care ("SHC"), Stanford Health Care Advantage ("SHCA"), The Leland Stanford Junior University (a/k/a The Board of Trustees of the Leland Stanford Junior University), Debra Zumwalt ("Ms. Zumwalt"), and Frederick Dirbas ("Dr. Dirbas") (collectively, "Moving Defendants") therefore move to dismiss the SAC with prejudice to Relator and to strike it in its entirety.

## II.   <u>PROCEDURAL HISTORY AND BACKGROUND</u>

Since she filed this matter under seal in December 2017, Relator has attempted to allege various causes of action against multiple defendants under the FCA and other statutes based primarily on her own 2012 surgery as a commercial patient and speculation about public information. *See* ECF Nos. 1, 15-16, 55-56. All government entities have declined to intervene in this matter, and the Court dismissed Relator's First Amended Complaint ("FAC") without prejudice on February 4, 2020, noting the FAC's many deficiencies in form and substance. *See* ECF Nos. 10, 12-14, 30-31, 54. Without heeding the Court's advice, Relator has simply reshuffled the same

deficient allegations. *See* ECF No. 54-56. Like the FAC, Relator brings nothing original to her SAC, instead relying on FOIA information, prior FCA suits, and generalizations about her 2012 surgery. As the Court already noted, none of this is "independent information that 'materially adds' to the [public] information acquired from the government." *See* ECF No. 54.

In the SAC, Relator offers six "causes of action" that are not causes at all— she has merely split six of her "schemes" from the FAC into separate "causes of action" in supposed support of her conclusory assertion that some combination of Defendants created false claims and submitted them to the government.[1] Her new seventh "cause of action" is even more perplexing—she attempts to assert a cause based on claims to "the *commercial* payors in the State," which is not a cognizable theory on the FCA and in any event is barred by the Court's order dismissing the FAC. SAC ¶ 278 (emphasis added); ECF No. 54 (stating that Relator could add new claims only via "a separate, properly noticed motion" for leave).

Even with the data she admittedly received from the government through FOIA requests, Relator cannot identify any "false" claim to support her allegations. She instead offers conjecture about "Stanford's" business operations, speculation about publicly available information, and unsupported generalizations about her 2012 surgery (which did not involve a single claim to a government entity).

## III.   LEGAL STANDARD

### A.   Federal Rules of Civil Procedure ("Rule") 8(a) and 12(b)(6).

A relator must "plead plausible allegations" to survive dismissal under Rules

---

[1] In her SAC, Relator repeats much of the FAC and then separates six of her original theories into separate "causes of action": (1) billing for pre-surgical care in violation of the "global surgical fee rule," *compare* SAC ¶¶ 3, 121-153 *with* FAC ¶¶ 3, 59-62, 115, 188-90, 245-305, 332, 350-355; (2) overbilling surgical supplies, *compare* SAC ¶¶ 3, 154-180 *with* FAC ¶¶ 3, 34, 57, 66-69, 323; (3) billing for unsupervised or unlicensed personnel, *compare* SAC ¶¶ 3, 181-201 *with* FAC ¶¶ 3, 63-65, 70, 191-207, 312-22, 324-326; (4) upcoding physician office visits, *compare* SAC ¶¶ 3, 202-220 *with* FAC ¶¶ 3, 70, 115, 248, 251, 306-11; (5) overbilling tissue pathology codes, *compare* SAC ¶¶ 3, 221-257 *with* FAC ¶¶ 3, 34, 66-69, 323; and (6) overbilling for anesthesia time, *compare* SAC ¶¶ 3, 258-271 *with* FAC ¶¶ 26, 58, 71, 170, 174.

8(a) and 12(b)(6). *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). There must be "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Rule 9(b).

Allegations under the FCA must also satisfy the heightened standards of Rule 9(b). *See Cafasso*, 637 F.3d at 1054. Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," *id.* at 1054-55 (citation omitted), and "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

## IV.  ARGUMENT

The SAC must be dismissed for multiple independent reasons. *First*, the FCA's "public disclosure bar" compels dismissal of Relator's claims under 31 U.S.C. § 3739(e)(4) because they are expressly based upon public sources, including data the government provided in response to her FOIA requests, news articles, and other widely disseminated information. *Second*, Relator's speculative SAC does not contain plausible allegations about a single false statement to the government or the particularized pleadings necessary to survive dismissal under Rules 8(a), 9(b), and 12(b)(6). *Third*, the SAC should also be dismissed as to Dr. Dirbas under Rules 12(b)(4) and 12(b)(5) because Relator has not served him with process. The SAC should also be stricken under Rule 12(f) because it contains the individual defendants' personal information in violation of Local Rule ("L.R.") 5.2-1. In summary, the SAC should be dismissed with prejudice to Relator and stricken from the Court's Docket.[2]

---

[2] Because allowing a fourth pleading attempt would be futile, the SAC should be dismissed with prejudice to Relator. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

## A.    Relator's Claims are Prohibited by the Public Disclosure Bar.

Relator's entirely unoriginal claims must be dismissed under the "public disclosure bar" because her allegations do not "materially add" to information that is indisputably in the public forum. To be sure, "information acquired via a FOIA request qualifies as public disclosure under 31 U.S.C. § 3739(e)(4)(A)." *See* ECF No. 54 (citing *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401 (2011)). Relator is not, and cannot ever be, an "original source" of any of the public information upon which she attempts to base her claims—including responses to FOIA requests, news articles, and other readily available sources. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 285 (2010) (FCA bars claims if "the relevant information has already entered the public domain").

No doubt recognizing that she is simply repackaging public information, Relator proffers two contradictory and unsustainable positions under the public disclosure bar. If the Medicare claims data she acquired from the government through a FOIA request reveals "*prima facie* evidence of the fraud" as Relator alleges, SAC ¶ 70, then her case is barred by the public disclosure bar because she cannot "materially add" any permissibly "original" information to those claims. *See, e.g.*, *United States ex rel. Mistick PBT v. Hous. Auth. of Pittsburgh*, 186 F.3d 376, 389 (3d Cir. 1999) (holding that relator who discovered facts via FOIA request had no direct and independent knowledge of information therein). If, on the other hand, the Medicare data do not reveal the elements of the alleged fraud, then her claims must be dismissed for failure to state a claim because public data plus inferences from dealings with a private insurance company cannot support an FCA claim. *See United States ex. rel. Karp v. Ahaddian*, No. CV 16-500 PSG, 2018 WL 6333670, at *4 (C.D. Cal. Aug. 3, 2018); *c.f United States ex. rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG, 2019 WL 3282619, at *17 (C.D. Cal. July 16, 2019) ("[U]nless the information at issue reveals both the misrepresented state of facts and the true state of facts, the fraudulent transaction has

1   not been publicly disclosed."). Relator's positions fail either way, and her case must

2   be dismissed.

3         1.   Relator's allegations are "substantially the same" as "allegations or

4              transactions" previously disclosed through public sources.

5         Relator's allegations are "substantially the same" as the "allegations or

6   transactions" previously disclosed through public sources. Relator relies extensively

7   on FOIA information to support her belief that Defendants submitted false claims

8   to Medicare, alleging that the public information is "*prima facie* evidence of the

9   fraud," providing the "who," "what," "when," and "why." SAC ¶ 70; *see*, *e.g.*, *id.*

10  ¶¶ 47, 51-52, 134, 174, 197; *see also id.* Ex. M at 175-76 (admitting her allegations

11  are based on "CMS online and open access information" and information "obtained

12  through records act requests"); *id.*, Exs. Q, AA, BB (incorporating FOIA claims

13  information upon which SAC is based). These sources, from FOIA data to information

14  parroted from news articles and unrelated FCA suits, trigger the public disclosure bar.[3]

15  *See Schindler Elevator Corp.*, 563 U.S. at 416-417; *see also Seal 1 v. Seal A*, 255 F.3d

16  1154, 1162 (9th Cir. 2001) ("Disclosure of information to one member of the public,

17  when that person seeks to take advantage of that information by filing an FCA action,

18  is public disclosure"); *United States ex rel. Beauchamp v. Academi Training Ctr.*, 816

19  F.3d 37, 43 n.6 (4th Cir. 2016) ("Courts have unanimously construed the term 'public

20

21  [3] *See, e.g.,* SAC, Ex. K (Public report from Berkley available at http://petris.org/wp-content/uploads/2018/03/CA-Consolidation-Full-Report_03.26.18.pdf); Ex. P

22  (Stanford online presentation available at http://surgicalpathology.stanford.edu); Ex. T (Complaint from Young Lawsuit, Case No. RG17877051, Superior Court of

23  California); Ex. Z (Publicly available CMS guidance); Exs. GG & HH (SHC Annual                disclosures                available                at

24  https://stanfordhealthcare.org/content/dam/SHC/about-us/bondholder-information/docs/annual-disclosure-report-for-shc-fy-2016-2017-0125-final.pdf

25  and                https://stanfordhealthcare.org/content/dam/SHC/about-us/bondholder-information/docs/annual-disclosure-report-for-shc-fy-2017-final.pdf).                These

26  Exhibits are attached to and incorporated in the SAC and are thus properly before the Court on Moving Defendants' Motion. *See In re NVIDIA Corp. Sec. Litig.*, 768

27  F.3d 1046, 1051 (9th Cir. 2014). The sources from these Exhibits are either apparent from the face of the Exhibit or properly subject to Judicial Notice under

28  Federal Rule of Evidence 201. *See Diaz v. Intuit, Inc.*, No. 5:15-cv-01778-EJD, 2018 WL 2215790, at *3 (N.D. Cal. May 15, 2018).

disclosure' to include websites and online articles."); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 813 (11th Cir. 2015).

Relator admits that the public sources upon which she relies had the information necessary to "put the government on notice to investigate the alleged fraud before [Relator] filed [her] complaint," thereby triggering the public disclosure bar. *See* SAC ¶ 70 (alleging that the public Medicare data "has the requisite elements state of fraud" and is "*prima facie* evidence of the fraud"); *U.S. ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018); *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000) ("the disclosure need not contain an explicit 'allegation' of fraud . . . so long as the material elements of the allegedly fraudulent 'transaction' are disclosed"); *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 572 (10th Cir. 1995) (noting the "'based upon' test . . . bars even those *qui tam* complaints which are based only *in part* upon public disclosures" (internal citations omitted) (emphasis in original)).

> 2. Relator is not an "original source" of any information upon which an FCA claim may be based.

To qualify as an "original source," a relator must (1) have "voluntarily disclosed to the government the information on which allegations or transactions in a claim are based" prior to the public disclosure, or (2) possess "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B); *see United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015). Neither is present here.

> a. Relator did not voluntarily disclose information to the government prior to the relevant public disclosures.

Relator does not allege that she voluntarily disclosed any Medicare data or other legally relevant information to the government in this case; she actually says the opposite. *See generally* SAC; *see* ECF No. 54 ("Only the second original source definition could apply to Relator because she did not disclose any of the Medicare

information at issue to the government."). The government gave Relator all the Medicare information upon which she attempts to base her suit, not the other way around, and her proclamations that she is an "original source," and references to her own "legally irrelevant" surgery, cannot change this fact. *See, e.g.*, SAC ¶¶ 6, 8, 78; *see also United States ex rel. Puhl v. Terumo BCT*, No. CV-17-8446, 2019 WL 6954317, at *4 (C.D. Cal. Sept. 12, 2019) ("[A]llegations 'do not provide reliable indicia' of false claims and are 'legally irrelevant' where they relate to patients who 'had private health insurance' and hence did not utilize 'Medicare or other federal health care programs.'" (citing *United States ex. rel. Frazier v. IASIS Healthcare Corp.*, 812 F. Supp. 2d 1008, 1017 (D. Ariz. 2011)); *United States ex rel. California v. City of L.A.*, No. cv-02-02278-SJO, 2009 WL 10672350, at *5 (C.D. Cal. June 5, 2009), *aff'd sub nom. United States ex rel. Mosler v. City of Los Angeles*, 414 F. App'x 10 (9th Cir. 2010).

Relator attempts to cover this insurmountable flaw in her SAC by relying extensively on information originating from Tomiya Gaines, who previously filed two FCA lawsuits against SHC based on alleged Medicare billing issues. But parroting facts and allegations from other whistleblowers cannot transform Relator into an original source.[4] *Compare, e.g.*, SAC ¶¶ 66-69, 146, 167, 179, 193-96, 199,

_____

[4] For example, each of the specific instances of purported "upcoding" cited by Gaines in her affidavit was included in Gaines's previously filed complaints under the FCA. *Compare, e.g.,* SAC, Ex. C ("SAC Gaines Decl.") ¶ 12 *with* Compl. for Damages Under the Fed. False Claims Act ("Gaines's Original FCA Complaint") ¶ 29, *United States ex. rel. Gaines v. Stanford Health Care*, 3:15-cv-05631 (N.D. Cal. Dec. 9, 2015), ("[Stanford] is systematically wrongfully billing Medicare for complete stress echocardiogram tests . . . when the lack of documentation only supports a limited Stress Echocardiogram"), ¶ 40 ("[Stanford] regularly submits bills to Medicare under both of the above [critical care] codes despite a gross lack of documentation in the patients' time spent in critical care.), *and* Compl. for Damages ¶ 21, *United States ex. rel. Gaines v. Stanford Health Care*, 3:16-cv-02831 (N.D. May 25, 2016), ("Medicare does not pay for cardiac monitoring of more than 48 hours . . . In June, upper level management instructed the Coding Department to change all codes for this service to 93224 which is cardiac monitoring for fewer than 48 hours."). Gaines's allegations that Stanford used "cheat sheets" to "fraudulently gain[] revenue" are likewise raised throughout Gaines' previous FCA filings. *Compare, e.g.*, SAC Gaines Decl. ¶ 10 *with* Gaines's Original FCA Compl. ¶ 41 ("[Stanford] simply receives a list of billing codes from its members, and [Stanford] coders are instructed to submit the codes from Medicare billing without verifying the services (which would be

7

207-11, 219, 254, 269, 278-82 *with United States ex. rel. Gaines v. Stanford Health Care*, 3:15-cv-05631 (N.D. Cal.) *and United States ex. rel. Gaines v. Stanford Health Care*, 3:16-cv-02831 (N.D. Cal.); *see, e.g.*, *United States ex. rel. Davidov v. NHIC Corp.*, 623 F. App'x 376, 376 (9th Cir. 2015); *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1473 n. 13 (9th Cir. 1996) (recognizing court filings constitute public disclosures); *United States ex rel. Rosales v. San Francisco Hous. Auth.*, 173 F. Supp. 2d 987, 997 (N.D. Cal. 2001) (same). Thus, Relator is not an "original source" under the first prong of 31 U.S.C. § 3730(e)(4)(B).

> b. Relator does not "materially add" to the information she
> acquired from the government.

Relator is also not an "original source" because her SAC does not "materially add[] to the publicly disclosed allegations or transactions." *See* 31 U.S.C. § 3730(e)(4)(B). Relator concedes that she cannot "materially add" to that information by admitting that the alleged fraud was apparent from the face of publicly available Medicare data. *See* SAC ¶ 70. If Relator's allegations are correct, then she cannot be an original source. *See Humana Inc.*, 776 F.3d at 815; *see also United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1080 (8th Cir. 2014) (relator does not "materially add" to publicly disclosed allegations when the publicly disclosed allegations are sufficient to "raise a reasonable inference of fraud" (citation omitted)); *c.f. Integra Med Analytics LLC*, 2019 WL 3282619, at *17 ("[U]nless the information at issue reveals both the misrepresented state of facts and the true state of facts, the fraudulent transaction has not been publicly disclosed.").

If, on the other hand, Relator's allegations are incorrect, her claims still fail because the only non-public information she arguably could have "added" relates to her own surgery as a commercially insured patient, which is "legally irrelevant" to

---

impossible in any event given the lack of supporting documentation).") *and* Suppl. Decl. of Tomiya Gaines in Opp. to Def. UHA's Mot. for Summ. J. ¶ 10, *United States ex. rel. Gaines v. Stanford Health Care*, 3:16-cv-02831 (N.D. Cal. Aug. 28, 2017) ("I objected to data entry staff (use of cheat sheet) to bypass EPIC (electronic health record) intelligence[.]").

and cannot support a claim under the FCA, and thus cannot "materially add" to the public information she cites. *See, e.g.*, *Puhl*, 2019 WL 6954317, at \*4; *United States v. N. Am. Health Care, Inc.*, 173 F. Supp. 3d 943, 951 (N.D. Cal. 2016) (finding no original source where relator did not provide any material, non-public information).

Relator must do more than apply "expertise" to publicly disclosed data, and Relator's assertion that she is a "certified professional medical coder and biller" do not make her an original source. SAC ¶¶ 35, 53; *see also A-1 Ambulance Serv.*, 202 F.3d at 1238 (holding that the "mere fact that [relator's] own expertise . . . may have enabled it to formulate its novel legal theory of fraud is irrelevant to the question of whether the material transactions giving rise to the alleged fraud were already disclosed in the public domain in the first place"). Similarly, Relator's baseless and vague assertions that she engaged in "proprietary data mining," SAC ¶¶ 174, 197, likewise do not change the result. *See Integra Med Analytics LLC*, 2019 WL 3282619, at \*2, 6-8 (noting that reliance on Medicare claims data was barred by public disclosure despite inclusion of specific allegations of the analytical methodology used); *see also United States ex rel. Zizic v. Q2Adm'rs., LLC*, 728 F.3d 228, 242 (3d Cir. 2013) (same); *United States ex rel. JDJ & Assocs. LLP v. Natixis*, No. 15-cv-5427 (PKC), 2017 WL 4357797, at \*11 (S.D.N.Y. Sept. 29, 2017) ("Just as combining publicly available information with specialized expertise is not sufficient to overcome the first step of the public disclosure bar, neither does conducting an analysis based on such expertise qualify a relator as an original source.").

Although the SAC refers to Defendants' business operations, that background information is also insufficient to make Relator an original source. *See United States ex rel. Hastings v. Wells Fargo Bank, NA Inc.*, 656 F. App'x 328, 331-32 (9th Cir. 2016) ("Allegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud."); *United States ex rel. Calva v. Impac Secured Assets Corp.*, No. SACV-16-1983-JVS, 2018 WL 6016152, at \*8 (C.D. Cal. June 12, 2018) (holding that adding detail about

methodology used "does not materially add to the public disclosures"); *see also United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 213 (1st Cir. 2016).

Relator's attempt to take advantage of other people's allegations further illustrates that she has not "materially added" to the information provided by the government. She cannot properly rely on unrelated allegations in other FCA suits to support her own, separate FCA claim or transmogrify herself into an "original source" of that information. *See United States ex rel. Marion v. Heald Coll., LLC*, No. 5:12-cv-02067-PSG, 2015 WL 4512843, at *3 (N.D. Cal. July 24, 2015); *United States ex rel. Lee v. Corinthian Colls.*, No. cv-07-1984 PSG, 2013 WL 12114015, at *3-5 (C.D. Cal. Mar. 15, 2013); *see also Dingle v. Bioport Corp.*, 388 F.3d 209, 215 (6th Cir. 2004). The "public disclosure bar" mandates dismissal of Relator's claims.

## B. Relator Cannot State Any Claim for Relief Under the FCA.

The SAC simply repackages the threadbare speculation from Relator's previous pleadings without adding the particularized allegations necessary to support a claim under the FCA. Her first six "causes of action" are not causes at all; she has merely separated six of her original "schemes" from the FAC into separate "causes of action" in supposed support of her conclusory assertion that some combination of Defendants created false claims and submitted them to the government. Her new seventh "cause of action" is expressly based on claims to "the *commercial* payors in the State," SAC ¶ 278 (emphasis added), and is barred by the Court's order dismissing the FAC. *See* ECF No. 54. As shown further below, the SAC should be dismissed.

### 1. Relator's First Six "Causes of Action" Fail to State a Claim.

The actual submission of a false or fraudulent claim to the government is the *sine qua non* of an FCA action. *Cafasso*, 637 F.3d at 1055. To state a claim under the FCA for the submission of a false claim, a relator must allege "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

*Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012). Likewise, to state a cause of action under the FCA for creation of false documents, a relator must allege "that defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* at 1048.

To survive dismissal, a relator's allegations must specify "'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). A relator's allegations must also (1) "identify representative examples of false claims" to the *government* or (2) allege "reliable indicia that lead to a strong inference that [false] claims were actually submitted." *Ebeid*, 616 F.3d at 998-99. The SAC contains *none* of this, and that is fatal to *all* of Relator's claims. *See, e.g.*, *United States ex rel. Dan Abrams Co. v. Medtronic, Inc.*, No. LA-cv-15-01212 JAK, 2017 WL 4023092, at *9 (C.D. Cal. Sept. 11, 2017).

a. <u>The SAC does not identify a false claim to the government</u>.

Despite having received voluminous Medicare claim information from the government, Relator still cannot identify a single "representative example" of a "false or fraudulent claim." *See* SAC ¶¶ 154-284. Instead, she makes vague references to unspecified Medicare data, speculates about SHC's business practices, and relies on claims submitted to her own private insurance company. *See, e.g.*, *id.* ¶¶ 160-73, 197-98.

Relator cannot simply attach thousands of lines of public Medicare claims data and assert that it supports her allegations, nor can she assert in general terms that the collective Defendants she calls "STANFORD" submitted hundreds or even "countless" claims that support her theories. *See, e.g.*, *id.* ¶¶ 135-36, 168, 174, 197; *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1407 (C.D. Cal. 2014); *United States ex rel. Gough v. Eastwestproto, Inc.*, No. CV 14-465 DMG, 2018 WL 6929332, at *9 (C.D. Cal. 2018); *United States ex. rel. Armstrong-Young*

1   *v. Carelink Hospice Servs., Inc.*, No. 15-CV-04095-WHO, 2018 WL 4773111, at *3

2   (N.D. Cal. Oct. 1, 2018); *Frazier*, 812 F. Supp. 2d at 1017.

3           Relator's first "cause of action" is the only theory for which she identifies a

4   specific government claim.[5] SAC ¶¶ 121-53. Relator claims that SHC, Dr. Dirbas,

5   Ms. Zumwalt, and ten "Doe" defendants "knowingly unbundled and billed countless

6   pre-operative visit codes . . . in violation of global surgery rules, which specifically

7   prohibit charging for a visit after the decision for surgery has been made, and *before*

8   surgery." *Id.* ¶ 124. In support, she repeats two of the claims that were insufficient to

9   support her FAC and again asserts they show pre-operative visits that may not have

10  complied with Medicare billing rules because the services were performed too close

11  in time to the surgery. *Compare id.* ¶¶ 126-30, 143-44 *with* FAC ¶¶ 283, 332. Based

12  on the *timing* of these claims alone, which is apparent from the FOIA data, Relator

13  assumes that they are "false" and that "STANFORD" must have submitted other

14  "false claims" too.[6] SAC ¶¶ 143-45; *see also* FAC ¶¶ 315, 331.

15          But Relator never reveals what might be "false" about the two Medicare claims

16  she references. The billing guidance attached to the SAC expressly references

17  exceptions to pre-surgical timing standards based on the underlying condition of the

18  patient, but Relator omits any reference to them. *See* SAC ¶¶ 111-52; *id.*, Ex. Z at

19  368-70. Relator also alleges that the surgical period begins "[o]nce the decision for

20  surgery is made" but provides nothing to suggest when those decisions were made.

21  *See id.* ¶ 128.

22          At best, Relator conjures up no more than a vague possibility of incorrect

23  Medicare claims. But merely pleading a methodology by which a defendant *could*

24  _____

25  [5] The SAC is tellingly less detailed than the FAC. Although Relator referred to 21 cases from the FOIA data in support of her FAC, she now mentions only two and instead muses about "countless" claims. *Compare* FAC ¶¶ 56, 277-296, 332 *with*

26  SAC ¶¶ 136, 174, 197.

27  [6] Relator's allegations are even thinner than they appear. For example, although she boldly alleges that  "STANFORD" submitted "false" claims for facility fees, Relator's FOIA information does not even involve such fees—it is limited to claims for reimbursement for the professional fees of individual physicians, not facilities.

28  *See* SAC ¶¶ 3, 123, 140, 144-45, 152, 240.

violate the FCA does not meet the particularity requirement of Rule 9(b). *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." (citing *Iqbal*, 556 U.S. at 678)); *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) ("It is not enough . . . 'to describe a [fraudulent] scheme in detail but then to allege simply and without any stated reason . . . that claims requesting illegal payment must have been submitted.'" (citation omitted)); *United States ex rel. Crennen v. Dell Mktg. L.P.*, 711 F. Supp. 2d 157, 162 (D. Mass. 2010) ("Articulating a theory as to how a company could violate subsection (a)(1), without more, is insufficient to comply with the requirements of Rule 9(b).") (citing *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 234-35 (1st Cir. 2004)); *see also Cafasso*, 637 F.3d at 1057 ("In light of [relator's] failure to identify any particular false claims or their attendant circumstances, as well as the 'obvious alternative explanation' that no false claims occurred, we will not draw the unwarranted and implausible inference that discovery will reveal evidence of such false claims.").

Further, even if Relator could credibly allege information about the individual physicians' decisions or that no exception applied (neither of which she can do), that would still not be enough. To allege falsity under the FCA, a relator must allege "a palpably false statement, known to be a lie when it is made." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006); *see United States ex rel. Ruhe v. Masimo Corp.*, 977 F. Supp. 2d 981, 991 (C.D. Cal. 2013), *aff'd*, 640 F. App'x 666 (9th Cir. 2016) (recognizing that "false" claims are "intentional, palpable lie[s]"). Relator merely asserts that the claims were not separately reimbursable under the "global surgical fee rule" and therefore must have been false. *See id.* This, however, does nothing to show "what is false or misleading about a

statement and why it is false." *United Healthcare Ins. Co.*, 848 F.3d at 1180.

Relator's entire theory about Medicare claims hinges on her flawed assumption that every claim that may not be reimbursable under Medicare billing guidance must also be a "false claim," along with irrelevant inferences she attempts to draw from her surgery. But merely failing to comply with a Medicare billing manual—which falls far below the weight given to a law or regulation—does not mean that the claim was "false" for purposes of the FCA.[7] *See, e.g.*, *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."); *Masimo Corp.*, 977 F. Supp. 2d at 991, *aff'd*, 640 F. App'x 666 (9th Cir. 2016) ("[m]ere regulatory violations, standing alone, do not give rise to False Claims Act liability"). As the Ninth Circuit has made clear, "[i]t is not the case that any. . . violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a [FCA] claim." *Anton*, 91 F.3d at 1265-66.

Relator's faulty logic, "possible billing mistake = false claim," is not only legally incorrect, it is also wholly insufficient to plead any "false" claim with particularity.[8] *Cafasso*, 637 F.3d at 1057 ("This type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude."); *United States ex rel. Gross v. AIDS Research All.-Chicago*, 415 F.3d 601, 603 (7th Cir. 2005) ("The [SAC] fails under Rule 9(b) because it does not allege to the required degree

---

[7] Medicare billing guidance alone cannot be the basis of an FCA action. *See Azar v. Allina Health Servs.*, --- U.S. ---, 139 S. Ct. 1804, 1808, 204 L. Ed. 2d 139, 144 (2019) (overturning attempted enforcement of Medicare reimbursement guidance not subject to formal rulemaking process); *Polansky v. Exec. Health Res., Inc.*, No. 12-CV-4239, 2019 WL 5790061, at *14-17 (E.D. Pa. Nov. 5, 2019).

[8] Likewise, Relator's bare assertion that Medicare providers generally "agree to abide by the rules, regulations, policies and procedures governing reimbursement" is not sufficient, SAC ¶ 103, and courts have rejected that such "general sweeping language" can satisfy the FCA's falsity requirements. *See, e.g., Gonzalez v. Planned Parenthood of L.A.*, No. cv-05-8818-AHM-FMOx, 2012 WL 2412080, at *7 (C.D. Cal. June 26, 2012); *United States ex rel. Cook v. Providence Health & Servs.*, No. C13-1312RAJ, 2014 WL 4094116, at *5 (W.D. Wash. Aug. 18, 2014).

14

of particularity the false statement or statements made by the defendants, with knowledge of their falsity, for the purpose of obtaining payment from the government."). The SAC fails to identify any *false* statement to the government.[9]

> b. The SAC does not provide "reasonable indicia that lead to a strong inference" that false or fraudulent claims were submitted to the government.

Because she cannot identify any "false" claim to the government, Relator attempts to support her allegations with speculative inferences about her own case, information from other lawsuits, and conspiracy theories about "STANFORD's" business practices. *See, e.g.*, SAC ¶¶ 37-38, 71-75. Her vague allegations of SHC's "routine policy" and claims that inferences of fraud "may" be made based on these sources are not enough to provide any indicia (let alone a reliable indicia that lead to a strong inference) that false claims were submitted to the government.[10] *See United States ex rel. Defatta v. UPS*, 771 Fed. Appx. 735, 737 (9th Cir. 2019); *See, e.g.*, SAC ¶¶ 122, 135-36, 152, 157, 184, 198, 204, 223, 255, 260.

> i. The SAC is based on impermissible speculation based on Relator's surgery.

---

[9] Relator also fails to allege knowledge about, or materiality of, any "false" statement. Although Relator asserts that "Defendants" and "STANFORD" acted "knowingly," this expansive, bare allegation is insufficient to plead knowledge with sufficiency to make "entitlement to relief plausible." *See* SAC ¶¶ 68, 70, 83-84, 87, 91, 124, 132, 168, 273; *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1012 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017). Furthermore, even if Relator's allegations were true, nothing of which she complains was material to the government's payment decisions—the government possessed even more information about those claims than Relator has but *continued to pay* them. *See Universal Health Servs. v. United States*, 136 S. Ct. 1989, 2003-04 (2016); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. 208-cv-01885CASAGR, 2019 WL 3291582, at *13 (C.D. Cal. June 14, 2019); *see also United States ex rel. Swoben v. Scan Health Plan*, No. cv-09-5013-JFW, 2017 WL 4564722, at *6 (C.D. Cal Oct. 5, 2017); *United States ex. rel. Martinez v. Orange Cty. Glob. Med. Ctr., Inc.*, No. 815-cv-01521, 2017 WL 9482462, at *2.

[10] Relator's SAC is also hopelessly contradictory, relying on vague allegations of upcoding to support a supposed inference of fraud while on the other hand suggesting that SHC *underbilled* the government in other scenarios. *See* SAC ¶ 54.

Relator's case is premised on an enormous inferential leap: she assumes that "STANFORD" upcoded government claims based on her singular experience with a commercial insurance company in 2012, which she then argues gives rise to an inference of fraud for government claims. *See, e.g.*, SAC ¶¶ 37-38, 40-46, 54, 122-25, 131-33, 140, 142, 157-161, 166-177, 188-92, 215, 218, 232-33, 241, 244-253, 264-66, 268, Exs. A, B, D, E, G, H, I, M, N, O, DD. Each of Relator's "causes of action" expressly relies on allegations about her surgery and conclusions she attempts to draw from it.[11] *See, e.g., id.* ¶¶ 40-46, 123-25, 131-39, 156-61, 164-69, 176-77, 263-68. For example, although Relator did not receive a single medical record in response to her FOIA requests, she makes broad allegations about "countless" medical and surgical records based on speculative guesses from her own case. *See, e.g., id.* ¶¶ 48, 168, 175, 183, 192, 198, 208, Exs. Q, AA, BB, CC.

But Relator's surgery cannot support a claim under the FCA because it did not, in fact, involve a *single* claim to a government program.[12] Relator's positions mirror those that warranted dismissal in *Karp.* 2018 WL 6333670, at *3-4. In that case, relators brought FCA claims against their former physician and his medical practice alleging Medicare fraud based on publicly available Medicare data, medical claims coding rules, and 57 examples of allegedly false claims submitted to private insurance companies. *Id.* at *1. The Court rejected the relators' argument that patients of a medical practice should be held to a relaxed pleading standard and dismissed relators' complaint *without leave to amend* because "the fact that Defendants may

---

[11] Relator even outright admits in the SAC that her case is based on claims submitted to her own commercial insurance company and that the Medicare data is just merely illustrative. *See* SAC ¶¶ 3, 174 n.3, 197 n.4, 278.

[12] Courts have universally held that an FCA claim must be based on claims to the government. *See United Healthcare Ins. Co.*, 848 F.3d at 1173 (holding that the alleged conduct and falsity must be material to *the government* paying out money or forfeiting moneys due); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492 (3rd Cir. 2017) (same); *Aflatooni*, 314 F.3d at 1002 (same); *Cafasso*, 637 F.3d at 1056 (same); *see also N. Am. Health Care, Inc.*, 173 F. Supp. 3d at 951-52 (allegations of false billing to commercial payors generally cannot support an FCA claim); *Todd v. Fid. Nat'l Fin., Inc.*, No. 12-cv-00666-REB-CBS, 2014 U.S. Dist. LEXIS 130256, at *29, 40 (D. Colo. Aug. 19, 2014) (recommending dismissal of claims based on failure to sufficiently allege nexus with federal funds).

have submitted false claims to private insurers is not enough to create a strong inference that they likewise submitted false claims to Medicare." *Id.* at *4.

Courts across the country have rejected the argument that claims submitted to a *private insurance company* can provide "reliable indicia that lead to a strong inference that [false] claims were actually submitted" to the *government*. *See, e.g.*, *Aflatooni*, 314 F.3d at 1002 (9th Cir. 2002) (recognizing that it is not enough "to describe a private scheme in detail but then to allege simply and without any stated reason for [this] belief that claims requesting illegal payments must have been submitted" to the government); *Puhl*, 2019 WL 6954317, at *4 (dismissing FCA claims because "allegations that providers submitted false claims to private insurers are not enough to create the strong inference needed to plead an FCA claim"); *Karp*, 2018 WL 6333670, at *4 ("[T]he fact that Defendants may have submitted false claims to private insurers is not enough to create a strong inference that they likewise submitted false claims to Medicare"); *United States ex rel. Joseph v. Brattleboro Retreat*, No. 2:13-CV-55, 2014 WL 3908432, at *11 (D. Vt. Aug. 10, 2014) (holding that examples of allegedly incorrect claims involving "commercial insurance" provide "no support for Relator's claims under the FCA"); *Frazier*, 812 F. Supp. 2d at 1017 (same). Relator's allegations about her own case, and the speculative inferences she tries to draw from it, cannot support any claim under the FCA.

        ii.  <u>The SAC attempts to create inferences based on "new" allegations from publicly available sources.</u>

Relator attempts to shore up her allegations by incorporating even more publicly available information. For example, Relator adds allegations about "bills" for two other commercially insured patients, but those "examples" come directly from news sources published before Relator filed the SAC and are no more helpful than Relator's references to her own "legally irrelevant" surgery. *See* ¶ SAC 60 & Ex. J (referencing facts and a picture available at https://www.newsbreak.com/news/0OBgDZxq/opinion-14339666-biopsy-charge-

1     highlights-medical-bill-transparency-woes), ¶ 61 (referencing facts available at
2     https://www.npr.org/sections/health-shots/2018/10/29/660330047/bill-of-the-
3     month-a-48-329-allergy-test-is-a-lot-of-scratch).

4         Relator also recycles allegations from previous FCA suits, as if other people's
5     allegations could somehow save her inadequate and unoriginal claims. She  relies on
6     information from Ms. Gaines to assert that "Defendants institutionally trained coders
7     using distributed billing 'cheat sheets' and instructed their army of medical billers
8     and coders to always bill at the maximum level, regardless of the lack of
9     substantiating medical record, or medical necessity," SAC ¶ 66, and that such "high
10    rates of coding" support an inference of fraud under the FCA. *See*, *e.g.*, *id.* ¶¶ 67-69,
11    147-48, 155-57, 181-84, 268-71, Ex. C (declaration of Tomiya Gaines, a relator in a
12    separate FCA suit, alleging doctors were pressured to keep billings high); *see also id.*
13    ¶¶ 146, 157, 179, 184, 199, 219, 223, 230, 235, 253, 254, 260, 262, 269, 271, 274
14    (Gaines' information about "'high rates of coding' and creative coding schemes" is
15    "demonstrative of fraud within the statutory definitions"). Relator even attaches an
16    old affidavit from Gaines as support for these conclusions. *See* Ex. C; *see also, e.g.*,
17    *id.* ¶¶ 66-67, 69, 146, 167, 179, 199, 219, 254, 269.

18        Courts universally recognize that a relator cannot base her FCA claims on the
19    allegations of other, previously filed FCA suits. *See, e.g.*, *Davidov*, 623 F. App'x at
20    376; *see also United States ex. rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1013-
21    14 & 1019 (9th Cir. 2017) (describing the "belt and suspenders" effect that results
22    when multiple FCA provisions overlap to bar a duplicative qui tam case). Relator's
23    attempt to do so in this case shows she is not an "original source" of any information
24    that could support a "strong inference that [false] claims were actually submitted" to
25    the government. *See Davidov*, 623 F. App'x at 376.

26        Even if Relator could appropriate other people's allegations as her own (which
27    she cannot), they would nonetheless be insufficient to support a "strong inference"
28    that "false" claims were submitted to the government. *See, e.g.*, *Armstrong-Young*,

2018 WL 4773111, at *3 (holding that there was no reliable indicia of false claims being submitted where complaint "br[ought] only conclusory allegations such as that [defendant] . . . pressured . . . all its employees . . . to maximize the number of patient admissions" regardless of whether patients were eligible for Medicare hospice benefits); *see also United States ex. rel. Mastej v. Health Mgmt. Assocs.*, 591 F. App'x 693, 704-05 (11th Cir. 2014) ("It is not enough for [relator] to state baldly that he was aware of the defendants' billing practices . . . or to offer only conjecture about the source of his knowledge."); *Frazier*, 812 F. Supp. 2d at 1017 (recognizing that allegations about an unusually high number of certain surgeries at a particular hospital were not sufficient indicia of false claims being submitted).

### iii. The SAC does not satisfy Rule 9(b).

The SAC relies on generalized allegations that cannot supply the "factual content that allows the court to draw the reasonable inference that . . . [each Defendant is] liable for the misconduct alleged" or satisfy Relator's obligation to plead the "who, what, when, where, and how of the misconduct charged." *Iqbal*, 556 U.S. at 678; *Kubin v. Abode Servs. Agency*, No. 18-cv-00658-MEJ, 2018 WL 776355, at *2-3 n.2 (N.D. Cal. Feb. 8, 2018). Although the Court previously cautioned that many defendants "appear to be thrown into the complaint for no particular reason," ECF. No. 54, Relator uses the same shotgun pleading approach—lumping Defendants together as "STANFORD," "Defendants," or "STANFORD HEALTH CARE et al." and attempting to justify her pleading failures by adding implausible, bare-bones allegations that every defendant is the alter ego of the others. *See*, *e.g.*, SAC ¶¶ 2, 26-33.[13],[14] The SAC also fails to make a substantive reference to Stanford Healthcare

[13] Just as in her FAC, much of Relator's background and each of her "causes of action" in the SAC are expressly based on the actions of "STANFORD." *See* SAC ¶¶ 2, 3, 37-38, 40-46, 50-51, 53, 56-57, 67, 70-74, 122-23, 132-33, 136, 139-142, 144-47, 152, 155, 157-158, 161, 164-167, 169-171, 173, 175-179, 184, 189-196, 198-201, 204, 207-211, 215-16, 218-19, 223, 231, 233-235, 238-240, 244-251, 253—54, 260, 262, 268-269, 274, 279, 281-284.
[14] The SAC also relies on speculation about "STANFORD's" business practices and bases several allegations "upon information and belief" without sufficiently stating "a factual basis for that belief." *See*, *e.g.*, SAC ¶¶ 26-32, 51, 58, 138, 165. This

19

Billing Office, The Board of Directors of the Stanford Healthcare, The Board of Directors of the Lucile Packard Children's Hospital at Stanford, or The Leland Stanford Junior University (a/k/a The Board of Trustees of the Leland Stanford Junior University). *See id.* ¶¶ 15-17, 20-22, 29. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011).

Just like the FAC, the SAC does not contain the plausible and particular facts that could support FCA liability against Dr. Dirbas or Ms. Zumwalt or show that they were "personally making false Medicare billing decisions." *See* ECF No. 54. Indeed, Relator alleges just the opposite—that hundreds of unnamed "medical billers and coders" created and submitted bills. *See, e.g.*, SAC ¶¶ 58, 66. Relator's assertion that Stanford University's General Counsel, Ms. Zumwalt, is a "revenue mastermind," *id.* ¶ 195, who was personally involved in directing allegedly inaccurate claims to Medicare likewise rests on speculation supported by no factual detail. *See, e.g.*, *id.* ¶¶ 38, 71-72, 124, 141-42, 156, 161, 164, 168-73, 182, 210, 222, 259, 262, 283. Courts are especially skeptical of FCA suits against individual defendants in cases like this. *See, e.g.*, *Bly-Magee v. California*, 236 F.3d at 1014, 1018 (9th Cir. 2001).

### 2. Relator's New Seventh Cause of Action is Barred by the Court's Previous Order and Fails as a Matter of Law.

Relator attempts to assert a new seventh cause of action, for the first time under 31 U.S.C. § 3729(a)(1)(G), which is barred by the Court's order dismissing the

---

speculation does not establish "more than a sheer possibility that [some unspecified Defendant] has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Ebeid*, 616 F.3d at 1000 (noting "global indictment" of a defendant's business does not satisfy Rule 9(b)); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (holding allegations of fraud based on information and belief do not satisfy Rule 9(b)); *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

FAC.[15] *See* ECF No. 54 (ordering Relator not to add any "new claims" to the SAC); *see* SAC ¶¶ 272-84. "[Section] 3729(a)(1)(G) makes liable any person who [1] 'knowingly' uses [2] 'a false record or statement [3] material to an *obligation* to pay . . . the Government, or [who] [1] knowingly conceals or knowingly and improperly [2] avoids or decreases [3] an *obligation* to pay . . . the Government." *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 940 (N.D. Cal. 2019) (citing *Cafasso*, 637 F.3d at 1056) (emphasis added); *United States ex rel. Niazi v. CVS Pharmacy, Inc.*, No. 15-5518, 2018 WL 654289, at *6 (C.D. Cal. Jan. 31, 2018).

Even if Relator could assert this new claim in her SAC (which she cannot), her allegations fall short of what is required to plead a claim under § 3729(a)(1)(G) because her claim is premised on alleged retention of money belonging to the State or commercial insurers. *See* SAC ¶ 273 (alleging retention of money owed "in the State," not to federal government), ¶ 277 ("Had the State known . . ."), ¶ *id.* ("DEFENDANTS acted . . . to defraud the *commercial* payors in the State") (emphasis added); *see also id.* ¶¶ 3, 43, 125, 132, 161, 163, 170, 173. But the FCA does not apply to allegations about commercial insurers or the State. *See, e.g.*, *Cafasso*, 637 F.3d at 1056.

Other than irrelevant references to commercial insurers and the State, this new and unsupported theory repeats allegations from other "causes of action" and concludes that Ms. Zumwalt "directed those under her to present false records material to [sic] obligation to pay and instructed those under her to conceal Defendants' demonstrated schemes and institution's billing noncompliance." SAC ¶¶ 274-77, 279-83; *see also id.* ¶¶ 141, 171. This statement is irreconcilable with Relator's claim that "Defendants" were entitled to keep alleged overpayments by contract, and, like the rest of her allegations, is insufficient to state a claim under the FCA. SAC ¶ 159; *see also id.* ¶¶ 74-75, 89-91. Relator offers only conclusory

---

[15] Relator never referenced § 3729(a)(1)(G) in her FAC, nor did she plead its elements as part of her supposed FCA claim. *See* FAC ¶¶ 337-44.

1    statements, without describing a single instance of SHC (or any defendant) failing to

2    repay or otherwise transmit money to the government, and this new cause must be

3    dismissed. *See U.S. ex rel. Kelly v. Serco, Inc.*, No. 11CV2975 WQH-RBB, 2014 WL

4    4988462, at *12 (S.D. Cal. Oct. 6, 2014), *aff'd sub nom. United States ex rel. Kelly*

5    *v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) (holding that a reverse FCA claim

6    requires a false statement made to avoid paying the government); *United States v.*

7    *CVS Pharmacy, Inc.*, 2018 WL 654289, at *7 (dismissing claim where relator failed

8    to sufficiently plead facts supporting allegation that defendant withheld payments

9    from the government); *Providence Health & Servs.*, 2014 WL 4094116, at *10

10   (same); *Scott v. Arizona Ctr. for Hematology & Oncology PLC*, No. CV-16-03703-

11   PHX-DGC, 2018 WL 1210903, at *7 (D. Ariz. Mar. 8, 2018) (allegation that

12   defendants "avoided the obligation to return" overpayments insufficient even if

13   overpayments are alleged with particularity).

14        Nor has Relator pled what is necessary to state a conspiracy claim under this

15   or any other section of the FCA. *See* SAC ¶ 278. To allege a claim for conspiracy, a

16   relator must allege that two or more parties knowingly "'reached a unity of purpose

17   or a common design and understanding, or a meeting of the minds in an unlawful

18   arrangement'" to commit a violation listed in § 3729(a)(1)(C). *Integra Med Analytics*

19   *LLC*, 2019 WL 3282619, at *22 (C.D. Cal. July 16, 2019) (quoting *Gilbrook v. City*

20   *of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)).

21        Because Relator has not pled any cause under the FCA, her conspiracy

22   allegations also fail as a matter of law. *See, e.g.*, *Lesnik*, 374 F. Supp. 3d at 940;

23   *United States v. Strock*, No. 15-CV-0887, 2018 WL 647471, at *12 n.7 (W.D.N.Y.

24   Jan. 31, 2018). They are also at direct odds with the established intracorporate

25   conspiracy doctrine and her own allegations that all defendants are the same entity.

26   *See, e.g.*, *United States ex rel. Lupo v. Quality Assurance Servs.*, 242 F. Supp. 3d

27   1020, 1027 (S.D. Cal. 2017) ("The court denies Relator leave to amend her allegation

28   that Defendants conspired among themselves, as that claim is barred by the

intracorporate conspiracy doctrine and therefore futile."); *United States ex rel. Campie v. Gilead Sci., Inc.*, No. C-11-0941 EMC, 2015 WL 106255, at *15 (N.D. Cal. 2015) (FCA conspiracy claims barred by the intracorporate conspiracy doctrine); *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1037 (C.D. Cal. 2012) (same).

More fundamentally, Relator's conclusory allegations do not show that the Defendants had a meeting of the minds or jointly intended to submit false claims to Medicare. *See* SAC ¶¶ 25-28, 75, 93, 278. Thus, the conspiracy allegations are equally unavailing and must be dismissed. *See Integra Med Analytics LLC*, 2019 WL 3282619, at *22 (C.D. Cal. July 16, 2019) ("As the alleged object of this conspiracy was to submit false claims to Medicare, Relator must show that Defendants jointly intended to do so. For conspiracy, reckless disregard is not enough.").

### C.   Relator has Failed to Properly Serve Dr. Dirbas.

In addition to each of the reasons outlined above, Dr. Dirbas must also be dismissed from this suit under Rules 12(b)(4) and 12(b)(5) because Relator cannot prove valid service of process under Rule 4. *See Vineyard v. UPS*, No. 16-cv-00125-JST, 2016 WL 1410127, at *1 (N.D. Cal. 2016) ("Rules 12(b)(4) and 12(b)(5) provide a mechanism by which a court may dismiss an action for insufficiency of service of process."); *United Med. Devices, LLC v. Blue Rock Capital, Ltd.*, No. CV16-1255 PSG, 2016 WL 9047123, at *3 (C.D. Cal. 2016).

Relator failed to attempt personal service on Dr. Dirbas before opting for substituted service under California Code of Civil Procedure § 415.20(b),[16] and then failed to mail a copy of the FAC until weeks *after* it had been dismissed by the Court.

---

[16] Under California Code of Civil Procedure § 415.20(b), a person may be served by (1) "leaving a copy of the *summons and complaint* at the person's . . . usual place of business" with "a person *apparently in charge*" of that place and (2) "thereafter mailing a copy of the summons and of the complaint . . . to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(b) (emphasis added). This method of service is only "deemed complete on the *10th day after the mailing*," and is only effective if "a copy of the summons and complaint cannot *with reasonable diligence* be personally delivered."

*See* ECF 54 (February 4 order dismissing Relator's FAC); ECF 58 (showing mail was sent February 20); *see also* Declaration of Frederick Dirbas in Support of Section IV.C. of Moving Defendants' Motion to Dismiss and Strike Second Amended Complaint ("Dirbas Decl.") ¶¶ 2-5. These failures render the "service" by mail ineffective.[17] *See Justice v. Albertsons Corp.*, No. 11-CV-2253-H (BLM), 2012 WL 355031, at *4 (S.D. Cal. Feb. 2, 2012) ("leaving a complaint at Defendant's place of business without attempting personal service is insufficient under Rule 4"); *Verde Media Corp. v. Levi*, No. 14-cv-00891 YGR, 2014 WL 3372081, at *3 (N.D. Cal. 2014) ("[R]equirements for . . . service are strictly interpreted").

Not only did Relator fail to serve Dr. Dirbas with process for the FAC, she also failed to serve Dr. Dirbas with the SAC by the Court's March 2, 2020, deadline. *See* ECF 54. Instead, on March 2, 2020, Relator sent Dr. Dirbas an email attaching her SAC, *see* Dirbas Decl. ¶¶ 3, in clear noncompliance with any relevant authority governing service of process.[18] *See Kexuan Yao v. Crisnic Fund*, No. SACV 10-1299 AG, 2011 WL 3818406, at *5 (C.D. Cal. Aug. 29, 2011) ("The court is unaware of any authority supporting the proposition that an emailed copy of a summons would be proper personal service."); *Abers v. Rohrs*, 217 Cal. App. 4th 1199, 1206 (2013) ("Even undisputed *actual* notice of a proceeding does not substitute for proper *service* of the petition or complaint."); *see also Trollope v. Dep't of Child Support Servs.*, No. CV 18-09220-JLS (JDE), 2019 WL 3927349, at *10 (C.D. Cal. June 7, 2019) (dismissing action where plaintiff ignored court orders regarding service). Thus, Dr.

---

[17] Additionally, no operative complaint could have been served. *See Choudhuri v. Specialized Loan Servs. LLC*, No. 19-cv-00028, 2019 WL 3254130, at *1-2 (N.D. Cal. July 19, 2019); *Pierson v. Nat'l Inst. For Labor Rels. Research*, No. 15 C 11049, 2016 WL 6093490, at *4 (N.D. Ill. Oct. 17, 2016).

[18] Notably, Relator's email did not attach *any summons*, Dirbas Decl. ¶ 2, which is yet another independent basis for dismissal. *See Escalante v. Barrett/Grider Settlement Plan Adm'r*, No. 3:18-cv-00370-MMD-CBC, 2019 WL 177475, at *4 (D. Nev. 2019) (dismissing claims where complaint was mailed without the corresponding summons); *Lott v. United States Dep't of Labor, DEEOIC*, No. 3:11-cv-00258-ECR, 2012 WL 1278779, at *3 (D. Nev. Apr. 12, 2012) (same); *Patel v. Dameron Hosp.*, CIV S-99-1275, 2000 WL 35619441, at *6 (E.D. Cal. June 23, 2000) (same).

---

24

Dirbas has never been served with process in this matter, and he should be dismissed from this case.

**D.     The SAC Should be Stricken Because It Violates L.R. 5.2-1.**

In addition to being dismissed for the many reasons outlined above, Relator's SAC should also be stricken in its entirety from the Court's Docket pursuant to Rule 12(f) because Relator: (1) divulged full residential addresses for Ms. Zumwalt and Dr. Dirbas in the SAC, in clear violation of L.R. 5.2-1, *see* SAC ¶¶ 18-19; Declaration of Frank E. Sheeder III in Support of Section IV.D. ("Sheeder Decl.") ¶¶ 2-3; (2) refused to acknowledge her violation, instead insisting that Defendants draft a redacted version of her own live pleading, Sheeder Decl. ¶¶ 5-7; and (3) published a press release distributing the SAC online the day her counsel was informed of this issue, Sheeder Decl. ¶¶ 2, 4. Defendants are left with no choice but to ask the Court to strike Relator's SAC. *See Baker v. FirstCom Music*, No. 16-cv-08931 VAP, 2018 WL 2584814, at *8 (C.D. Cal. Jan. 16, 2018) (striking filing due to its improper inclusion of party's home address in violation of L.R. 5.2-1); Fed. R. Civ. P. 12(f). Should any of Relator's claims survive dismissal (which they should not), Moving Defendants request that Relator be ordered to file a redacted version of her SAC.

**V.     CONCLUSION**

Moving Defendants respectfully request that the Court grant their Motion and dismiss Relator's Second Amended Complaint with prejudice to Relator and strike it in its entirety from the Court's Docket.

Dated:  March 30, 2020                **ALSTON & BIRD LLP**

By:  /s/ Kimberly Chemerinsky

Attorneys for Moving Defendants
**STANFORD HEALTH CARE, STANFORD HEALTH CARE ADVANTAGE, THE LELAND STANFORD JUNIOR UNIVERSITY (A/K/A/ THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY), DEBRA ZUMWALT, and FREDERICK DIRBAS**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2020, I caused a copy of the **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT** to be served upon the following counsel and parties in interest via the Court's CM/ECF system and First Class U.S. Mail:

Gloria Juarez, Esq.
Law Offices of Gloria Juarez
26081 Merit Circle, Suite 112
Laguna Hills, CA 92653

**Counsel for Relator**

Frank D. Kortum
Assistant United States Attorney
Room 7516, Federal Building
300 N. Los Angeles St.
Los Angeles, CA 90012

**Counsel for the United States of America**


 /s/    *Frank E. Sheeder III*
Counsel for Moving Defendants