KIMBERLY K. CHEMERINSKY (State Bar No. 277637)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
Email: kim.chemerinsky@alston.com

FRANK E. SHEEDER III (Admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899
E-mail: frank.sheeder@alston.com

Attorneys for Moving Defendants
**STANFORD HEALTH CARE, STANFORD HEALTH CARE ADVANTAGE, THE LELAND STANFORD JUNIOR UNIVERSITY (A/K/A THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY), DEBRA ZUMWALT, and FREDERICK DIRBAS**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> and <br><br> THE STATE OF CALIFORNIA <br> *Ex. Relator* Emily Roe., an individual; <br><br> Plaintiffs, <br><br> v. <br><br> STANFORD HEALTHCARE BILLING DEPARTMENT, STANFORD HEALTH CARE (FORMERLY KNOWN AS STANFORD HOSPITALS AND CLINICS), DR. FREDERICK DIRBAS, DEBRA ZUMWALT, THE BOARD OF DIRECTORS OF THE STANFORD HEALTH CARE, THE BOARD OF DIRECTORS OF THE LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, THE LELAND JUNIOR UNIVERSITY, THE BOARD OF TRUSTEES OF STANFORD UNIVERSITY, STANFORD HEALTH CARE ADVANTAGE and DOES 1-10, inclusive. <br><br> Defendants. | Case No. 2:17-cv-08726-DSF-AFM <br> Assigned to the Honorable Dale S. Fischer, [Courtroom 7D] <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOVING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)** <br><br> [Filed concurrently with Notice of Motion and Motion; and [Proposed] Order] <br><br> <u>Hearing</u> <br><br> Date: May 4, 2020 <br> Time: 1:30 p.m. <br> Ctrm: 7D <br><br> Complaint Filed: December 4, 2017 <br> First Am. Complaint: June 22, 2018 <br> Second Am. Complaint: March 2, 2020 |

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ................................................................................1

II.   RELEVANT HISTORY AND BACKGROUND ...........................................2

III.  LEGAL STANDARDS .........................................................................5

IV.   ARGUMENT ......................................................................................6

   A.   The SAC Should Be Dismissed Because Relator Has Not Attempted to Satisfy Her Burden to Proceed Anonymously. .................................6

   B.   The SAC Should Be Dismissed Because Relator Cannot Satisfy Her Burden to Proceed Anonymously Under the *Kamehameha* Factors. ....6

      1.   Relator cannot allege a fear of harm that is either severe or reasonable. ...........................................................................7

         a.   No reasonable risk of retaliatory and severe physical or mental harm. ...................................................................7

         b.   No highly sensitive and personal allegations. ..................9

      2.   Relator is not particularly vulnerable to retaliation. ................10

      3.   The Public and Moving Defendants will be prejudiced by Relator's use of a pseudonym. ..............................................12

V.    CONCLUSION ..............................................................................15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*4 Exotic Dancers v. Spearmint Rhino*,
    No. CV-08-4038, 2009 WL 250054 (C.D. Cal. Jan. 29, 2009) ........................... 9

*Diaz v. Intuit, Inc.*,
    No. 5:15-cv-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018) .......................................................................................................................... 4

*Doe ex rel. Doe v. Harris*,
    No. 14–cv–00802, 2014 WL 4207599 (W.D. La. Aug. 25, 2014) .................... 10

*Doe v. Blue Cross & Blue Shield United of Wis.*,
    112 F.3d 869 (7th Cir. 1997) .................................................................. 10, 12

*Doe v. Coder*,
    No. C-10-4756, 2010 WL 4938282 (C.D. Cal. Nov. 30, 2010) ........................... 8

*Doe v. John F Kennedy Univ.*,
    No. C-13-01137, 2013 WL 4565061 (N.D. Cal. Aug. 27, 2013) ...................... 10

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*,
    596 F.3d 1036 (9th Cir. 2010) ................................................................ 4, 5, 6, 7

*Doe v. Penzato*,
    No. CV10-5154 MEJ, 2011 WL 1833007 (N.D. Cal. May 13, 2011) ............... 12

*Doe v. Rostker*,
    89 F.R.D. 158 (N.D. Cal. 1981) ............................................................ 5, 6, 12

*Doe v. Ryder Integrated Logistics, Inc.*,
    No. CV 12-5737 DSF, slip op. (C.D. Cal. Oct. 12, 2012) ............................... 6, 7

*Doe v. Texaco, Inc.*,
    No. C06-02820, 2006 WL 2850035 (N.D. Cal. Oct. 5, 2006) ........................... 12

*Doe v. UNUM Life Ins. Co. of Am.*,
    164 F. Supp. 3d 1140 (N.D. Cal. 2016) ............................................................ 10

*Does I Thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ............................................................ 5, 7

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

*John v. City of Sacramento*,
    No. 2:16-CV-1640, 2018 WL 558767 (E.D. Cal. May 22, 2018) ....................... 6

*Perez v. ECFC Holdings, Inc.*,
    No. 16-4000 DSF, 2016 WL 10988574 (C.D. Cal. Aug. 2, 2016) ..................... 5

*Qualls v. Rumsfeld*,
    228 F.R.D. 8 (D.D.C. 2005) ......................................................................... 5, 8

*R.P. v. Bd. of Trs. of Vista Unified School Dist.*,
    No. 08CV1657, 2008 WL 4753743 (S.D. Cal. Oct. 29, 2008) .......................... 11

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) .......................................................................... 11

*Sealed Plaintiff v. Sealed Defendant #1*,
    537 F.3d 185 (2d Cir. 2008) ........................................................................... 12

*Under Seal v. Under Seal*,
    No. 94-1171, 1994 WL 283977 (4th Cir. June 27, 1994) ................................. 13

*United States ex. rel. Durham v. Prospect Waterproofing, Inc.*,
    818 F. Supp. 2d 64 (D.D.C. 2011) ............................................................ 11, 12

*United States ex rel. Eberhard v. Angiodynamics, Inc.*,
    No. 3:11-CV-556, 2013 WL 2155327 (E.D. Tenn. May 17, 2013) ..................... 8

*United States ex rel. Frazier v. IASIS Healthcare Corp.*,
    812 F. Supp. 2d 1008 (D. Ariz. 2011) .............................................................. 9

*United States ex rel. Graves v. Internet Corp. for Assigned Names & Nos., Inc.*,
    398 F. Supp. 3d 1307 (N.D. Ga. 2019) ............................................................ 13

*United States ex rel. Grover v. Related Cos., LP*,
    4 F. Supp. 3d 21 (D.D.C. 2013) .......................................................... 5, 8, 10, 13

*United States ex rel. Herrera v. Bon Secours Cottage Health Servs.*,
    665 F. Supp. 2d 782 (E.D. Mich. 2008) ..................................................... 10, 13

*United States ex rel. Karp v. Ahaddian*,
    No. CV-16-500, 2018 WL 6333670 (C.D. Cal. Aug. 3, 2018) ........................... 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

*United States ex rel. Locklear v. Medixx Transp., LLC*,
No. CV617-139, 2018 WL 3419272 (S.D. Ga. July 13, 2018) ........................... 11

*United States ex. rel. Luciano v. Pollack Health & Wellness, Inc*,
No. 13-6815, 2015 WL 2168655 (D.N.J. 2015 Apr. 30, 2015) ........................... 8

*United States ex rel. Permison v. Superlative Techs., Inc.*,
492 F. Supp. 2d 561 (E.D. Va. 2007) ............................................... 9, 13

*United States ex rel. Puhl v. Terumo BCT*,
No. CV-17-8446, 2019 WL 6954317 (C.D. Cal. Sept. 12, 2019) ........................ 9

*United States ex rel. Schweizer v. OCE, N.V.*,
577 F. Supp. 2d 169 (D.C. Cir. 2008) ............................................... 6

*United States v. Endo Health Sols.*,
No. 13-cv-3102, 2015 WL 12552049 (E.D. Pa. June 8, 2015) .......................... 10

*United States v. Hiramanek*,
No. 17-cv-03389-BLF, 2017 WL 5972590 (N.D. Cal. Nov. 30,
2017) ............................................................................. 6

*United States v. King Pharm., Inc.*,
806 F. Supp. 2d 833 (D. Md. 2011) ................................................. 12

*United States v. Stoterau*,
524 F.3d 988 (9th Cir. 2008) ..................................................... 5, 12

*United States v. UCB, Inc.*,
No. 14-cv-2218, 2017 WL 838198 (S.D.N.Y. Feb. 24, 2017) ................... 8, 12, 13

*W.N.J. v. Yocom*,
257 F.3d 1171 (10th Cir. 2001) .................................................... 6

*Zuegel v. Mt. View Police Dep't (MVPD)*,
No. 17-cv-03249-BLF, 2017 U.S. Dist. LEXIS 172735 (N.D. Cal.
Oct. 18, 2017) .................................................................... 7

## RULES

Rule 10(a) ........................................................... 4, 5, 6, 12, 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

## I. **INTRODUCTION**

Federal courts have established a strong presumption against anonymous civil suits, and a party can overcome it only in the rare case where evidence establishes that the need for anonymity outweighs the public's presumed right of access to open judicial proceedings. This is not one of those rare cases.

In her Second Amended Complaint ("SAC"), Relator divulged to the Court that she is pursuing this False Claims Act ("FCA") case anonymously. Relator is a serial litigant who has been hiding her identity in this case for over two years under the pseudonym "Emily Roe" without requesting permission from the Court or attempting to comply with Federal Rule of Civil Procedure ("Rule") 10(a)'s mandate that the title of every complaint "include the names of all the parties."

Relator cannot prove that this is one of the rare cases justifying complete one-sided anonymity. Nowhere in her 73-page SAC or over six hundred pages of exhibits (most of which are publicly available) does Relator present any exceptional circumstances that could override the public's right of access to these proceedings and the identities of the parties. She instead offers generic statements about medical privacy and the remote possibility of financial harm, both of which have been regularly rejected by federal courts across the country in FCA suits.

Relator's tactics—such as including personal information about individual defendants in her filings in violation of Local Rule ("L.R.") 5.2-1 and issuing multiple press releases about this case—belie any professed need for anonymity. Instead, they reveal Relator's mission to excoriate defendants in public as she masquerades under a fictional name and stymies the public's right to know who is really acting on its behalf. For these reasons and those discussed below, Defendants Stanford Health Care, Stanford Health Care Advantage, the Leland Stanford Junior University (a/k/a The Board of Trustees of the Leland Stanford Junior University), Debra Zumwalt, and Frederick Dirbas (collectively, "Moving Defendants") respectfully urge the Court to grant their Motion and dismiss the SAC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

## II.   <u>RELEVANT HISTORY AND BACKGROUND</u>

Relator filed this suit on December 4, 2017. ECF No. 1. The United States, the State of California, and the Los Angeles County District Attorney's Office have all declined to intervene, and the Court dismissed the First Amended Complaint (the "FAC") on February 4, 2020. ECF Nos. 12-14, 30-31, 54.

Relator filed the SAC on March 2, 2020, and revealed that she has been litigating under a fictitious name. ECF No. 55. Relator has redacted, altered, or obscured potentially identifying information about herself throughout her SAC and its 600-plus pages of exhibits, while at the same time improperly revealing personal information about individual defendants in violation of L.R. 5.2-1. *See, e.g.*, Mem. in Supp. of Moving Defs.' Mot. to Dismiss and Strike Second Am. Compl., 25:1-14; SAC ¶¶ 18-19; Ex. B, 007-008; Ex. D, 014; Ex. E, 016-22; Ex. G, 060-63; Ex. H, 065; Ex. I, 067; Ex. M, 175, 177-79; Ex. N, 181-82; Ex. O, 184, 186-87; Ex. Q, 219-20; Ex. HH, 626.

There are no allegations in the SAC that could support Relator's anonymity. Ignoring this, Relator offers what she contends are "two . . . legally sufficient reasons" for proceeding anonymously without having sought or obtained permission from the Court: (1) "to protect [her] and her family's medical privacy," and (2) to insulate herself from the supposed risk of this lawsuit "adversely impact[ing] her health, finances, and career." SAC ¶ 39. But the SAC does not have any allegations about her family's medical history, and the redacted medical records she chose to file are irrelevant to her claims.[1] *See generally id.* The only additional information Relator offers about herself relates to her claim that she is the "original source" of

---

[1] In response to one of many requests to confer about this Motion, Relator's counsel also argued that, if Relator's identity were made publicly available, Moving Defendants could retaliate against Relator and her family by refusing medical care to them. In that same correspondence, however, Relator's counsel acknowledged that Moving Defendants *already* know Relator's identity. *See* Relator's Resp. in Opp. Defs.' Mot. Dismiss, ECF No. 49-1, at Ex. D. Relator abandons this speculative and contradictory argument in explaining her need for anonymity in the SAC.

the information in the SAC, her credibility as a witness, and her "special knowledge, skills, and [] surgical background relevant to this action," all of which undermine her arguments for anonymity and actually put her identity squarely at issue in this matter. *See id.* ¶¶ 6, 8, 35-36, 78.

It is far more likely that Relator wishes to conceal her extensive litigation history to obtain a strategic advantage in this case and in the public eye, especially considering the following:

*First*, Relator is a prolific litigant whose history includes suing physicians and healthcare organizations, filing an "amicus curiae brief" as a non-party in a case where her former attorney was seeking to be class counsel, and suing former counsel. This is by no means a secret; it is all a matter of public record.[2]

*Second*, it appears that Relator may be behind an anonymous website that besmirches and discloses personal information about Stanford University-related entities, individuals, and outside counsel, as well as federal and state judges who have handled matters involving Stanford University and/or Relator.

*Third*, Relator is acting as her counsel's "legal apprentice"[3] in this case—which simultaneously renders Relator a party, an advocate, and a witness. Relator's own choices have put her identity at issue here.

*Fourth*, Relator's counsel disclosed personal information about individual defendants—including full home addresses—in the SAC in violation of L.R. 5.2-1. She propagated this personal information in a March 10, 2020, press release that contained a link to the SAC. *See* Exhibit A (March 10, 2020 Press Release, also available at www.pr.com/press-release/807582).

---

[2] A search for Relator's name on Westlaw and Lexis yields hundreds of documents related to her previous cases, both under her former name and the name she currently uses.

[3] Relator's counsel's website references "Ally A." as her "Legal Apprentice." *See* Gloria Juarez Law, https://www.thegjlaw.com/ (listing "Ally A." as Relator's counsel's apprentice and referencing the same phone number for the apprentice as the contact number in "counsel's" press releases).

3

*Fifth*, Relator and her counsel have made appeals to the public both on counsel's website[4] and in several press releases about this case, some of which contain details wholly unrelated to this case and may be construed as an attempt to smear the defendants. *See*, e.g., Ex. A. The following *additional* press releases were published by counsel for Relator, all of which use the phone number of her "Legal Apprentice" as the contact number: (1) Whistleblower Lawsuit Recently Unsealed," www.pr.com/press-release/795828 (October 18, 2019); (2) "DOJ Issues 'Statement of Interest' in Stanford Health Billing Fraud Case," www.pr.com/press-release/804246 (January 30, 2020); and (3) "Newly Unsealed Lawsuit in Federal Court Alleges Ongoing Healthcare Fraud by Stanford and Stanford Healthcare in Palo Alto, California," https://www.pr.com/press-release/795848 (January 31, 2020). *See* Ex. B, Additional Press Releases. Several news outlets across the country republished this information. *See* Ex. C, Republications of Relator's Press Releases. Moving Defendants respectfully suggest that the Court can and should take judicial notice of these public postings when addressing whether Relator's identity should be made known. *See generally Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1041-45 (9th Cir. 2010) (considering newspaper stories and online postings in deciding against allowing plaintiffs to proceed anonymously); *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778-EJD, 2018 WL 2215790, at *3 (N.D. Cal. May 15, 2018) ("Public[ly] accessible websites and news articles are proper subjects of judicial notice.").

As shown below, Relator's allegations fall far short of the standard for proceeding under a pseudonym, as do her hypothetical scenarios of potential harm. Relator's self-anointed anonymity violates both Rule 10(a) and the public's common law right to know who is using its courts.

---

[4] *See* https://www.thegjlaw.com/stanford-healthcare-false-claims.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

### III.   <u>LEGAL STANDARDS</u>

Rule 10(a) mandates that the title of every complaint "include the names of all the parties." This requirement "is not solely one of administrative convenience"—it protects the public's strong common law right of access to judicial proceedings. *Doe v. Rostker*, 89 F.R.D. 158, 160 (N.D. Cal. 1981); *see Kamehameha Sch.*, 596 F.3d at 1046 (recognizing the paramount importance of open courts and the presumption that plaintiffs will use their true names); *Perez v. ECFC Holdings, Inc.*, No. 16-4000 DSF, 2016 WL 10988574, at *1 n.1 (C.D. Cal. Aug. 2, 2016) (same).

A litigant's ability to be anonymous is "limited to the 'unusual case'" where she demonstrates that the "need for anonymity outweighs 'the public's interest in knowing the party's identity.'" *See United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008) (citing *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 13 (D.D.C. 2005) ("Pseudonymous litigation is for the unusual or critical case, and it is the litigant seeking to proceed under pseudonym that bears the burden to demonstrate a legitimate basis for proceeding in that manner.").

When evaluating a party's request to proceed anonymously, the Court "must balance five factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." *Kamehameha Sch.*, 596 F.3d at 1042 (citing *Advanced Textile Corp.*, 214 F.3d at 1068 (quotations omitted)). When considering these factors, the Ninth Circuit has emphasized that "the common law rights of access to the courts and judicial records are not taken lightly." *Id*.

The public's interest in a litigant's identity is even stronger in FCA cases like this one, where the "taxpayers are, in effect, 'real parties in interest' [who] have a strong interest in fraud perpetrated against the United States that results in monetary loss to the government." *United States ex rel. Grover v. Related Cos., LP*, 4 F. Supp.

5

3d 21, 26 (D.D.C. 2013) (citing *United States ex rel. Schweizer v. OCE, N.V.*, 577 F. Supp. 2d 169, 172 (D.C. Cir. 2008)); *cf. Doe v. Ryder Integrated Logistics, Inc.*, No. CV 12-5737 DSF, slip op. at 2 (C.D. Cal. Oct. 12, 2012) (noting that the public's interest in knowing "who is directing the course of litigation and whether that individual is competent and trustworthy to do so" is particularly strong where the person represents other interested parties).

## IV.   <u>ARGUMENT</u>

### A.   The SAC Should Be Dismissed Because Relator Has Not Attempted to Satisfy Her Burden to Proceed Anonymously.

Relator's unilateral decision to disregard Rule 10(a) for over two years without requesting leave of Court or satisfying her burden contravenes established law, usurps the Court's responsibility to protect the public's right of access to court proceedings, and alone justifies dismissal of the SAC. *See, e.g.*, *Kamehameha Sch.*, 596 F.3d at 1046; *United States v. Hiramanek*, No. 17-cv-03389-BLF, 2017 WL 5972590, at *3 (N.D. Cal. Nov. 30, 2017) ("The Court has the discretion to decide whether to permit a party to proceed anonymously."); *John v. City of Sacramento*, No. 2:16-CV-1640, 2018 WL 558767, at *1 (E.D. Cal. May 22, 2018) ("[W]hen a party wishes to file a case anonymously or under a pseudonym, it must first petition the district court for permission to do so.") (quoting *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001)); *Rostker*, 89 F.R.D. at 163 ("This court has both the duty and the right to ensure compliance with the Federal Rules and to take action necessary to achieve the orderly and expeditious disposition of cases.").

### B.   The SAC Should Be Dismissed Because Relator Cannot Satisfy Her Burden to Proceed Anonymously Under the *Kamehameha* Factors.

In addition to Relator's failures to request leave to proceed incognito or introduce any evidence in support, the SAC should also be dismissed because Relator cannot satisfy the *Kamehameha* factors. *Kamehameha Sch.*, 596 F.3d at 1042. She

6

cannot show any "reasonable" fear of threatened harm, or that she is particularly vulnerable "to such retaliation." *Id.* Nor can she show that her speculative fears outweigh the potential prejudice to Moving Defendants or eviscerate the public's strong presumptive right to open access to judicial proceedings. This is especially true here, because the public is the real party in interest and may reward Relator a portion of any recovery. Under these circumstances, and as shown below, Relator cannot satisfy her burden and should not be allowed to proceed anonymously. *Id.*

1.  Relator cannot allege a fear of harm that is either severe or reasonable.

The first two factors, "the severity of the threatened harm and the reasonableness of the plaintiff's fears," are the most important. *Id.* Because they "are intricately related," the Ninth Circuit has advised that they "should be addressed together, and a party cannot proceed anonymously without satisfying them." *Id.* at 1043.

Accordingly, Relator "must show both (1) a fear of severe harm, *and* (2) that the fear of severe harm is reasonable." *Id.* (emphasis in original). The Ninth Circuit has identified three exceptional situations in which a party can establish reasonable fears of severe harm: (1) there is a risk of retaliatory physical or mental harm; (2) it is necessary to preserve privacy in a matter of a sensitive and highly personal nature; and (3) the party is compelled to admit her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Advanced Textile Corp.*, 214 F.3d at 1068; *Zuegel v. Mt. View Police Dep't (MVPD)*, No. 17-cv-03249-BLF, 2017 U.S. Dist. LEXIS 172735, at *4-5 (N.D. Cal. Oct. 18, 2017) (same); *Ryder Integrated Logistics, Inc.*, slip op. at 1 (same).  Here, Relator's case does not involve any of the exceptional circumstances required to establish a reasonable fear of severe harm.

a.  No reasonable risk of retaliatory and severe physical or mental harm.

Relator's speculative fear of economic or physical harm is not the type of "severe harm" that justifies anonymous prosecution of an FCA case. Relator alleges

that "if her identity were to become publicly known, Relator's pursuit of a false claims action against Stanford and an entire cadre of its referring physicians *could* adversely impact both [sic] her health, finances, and her career." *See* SAC ¶ 39 (emphasis added).

Courts regularly reject the argument that an FCA whistleblower, who stands to profit from any recovery, should be allowed to proceed anonymously based on allegations of possible economic harm. *See, e.g.*, *United States v. UCB, Inc.*, No. 14-cv-2218, 2017 WL 838198, at *3 (S.D.N.Y. Feb. 24, 2017) ("Courts generally do not find that the risk of employer retaliation outweighs the presumption of public access to documents filed in FCA actions."); *United States ex. rel. Luciano v. Pollack Health & Wellness, Inc*, No. 13-6815, 2015 WL 2168655, at *2 (D.N.J. 2015 Apr. 30, 2015) (denying request to seal the record or allow relator to proceed anonymously in FCA case where relator "expressed trepidation that her former employer *might* interfere with her career prospects, or that a future employer *could* be reluctant to hire her") (emphasis in original); *United States ex rel. Eberhard v. Angiodynamics, Inc*., No. 3:11-CV-556, 2013 WL 2155327, at *3 (E.D. Tenn. May 17, 2013) (denying motion to redact relator's name from record in FCA case because "the mere possibility, or even plausibility, or some form of economic harm is inadequate to depart from the rule favoring public access, particularly in the absence of any concerns involving national security, trade secrets or personal safety"); *Grover*, 4 F. Supp. 3d at 29 ("In general, courts refuse to allow a party to proceed anonymously simply because of 'fears of embarrassment or vague, unsubstantiated fears of retaliatory actions by higher-ups.'" (quoting *Qualls*, 228 F.R.D. at 12)); *Doe v. Coder*, No. C-10-4756, 2010 WL 4938282, at *2 (C.D. Cal. Nov. 30, 2010) (holding that plaintiff's alleged threats to his professional reputation were "entirely speculative [and] . . . not . . . any threat of harm, let alone a threat of 'severe harm'"); *United States ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007) (denying a request to grant anonymity to relator in FCA case because, although "fear of

8

retaliation is not entirely implausible, it is certainly vague and hypothetical at best");
*see also 4 Exotic Dancers v. Spearmint Rhino*, No. CV-08-4038, 2009 WL 250054,
at *2 (C.D. Cal. Jan. 29, 2009) (holding that "threats of termination and blacklisting"
against plaintiffs are not the unusual circumstances meriting pseudonymity).

### b.  No highly sensitive and personal allegations.

None of the claims in this case involve highly sensitive or personal allegations
that could justify proceeding anonymously, which is obvious because Relator, who
is avowedly a physician, chose to file her own medical records with the FAC and
SAC. She did so even though her medical treatment did not involve a single claim to
the government and her records are therefore legally irrelevant to her claims. *See,
e.g.*, *United States ex rel. Puhl v. Terumo BCT*, No. CV-17-8446, 2019 WL 6954317,
at *4 (C.D. Cal. Sept. 12, 2019) ("[A]llegations 'do not provide reliable indicia' of
false claims and are 'legally irrelevant' where they relate to patients who 'had private
health insurance' and hence did not utilize 'Medicare or other federal health care
programs.'" (quoting *United States ex rel. Frazier v. IASIS Healthcare Corp.*, 812 F.
Supp. 2d 1008, 1017 (D. Ariz. 2011)); *United States ex rel. Karp v. Ahaddian*, No.
CV-16-500, 2018 WL 6333670, at *4 (C.D. Cal. Aug. 3, 2018) (same); *Frazier*, 812
F. Supp. 2d at 1017 ("Frazier identified those patients as having private health
insurance . . . Therefore, the allegations involving those patients are legally
irrelevant."). It would be unreasonable to allow Relator, who presumably understands
the sensitivities around medical records, to rely on her decision to include extraneous
and irrelevant information about her medical care as a commercially insured patient
to manufacture an argument for anonymity.

In any event, as courts across the country have recognized, many actions
"involve sensitive medical information," and "[a]s a rule, these cases do not proceed
anonymously." *Doe v. UNUM Life Ins. Co. of Am.,* 164 F. Supp. 3d 1140, 1142 (N.D.
Cal. 2016); *see also, e.g.*, *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d
869, 872 (7th Cir. 1997) (holding that plaintiff's obsessive-compulsive disorder was

a "common enough" disorder and not so "shameful" that it warranted anonymity); *Doe ex rel. Doe v. Harris*, No. 14–cv–00802, 2014 WL 4207599, at *2 (W.D. La. Aug. 25, 2014) (finding plaintiff's mental disorder, which "rendered him perpetually childlike and vulnerable," was not so stigmatizing as to require anonymity). Instead, medical privacy concerns can be addressed through less drastic means if warranted, such as protective orders, partial sealings, and redacted public filings. *See Doe v. John F Kennedy Univ.*, No. C-13-01137, 2013 WL 4565061, at *5 (N.D. Cal. Aug. 27, 2013).

2.  <u>Relator is not particularly vulnerable to retaliation</u>.

Relator enjoyed over a year of anonymity while this case was under statutory seal, and there is no reason she should receive special secrecy beyond what Congress has already expressly provided in FCA cases. *See, e.g.*, *United States v. Endo Health Sols.*, No. 13-cv-3102, 2015 WL 12552049, at *2 (E.D. Pa. June 8, 2015) (denying relator's attempt to maintain seal over her FCA case because "the structure of the FCA suggests that Congress did not intend to impose a permanent seal over qui tam actions"); *United States ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 785-86 (E.D. Mich. 2008) ("[T]he imposition of a 60-day time period for sealing qui tam complaints reflects Congress' desire to have the seal lifted after the Government conducts its initial investigation and decides whether to intervene."). Continued suppression of Relator's identity would undermine the specific and limited relief afforded by Congress. *See Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d at 785.

Furthermore, Relator cannot credibly allege that she is more vulnerable to retaliation than any other plaintiff. *See Grover, LP*, 4 F. Supp. 3d at 28 ("[T]he relator's concerns are no different from those of the many employees who bring suits against their employers . . . for various reasons. These employees continue to bring suits without the protection of sealing the case. There is no reason that retaliation concerns should merit special protection in *qui tam* actions." (citing *United States ex.*

10

*rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68 (D.D.C. 2011)); *see also S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 711-13 (5th Cir. 1979) (requiring disclosure of individual plaintiffs' identities where the potential consequences of disclosure included losing business, being assigned less desirable matters, and other professional disadvantages); *United States ex rel. Locklear v. Medixx Transp., LLC*, No. CV617-139, 2018 WL 3419272, at *2 (S.D. Ga. July 13, 2018) ("As the Government points out, allowing Locklear to [redact his name from the complaint] would amount to granting him the privilege of pursuing this case anonymously. Such a privilege is not automatically granted to plaintiffs, and there is nothing about *qui tam* plaintiffs that distinguishes them.").

Far from acting like someone with a reasonable fear of severe retaliation, Relator and her counsel are instead actively publishing both details about this case and personal information about the individual defendants. Among other things, they have already: (1) posted selected filings from this case, including Relator's SAC, on their website; (2) violated the Local Rules of this Court by listing the full home addresses of defendants in Relator's SAC; and (3) widely disseminated and propagated press releases discussing allegations in this case and extraneous details about individual defendants. *See, e.g.*, Exs. A, B, C; SAC ¶¶ 18-19; *see also, e.g.*, Mem. in Supp. of Moving Defs.' Mot. to Dismiss and Strike Second Am. Compl., 25:1-14. Relator's actions in this case disprove her position that she is suffering from a reasonable fear of severe harm or retaliation.[5]

---

[5] Moving Defendants' knowledge of Relator's identity "also brings into question Plaintiff's need for anonymity." *R.P. v. Bd. of Trs. of Vista Unified School Dist.*, No. 08CV1657, 2008 WL 4753743, at *2 (S.D. Cal. Oct. 29, 2008). If Moving Defendants already know Relator's identity, then proceeding under her true name should not increase any purported fears of retaliation.

11

3. <u>The Public and Moving Defendants will be prejudiced by Relator's use of a pseudonym</u>.

The public has a strong presumptive right to know the identities of parties to civil litigation. "The purpose of [Rule 10] is not simply administrative, it is 'to apprise the parties of their opponents, and it protects the public's legitimate interest in knowing all the facts and events surrounding court proceedings.'" *Doe v. Texaco, Inc.*, No. C06-02820, 2006 WL 2850035, at *6 (N.D. Cal. Oct. 5, 2006) (quoting *Rostker*, 89 F.R.D. at 160). "The use of pseudonyms is reserved for the rare cases" because "Federal Rule of Civil Procedure 10(a) . . . mandates that all names of the parties be included in the complaint" and "the public and the parties have a common law right to know the identity of the parties in a judicial proceeding." *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *2 (N.D. Cal. May 13, 2011); *see Stoterau*, 524 F.3d at 1013 ("[I]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." (quoting *Blue Cross & Blue Shield United of Wis.*, 112 F.3d at 872)); *see also UCB, Inc.,* 2017 WL 838198, at *4 ("The public has a 'right to know who is using their courts.'" (quoting *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189 (2d Cir. 2008))).

The public's right to know the relator's identity is even stronger in FCA cases like this because the public is the real party in interest to the whistleblower's claims. *See United States v. King Pharm., Inc.*, 806 F. Supp. 2d 833, 841 (D. Md. 2011) ("[T]he presumption in favor of public access to judicial records is particularly strong when the record pertains to matters of concern to the public, such as allegations of fraud against the Government."); *Durham*, 818 F. Supp. 2d at 67 ("Cases brought under the False Claims Act receive special consideration by the courts because they 'inherently implicate the public interest.' Taxpayers are 'real parties in interest' in FCA cases because they possess a strong interest in fraud committed against the

12

United States that results in monetary loss to the Government." (internal citations omitted)).

Courts routinely deny requests for anonymity in FCA cases based on the same "fears" alleged by Relator here. *See, e.g., Under Seal v. Under Seal*, No. 94-1171, 1994 WL 283977, at *4 (4th Cir. June 27, 1994) ("The reputational harm asserted here, even were it shown, would not come close to overcoming the burden of public access. In addition, the presence of the government in the instant case suggests an even greater presumption in favor of a public record."); *United States ex rel. Graves v. Internet Corp. for Assigned Names & Nos., Inc.*, 398 F. Supp. 3d 1307, 1313 (N.D. Ga. 2019) ("Relator's fear of retaliation is not sufficient reason to maintain the seal. Although the Eleventh Circuit has not ruled on this precise issue, other courts have uniformly found that fears of retaliation including interference with a relator's employment do not justify indefinitely sealing a *qui tam* case."); *UCB, Inc.*, 2017 WL 838198, at *4 ("The public has a right to know who is using their courts. The Court declines to impinge upon that public right on the basis of mere speculation." (internal quotations omitted)); *Grover*, 4 F. Supp. 3d at 25-26 (declining redaction of plaintiff's identity from withdrawn complaint, noting that FCA cases "receive special consideration because they 'inherently implicate the public interest'" and "taxpayers are, in effect, 'real parties in interest' [in FCA cases] because they have a strong interest in fraud perpetrated against the United States that results in monetary loss to the government"); *Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d at 785-86 (denying relator's request to seal or redact identifying information from the record because "the presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public, such as allegations of fraud against the government"); *Permison*, 492 F. Supp. 2d at 564-65 (same).

The reasons for requiring Relator to begin proceeding openly are even stronger here than in the typical FCA case. She has published details about this case and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

exposed personal information about the individual defendants in violation of the Local Rules. *See* Ex. A, B, C; SAC ¶¶ 18-19; *see also* L.R. 5.2-1. This is reason enough to remove her cloak. *See e.g.*, *Doe v. Ind. Black Expo.*, Inc., 923 F. Supp. 137, 141 (S.D. Ind. 1996) ("The defendants know the plaintiff's identity, but the anonymity plaintiff seeks would significantly hamper their ability to defend themselves from adverse publicity and other collateral, but often inevitable, effects of civil litigation.").

Relator is also openly purporting to act in this case as a party, an advocate, and a witness. *See* https://www.thegjlaw.com/. She also claims to be the "original source" of the allegations in her SAC and makes allegations about her "investigation," education, training, and experience. *See* SAC ¶¶ 6, 8, 35-36, 78. By doing so, Relator has put her own identity at issue, and allowing her to continue her veil of secrecy would not only limit Moving Defendants' ability to defend this case, but it would thwart the public's right to know who is bringing claims on its behalf.

The public's enhanced interest in knowing who is using its courts and litigating on its behalf weighs strongly against allowing the Relator to continue to proceed under a pseudonym. By choosing to operate under a false name, Relator has flouted Rule 10(a) and attempted to override the FCA's limited sealing provisions. Because she cannot override the public's strong interest in open access to this matter, Relator's claims should be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Moving Defendants respectfully request that the Court grant their Motion and dismiss Relator's Second Amended Complaint with prejudice to Relator.

Dated:  March 30, 2020                    **ALSTON & BIRD LLP**

By: */s/* Kimberly Chemerinsky

Attorneys for Moving Defendants
**STANFORD HEALTH CARE, STANFORD HEALTH CARE ADVANTAGE, THE LELAND STANFORD JUNIOR UNIVERSITY (A/K/A/ THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY), DEBRA ZUMWALT, and FREDERICK DIRBAS**

# Exhibit A



Post Profile for Your Business     Submit Press Release                    Join Now     Sign In

PR.com

BUSINESSES     ARTICLES     PRESS RELEASES

Press Release Pricing | News by Category | News by Country | News by US Region | Recent News | PR.com News on Your Site

▶ Press Releases

## GJLaw

**PRESS RELEASE**

Share    Blog

Receive press releases from GJLaw: **By Email**        **PDF Version**    **RSS Feeds:**

## New Complaint Filed in United States vs. Stanford Health Care (Stanford Hospitals) Alleged Billing Fraud Case

*A newly amended Complaint was just filed on March 2, 2020 in Los Angeles in the United States District Court, Central Division. The case is captioned, United States vs. Stanford and Stanford Health Care, Case No. CV 17-08726-DSF (AFMx). The Complaint alleges that Stanford Health Care's billing schemes to defraud Medicare and commercial payors reach back to at least 2010, and are ongoing.*



Stanford, CA, March 10, 2020 --(PR.com)-- A newly amended Complaint was just filed on March 2, 2020 in Los Angeles in the United States District Court, Central Division. The Complaint alleges that Stanford Health Care (formerly Stanford Hospital) specifically targets high dollar women's health services including breast biopsies and preventative mastectomy with unlawful upcoding and unbundling of standard codes to achieve unjust enrichment, far above what other comparable hospitals receive for the same service.

The case is captioned, United States vs. Stanford and Stanford Healthcare et. al., Case No. CV 17-08726-DSF (AFMx). The Complaint alleges that Stanford Health Care's billing schemes to defraud Medicare and commercial payors reach back to at least 2010 and are ongoing.

The newly amended Complaint includes alleged copies of multiple Stanford bills showing the fraudulent upcharges. The Law Offices of Gloria Juarez is a Los Angeles and Orange county Firm that represents whistleblowers in fraud against Medicare and the government; here they represent the Relator. The Complaint alleges that Stanford employs more than 311 "billers" for the 613 bed Stanford Hospital.

The complaint alleges: where national benchmarks for a breast biopsy with sentinel lymph node exam costs an average of $6,700-$15,870, on January 15, 2020 Stanford billed patient Ms. Perla Ni and HealthNet of California a staggering $143,396.66 for the same simple procedure; Stanford forced Ms. Ni to pre-pay Stanford more than $6000 out-of-pocket for her deductible.

The complaint further alleges as another example, going back to 2012, Stanford billed another young woman $153,488 for an 18-hour observation and preventative mastectomy. Stanford ultimately conceded in writing to having billed the 2012 case more than $17,940 falsely and upcoded, having since refunded $341.97 to the patient, and purportedly $15,000 to the carrier (Anthem Blue Cross). The Complaint includes alleged copies of Stanford's refund check for the unbundled pre-operative visit, as well as Stanford Health Care's letter from Ms. Chantel Susztar admitting to Stanford's upcoding of multiple units of surgical supplies, which were not even used.

The filed Complaint alleges Stanford University also collects money from Stanford Hospital through an undisclosed hefty slush fund entitled the "Dean's Tax," whereby fraudulently obtained healthcare dollars which are also tax privileged through SHC's "non-profit" status, are diverted to the University. Allegedly, Stanford doctors who are professors in the University are mandated to upcode to satisfy the Dean's quotas and "Dean's Tax." The Complaint alleges that Stanford doctors are told by their Division Chief to "CLICK, CLICK, CLICK, CLICK, and it's that easy to get higher codes and more money for Stanford," referring to Stanford's alleged misuse of its Epic Electronic Medical Record (EMR) System.

The lawsuit was filed on behalf of taxpayers as an under-seal Complaint, which means it was prohibited from disclosure by federal court order. The case remained under seal from December 2017 to August 2, 2019 pursuant to

31 U.S. Code 3279 et. seq., which governs False Claims Actions.

The Complaint also alleges that "according to the California Attorney General Xavier Becerra, the same medical service in Stanford Health Care's area (Northern California) is nearly double the fee at comparable Southern California hospitals."

The lawsuit in Federal Court alleges ongoing and institutional healthcare fraud by Stanford and Stanford Healthcare in Stanford, California. The suit also alleges that Stanford Vice President and "Healthcare Billing Compliance Officer" Debra Zumwalt, a named Defendant in this case, is one of the "masterminds" behind Stanford Health Care's fraud schemes designed to maximize profits over safety. Interestingly, Ms. Zumwalt is concurrently a named Defendant in another "fraud" action pending in the San Francisco State Court CGC-18-565596 captioned Devesa vs. Stanford-StartX Fund et. al.

Stanford and Stanford Healthcare are organized under IRS rules as purported not-for-profit organizations that pay no taxes. The lawsuit alleges that Stanford Healthcare collected more than $4 billion dollars of healthcare revenues in 2016 alone, and that Stanford's tax returns show it nearly doubled its Medicare revenues from the government from 2012 ($460.4 million) to 2016 ($755.7 million), through ill-gotten means, healthcare fraud, and institutional upcoding.

The last widely publicized FCA lawsuit against Stanford University was the 1996 false claims action brought by Paul Biddle on behalf of the U.S. and the taxpayers. That suit resulted in a major change at Stanford where the then Stanford President, Donald Kennedy, resigned after testifying before a Congressional Committee on the fraud allegations. The suit was ultimately dismissed by Stanford through its then counsel, Ms. Debra Zumwalt, who is now a named defendant in the current fraud lawsuit.

The Los Angeles Division of the Department of Justice also recently lodged a "Statement of Interest" in Federal Court in support of this first publicly litigated false claims action ("FCA"), i.e. healthcare fraud against Stanford Health Care, in more than two decades.

Now it will be up to Federal Judge, the Honorable Dale Fisher to determine if Stanford Health Care, Dr. Fred Dirbas, Ms. Debra Zumwalt, and remaining Stanford defendants will be put on trial for their alleged Medicare and government billing fraud spanning more than a decade.

### Contact Information

GJLAW
Gloria Juarez
949-288-3402
Contact ✉
thegjlaw.com

### Attached Files

Second Amended Complaint: United States vs. Stanford Health Care
United States vs. Stanford and Stanford Healthcare et. al. Case No. CV 17-08726-DSF (AFMx). The Complaint alleges that Stanford Health Care's billing schemes to defraud Medicare and commercial payors reach back to at least 2010 and are ongoing.
Filename: 20-3-2RSACSTANFORDFEDDOJ.pdf

**Click here to view the list of recent Press Releases from GJLaw**

🐸 **Promote Your Business**          Press Release Pricing          Email this page to a friend 

PR.com     Contact Us     About Us     Terms of Use     Help

# Exhibit B



**Whistleblower Lawsuit Recently Unsealed**

Palo Alto, CA, October 08, 2019 --(PR.com)-- A recently unsealed lawsuit (unsealed going forward from July 30, 2019) in Federal Court alleges healthcare fraud by Stanford and Stanford Healthcare in Palo Alto, California. Stanford General Counsel and Vice President Debra Zumwalt is a named Defendant for her alleged knowledge and cover-up of the billing fraud. The lawsuit is United States et. al., vs. Stanford et. al., Case No. CV 17-08726-DSF (AFMx).

The suit was filed in December 2017 on behalf of the United States and California as an under-seal Complaint. Ms. Juarez specializes in false claims acts and represents the Relator in this case.

The last widely publicized "Qui Tam" action against Stanford was the 1990's false claims lawsuit brought by Paul Biddle on behalf of the U.S. and the taxpayers. That suit resulted in a major change at Stanford where the then Stanford President Donald Kennedy resigned after testifying before a Congressional Committee on the fraud allegations. The suit against Stanford, whose counsel was Ms. Debra Zumwalt, was dismissed in 1996.

Notably, Zumwalt, the current Stanford General Counsel is a named defendant in the current lawsuit. Ms. Zumwalt was promoted to her current position at Stanford after a couple of legal victories for Stanford, which drew national attention some twenty years ago over allegations and several lawsuits alleging that it had over-billed the government.

Stanford and Stanford Healthcare are organized under IRS rules as purported not-for-profit organizations who pay no taxes. The lawsuit alleges that Stanford unlawfully collected more than $4 billion dollars of healthcare revenues in 2016 alone using insititution wide upcoding and unbundling schemes, and that Stanford's tax returns show it nearly doubled its Medicare revenues from the government from 2012 ($460.4 million) to 2016 ($755.7 million) without an explainable, reasonable, or proportionate increase in expenses or overhead.

Now it will be up to Federal Judge Hon. Dale Fisher to rule if Stanford and Ms. Zumwalt will be put on trial for their alleged billing fraud spanning nearly a decade, with allegations of $468 million of damages according to the Complaint.

**Contact Information**

GJLaw
Gloria Juarez
949-288-3402
Contact ✉

**Attached Files**

U.S. vs. Stanford Healthcare and Debra Zumwalt Lawsuit
CV 17-08726-DSF (AFMx)
Filename: AAAACentralDistrictofCaliforn.pdf

**Click here to view the list of recent Press Releases from GJLaw**

PR.com     Contact Us     About Us     Terms of Use     Help

19



▶ Press Releases

# GJLaw

## PRESS RELEASE

Share ➕ 🔵 📧 🐦 💼    Blog 🔵 🅱️ 📱 ⬛

Receive press releases from GJLaw: **By Email**     **PDF Version** 📄    **RSS Feeds:** 🟧 XML 🟪 MY YAHOO!

### DOJ Issues "Statement of Interest" in Stanford Health Billing Fraud Case

*The Department of Justice just lodged a "Statement of Interest" in Federal Court in support of the first publicly litigated false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals & Clinics) in more than two decades. The case is captioned United States vs. Stanford et. al. Case No. CV 17-08726-DSF. It is a live case in the Central District Federal Court. The Complaint alleges Stanford engaged in massive government fraud in excess of $468 Million Dollars.*

San Fransisco, CA, January 30, 2020 --(PR.com)-- The Department of Justice just lodged a "Statement of Interest" in Federal Court in support of the first publicly litigated false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals and Clinics) in more than two decades.



The case is captioned United States vs. Stanford, Case No. CV 17-08726-DSF. It is a live case in the Central District Federal Court. Ms. Juarez specializes in false claims acts and represents the Relator in the case.

The lawsuit was filed on behalf of taxpayers as an under-seal Complaint. The lawsuit remained under federal court ordered seal from December 2017 to August 2, 2019 pursuant to U.S. Code 3279 et. seq which governs False Claims Actions.

The lawsuit in Federal Court alleges ongoing and institutional healthcare fraud by Stanford and Stanford Healthcare in Palo Alto, California. Stanford Vice President and "Healthcare Billing Compliance Officer" Debra Zumwalt a named Defendant in this case is alleged to have been aware of Stanford's healthcare schemes designed to maximize profits over safety, according to the Complaint.

Ms. Zumwalt is concurrently a named Defendant in another albeit unrelated "fraud" action pending in the San Francisco State Court CGC-18-565596 captioned Devesa vs. Stanford-StartX Fund et. al.

Stanford and Stanford Healthcare are organized under IRS rules as purported not-for-profit organizations who pay no taxes. The lawsuit alleges that Stanford collected more than $4 billion dollars of healthcare revenues in 2016 alone, and that Stanford's tax returns show it nearly doubled its Medicare revenues from the government from 2012 ($460.4 million) to 2016 ($755.7 million) without an explainable, reasonable, or proportionate increase in expenses or overhead.

According to the complaint, the healthcare fraud allegations include Stanford and Stanford Healthcare's institution-wide upcoding and unbundling fraud. The triable issues remain only as to determination of the total fraud on the government and treble damages (penalties) of approximately $10,000 for each false claim act by Stanford.

The last widely publicized "Qui Tam" action against Stanford was the 1996 false claims lawsuit brought by Paul Biddle on behalf of the U.S. and the taxpayers. That suit resulted in a major change at Stanford where the then Stanford President Donald Kennedy resigned after testifying before a Congressional Committee on the fraud allegations. The suit was ultimately dismissed by Stanford through its then counsel Ms. Debra Zumwalt, who is now a co-conspirator defendant in the current lawsuit.

Now it will be up to Federal Judge Hon. Dale Fisher to rule on Stanford's Motion to Dismiss, and determine if Stanford and Ms. Zumwalt will be put on trial for their alleged billing fraud spanning more than a decade. Damages black boarded at $468,000,000 million dollars of damages according to the Complaint.

**20**

DOJ Issues Statement of Interest in Stanford Health Billing Fraud Case

### Contact Information

GJLaw
Gloria Juarez
949-288-3402
Contact ✉

### Attached Files

DOJ Issues Statement of Interest in Stanford Health Billing Fraud Case

Filename: 20-1-21DOJFRANKKortumfilingin.pdf

**Click here to view the list of recent Press Releases from GJLaw**

🏵 **Promote Your Business**      Press Release Pricing      Email this page to a friend ✉

PR.com      Contact Us      About Us      Terms of Use      Help

21



Post Profile for Your Business    Submit Press Release                              Join Now    Sign In

BUSINESSES    ARTICLES    PRESS RELEASES

Press Release Pricing  |  News by Category  |  News by Country  |  News by US Region  |  Recent News  |  PR.com News on Your Site

▶ Press Releases

## GJLaw

**PRESS RELEASE**

Share    Blog

Receive press releases from GJLaw: **By Email**        **PDF Version** 📄    RSS Feeds:

### Newly Unsealed Lawsuit in Federal Court Alleges Ongoing Healthcare Fraud by Stanford and Stanford Healthcare in Palo Alto, California

*Stanford Hospital, a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California, is listed as the Defendant in a recently unsealed lawsuit in Federal Court alleging Stanford habitually and schematically defrauded its patients under the guise of false surgical billing. The DOJ filed a new Statement of Interest in the case in Federal Court.*

Palo Alto, CA, January 31, 2020 --(PR.com)-- More details revealed as allegations unfold of Stanford Hospitals unlawfully charging Northern California patients and falsifying their records. The case is captioned United States vs. Stanford et al. Case No. CV 17-08726-DSF (AFMx). It is a live case in the Central District Federal Court.

The Department of Justice also just filed in Federal Court a "Statement of Interest" in support of the false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals and Clinics).

The Complaint alleges that Stanford is a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California. The complaint further alleges, Stanford habitually and schematically defrauded its patients under the guise of false surgical billing.

The recently unsealed lawsuit in Federal Court (unsealed from July 30, 2019 onward) alleges that Medicare and Anthem Blue Cross claims analysis revealed that Stanford and its surgeons purposely take advantage of a flawed medical payment system by habitually upcoding and unbundling major surgical codes for breast cancer surgery, and also unbundling and charging excessive fees for otherwise "free" services, considered part of the global surgery fees.

The Complaint alleges that Stanford billing schemes and submission of fraudulent or misleading healthcare bills to government and private insurers demonstrate that Stanford is purposely extorting the public, especially women that come to Stanford to get breast cancer treatment.

In addition, the lawsuit further alleges Stanford Healthcare is too expensive and unaffordable for many patients particularly for women's health and mastectomy surgery and this led to a situation whereby top insurance providers are terminating their contracts with Stanford. The proof herein lies when major commercial insurance carriers like Anthem Blue Cross, and earlier Blue Shield unilaterally terminated contracts with Stanford.

Furthermore, the Complaint also alleges that when visiting Stanford, patients are unlawfully billed for unsupervised and unlicensed practice of medicine, and diagnostic testing and procedures by unlicensed personnel. Stanford is alleged to sternly instruct their medical billers and coders to always charge higher bills and at maximum level for similar procedures. To cover this fraud, the Complaint alleges that Stanford intentionally lacks transparency and its billing ledgers are not understandable.

Ms. Juarez specializes in false claims acts and represents the Relator in this case. Former or Current Stanford billing and coding employees wishing to obtain more information on this False Claims Act case or discuss new information and allegations may contact Ms. Juarez's office.

## Contact Information

GJLAW
Gloria Juarez
949-288-3402
Contact ✉
thegjlaw.com

## Attached Files

DOJ issues Statement of Interest in Stanford Health Billing Fraud Case

Filename: 20-1-21DOJFRANKKortumfilingin.pdf

**Click here to view the list of recent Press Releases from GJLaw**

🌱 **Promote Your Business**          Press Release Pricing          Email this page to a friend ✉

PR.com          Contact Us          About Us          Terms of Use          Help

# Exhibit C

Case 2:17-cv-08726-DSF-AFM   Document 64-1   Filed 03/30/20   Page 32 of 42   Page ID #:2278



 41°

# DOJ Issues Statement of Interest in Stanford Health Billing Fraud case

Thursday, January 30th 2020, 7:43 AM EST

*The Department of Justice just lodged a "Statement of Interest" in Federal Court in support of the first publicly litigated false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals & Clinics) in more than two decades. The case is captioned United States vs. Stanford et. al. Case No. CV 17-08726-DSF. It is a live case in the Central District Federal Court. The Complaint alleges Stanford engaged in massive government fraud in excess of $468 Million Dollars.*

San Fransisco, CA, January 30, 2020 --(PR.com)-- The Department of Justice just lodged a "Statement of Interest" in Federal Court in support of the first publicly litigated false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals and Clinics) in more than two decades.

The case is captioned United States vs. Stanford, Case No. CV 17-08726-DSF. It is a live case in the Central District Federal Court. Ms. Juarez specializes in false claims acts and represents the Relator in the case.

The lawsuit was filed on behalf of taxpayers as an under-seal Complaint. The lawsuit remained under federal court ordered seal from December 2017 to August 2, 2019 pursuant to U.S. Code 3279 et. seq which governs False Claims Actions.

The lawsuit in Federal Court alleges ongoing and institutional healthcare fraud by Stanford and Stanford Healthcare in Palo Alto, California. Stanford Vice President and "Healthcare Billing Compliance Officer" Debra Zumwalt a named Defendant in this case is alleged to have been aware of Stanford's healthcare schemes designed to maximize profits over safety, according to the Complaint.

Ms. Zumwalt is concurrently a named Defendant in another albeit unrelated "fraud" action pending in the San Francisco State Court CGC-18-565596 captioned Devesa vs. Stanford-StartX Fund et. al.

Stanford and Stanford Healthcare are organized under IRS rules as purported not-for-profit organizations who pay no taxes. The lawsuit alleges that Stanford collected more than $4 billion dollars of healthcare revenues in 2016 alone, and that Stanford's tax returns show it nearly doubled its Medicare revenues from the government from 2012 ($460.4 million) to 2016 ($755.7 million) without an explainable, reasonable, or proportionate increase in expenses or overhead.

According to the complaint, the healthcare fraud allegations include Stanford and Stanford Healthcare's institution-wide upcoding and unbundling fraud. The triable issues remain only as to determination of the total fraud on the government and treble damages (penalties) of approximately $10,000 for each false claim act by Stanford.

The last widely publicized "Qui Tam" action against Stanford was the 1996 false claims lawsuit brought by Paul Biddle on behalf of the U.S. and the taxpayers. That suit resulted in a major change at Stanford where the then Stanford President Donald Kennedy resigned after testifying before a Congressional Committee on the fraud allegations. The suit was ultimately dismissed by Stanford through its then counsel Ms. Debra Zumwalt, who is now a co-conspirator defendant in the current lawsuit.

Now it will be up to Federal Judge Hon. Dale Fisher to rule on Stanford's Motion to Dismiss, and determine if Stanford and Ms. Zumwalt will be put on trial for their alleged billing fraud spanning more than a decade. Damages black boarded at $468,000,000 million dollars of damages according to the Complaint.

Contact Information:
GJLaw
Gloria Juarez
949-288-3402
Contact via Email

**24**

Read the full story here: https://www.pr.com/press-release/804246

Press Release Distributed by PR.com

*Information contained on this page is provided by an independent third-party content provider. Frankly and this Site make no warranties or representations in connection therewith. If you are affiliated with this page and would like it removed please contact pressreleases@franklymedia.com*

Copyright 2020 WENY News. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

25

3/27/2020    Newly Unsealed Lawsuit in Federal Court Alleges Ongoing Healthcare Fraud by Stanford and Stanford Healthcare in Palo Alto, California | WICZ Fox 40 - Binghamton, NY - News, Sports, Weather, Contests & More

Case 2:17-cv-08726-DSF-AFM   Document 64-1   Filed 03/30/20   Page 34 of 42   Page ID #:2280

| SEARCH | GO | | LOG IN | | Alerts | | Mobile | | Submit a Tip | ☀ 43° | f | 🐦 | 📷 | ▶ |



 **What if you had…**

**HOME**   **NEWS**   **SPORTS**   **WEATHER**   **COMMUNITY**   **ABOUT US**   **CONTESTS**   **DEALS**   **YOURSAY**   **DISH FAQS**

# Newly Unsealed Lawsuit in Federal Court Alleges Ongoing Healthcare Fraud by Stanford and Stanford Healthcare in Palo Alto, California

*Posted: Jan 31, 2020 8:13 AM CST*

*Stanford Hospital, a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California, is listed as the Defendant in a recently unsealed lawsuit in Federal Court alleging Stanford habitually and schematically defrauded its patients under the guise of false surgical billing. The DOJ filed a new Statement of Interest in the case in Federal Court.*

Palo Alto, CA, January 31, 2020 --(PR.com)-- More details revealed as allegations unfold of Stanford Hospitals unlawfully charging Northern California patients and falsifying their records. The case is captioned United States vs. Stanford et al. Case No. CV 17-08726-DSF (AFMx). It is a live case in the Central District Federal Court.

The Department of Justice also just filed in Federal Court a "Statement of Interest" in support of the false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals and Clinics).

The Complaint alleges that Stanford is a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California. The complaint further alleges, Stanford habitually and schematically defrauded its patients under the guise of false surgical billing.

The recently unsealed lawsuit in Federal Court (unsealed from July 30, 2019 onward) alleges that Medicare and Anthem Blue Cross claims analysis revealed that Stanford and its surgeons purposely take advantage of a flawed medical payment system by habitually upcoding and unbundling major surgical codes for breast cancer surgery, and also unbundling and charging excessive fees for otherwise "free" services, considered part of the global surgery fees.

The Complaint alleges that Stanford billing schemes and submission of fraudulent or misleading healthcare bills to government and private insurers demonstrate that Stanford is purposely extorting the public, especially women that come to Stanford to get breast cancer treatment.

In addition, the lawsuit further alleges Stanford Healthcare is too expensive and unaffordable for many patients particularly for women's health and mastectomy surgery and this led to a situation whereby top insurance providers are terminating their contracts with Stanford. The proof herein lies when major commercial insurance carriers like Anthem Blue Cross, and earlier Blue Shield unilaterally terminated contracts with Stanford.

Furthermore, the Complaint also alleges that when visiting Stanford, patients are unlawfully billed for unsupervised and unlicensed practice of medicine, and diagnostic testing and procedures by unlicensed personnel. Stanford is alleged to sternly instruct their medical billers and coders to always charge higher bills and at maximum level for similar procedures. To cover this fraud, the Complaint alleges that Stanford intentionally lacks transparency and its billing ledgers are not understandable.

Ms. Juarez specializes in false claims acts and represents the Relator in this case. Former or Current Stanford billing and coding employees wishing to obtain more information on this False Claims Act case or discuss new information and allegations may contact Ms. Juarez's office.

Contact Information:
GJLAW
Gloria Juarez

26

3/27/2020 Newly unsealed lawsuit in federal court alleges ongoing Healthcare ... - WICZ Fox 40 - Serving Southern Tier, Binghamton, NY News, Weather, Sports & More

Case 2:17-cv-09726-DSF-AFM Document 64-1 Filed 03/30/20 Page 35 of 42 Page ID #:2281

949-288-3402
Contact via Email
thegjlaw.com

Read the full story here: https://www.pr.com/press-release/795848

Press Release Distributed by PR.com

*Information contained on this page is provided by an independent third-party content provider. Frankly and this Site make no warranties or representations in connection therewith. If you are affiliated with this page and would like it removed please contact pressreleases@franklymedia.com*

## Around the Web

Ads by Revcontent



**The Pain Gummy To Take When Nothing Else Works**

Health Exploration



**3 Toxic Foods For Cats: The One Meat All Cats Should Avoid**

Dr. Marty



**How Dogs Cry for Help: 3 Warning Signs Your Dogs is Crying for Help**

Dr. Marty



**People Who Retire Comfortably Avoid These Financial Advisor**

SmartAsset



**Dr: New Gummy 'Better Than Hemp' for Pain, Anxiety, & Sleep**

Health Alert US



**Dr: New CBD Gummy 5xs Better Than 'Hemp' For Pain & Anxiety**

TruBliss CBD



**Georgia Launches New Policy For Car Used Less Than 50**

Comparisons.org



**New Gummy Is Now A 500% More Effective Pain Reliever Than**

Health Exploration



**Drink This Before Bed, And Watch The Unbelievable Results**

Gundry MD

27

www.wicz.com/story/41637233/newly-unsealed-lawsuit-in-federal-court-alleges-ongoing-healthcare-fraud-by-stanford-and-stanford-healthcare-in-palo-... 2/3




# How To Stay Sharp After Age 60

Eat these 3 foods daily and watch what happens.



| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **HOME** | **NEWS** | **SPORTS** | **WEATHER** | **COMMUNITY** | **ABOUT US** | **CONTESTS** | **DEALS** | **YOURSAY** | **DISH FAQS** |

EEO Report    Closed Captioning Contact

Privacy Policy   Terms of Service   Ad Choices   FCC Public File

28

www.wicz.com/story/41637233/newly-unsealed-lawsuit-in-federal-court-alleges-ongoing-healthcare-fraud-by-stanford-and-stanford-healthcare-in-palo-...    3/3



66°C

PRESS RELEASE

## Newly Unsealed Lawsuit in Federal Court Alleges Ongoing Healthcare Fraud by Stanford and Stanford Healthcare in Palo Alto, California

Stanford Hospital, a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California, is listed as the Defendant in a...

Friday, January 31st 2020, 9:13 AM EST



*Stanford Hospital, a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California, is listed as the Defendant in a recently unsealed lawsuit in Federal Court alleging Stanford habitually and schematically defrauded its patients under the guise of false surgical billing. The DOJ filed a new Statement of Interest in the case in Federal Court.*

Palo Alto, CA, January 31, 2020 --(PR.com)-- More details revealed as allegations unfold of Stanford Hospitals unlawfully charging Northern California patients and falsifying their records. The case is captioned United States vs. Stanford et al. Case No. CV 17-08726-DSF (AFMx). It is a live case in the Central District Federal Court.

The Department of Justice also just filed in Federal Court a "Statement of Interest" in support of the false claims action ("FCA") against Stanford Health Care (formerly Stanford Hospitals and Clinics).

The Complaint alleges that Stanford is a purported non-profit organization that has been exempt from paying taxes with the sole intent of offering the best service to the residents of Northern California. The complaint further alleges, Stanford habitually and schematically defrauded its patients under the guise of false surgical billing.

The recently unsealed lawsuit in Federal Court (unsealed from July 30, 2019 onward) alleges that Medicare and Anthem Blue Cross claims analysis revealed that Stanford and its surgeons purposely take advantage of a flawed medical payment system by habitually upcoding and unbundling major surgical codes for breast cancer surgery, and also unbundling and charging excessive fees for otherwise "free" services, considered part of the global surgery fees.

The Complaint alleges that Stanford billing schemes and submission of fraudulent or misleading healthcare bills to government and private insurers demonstrate that Stanford is purposely extorting the public, especially women that come to Stanford to get breast cancer treatment.

In addition, the lawsuit further alleges Stanford Healthcare is too expensive and unaffordable for many patients particularly for women's health and mastectomy surgery and this led to a situation whereby top insurance providers are terminating their contracts with Stanford. The proof herein lies when major commercial insurance carriers like Anthem Blue Cross, and earlier Blue Shield unilaterally terminated contracts with Stanford.

Furthermore, the Complaint also alleges that when visiting Stanford, patients are unlawfully billed for unsupervised and unlicensed practice of medicine, and diagnostic testing and procedures by unlicensed personnel. Stanford is alleged to sternly instruct their medical billers and coders to always charge higher bills and at maximum level for similar procedures. To cover this fraud, the Complaint alleges that Stanford intentionally lacks transparency and its billing ledgers are not understandable.

29

Ms. Juarez specializes in false claims acts and represents the Relator in this case. Former or Current Stanford billing and coding employees wishing to obtain more information on this False Claims Act case or discuss new information and allegations may contact Ms. Juarez's office.

Contact Information:

GJLAW

Gloria Juarez

949-288-3402

Contact via Email

thegjlaw.com

Follow this story to get email or text alerts from **WRCB** when there is a future article following this storyline.



| Email address or Phone Number | A! | Follow this story |

POWERED BY **AlertMe**

Read the full story here: https://www.pr.com/press-release/795848

Press Release Distributed by PR.com

*Information contained on this page is provided by an independent third-party content provider. Frankly and this Site make no warranties or representations in connection therewith. If you are affiliated with this page and would like it removed please contact pressreleases@franklymedia.com*

30

Case 2:17-cv-08726-DSF-AFM   Document 64-3   Filed 03/30/20   Page 39 of 42   Page ID
#:2285



Watch 'Oklahoma's Own: The Storm Chasers' (http://www.news9.com/originals)

**MENU**

LIVE
@12PM
(https://www.news9.com/story/37339700/news-9-live-streaming)

(/)

70° (/weather)

# New Complaint Filed in United States vs. Stanford Health Care (Stanford Hospitals) Alleged Billing Fraud Case

Tuesday, March 10th 2020, 8:00 AM CDT

*A newly amended Complaint was just filed on March 2, 2020 in Los Angeles in the United States District Court, Central Division. The case is captioned, United States vs. Stanford and Stanford Health Care, Case No. CV 17-08726-DSF (AFMx). The Complaint alleges that Stanford Health Care's billing schemes to defraud Medicare and commercial payors reach back to at least 2010, and are ongoing.*

Stanford, CA, March 10, 2020 --(PR.com (https://www.pr.com/))-- A newly amended Complaint was just filed on March 2, 2020 in Los Angeles in the United States District Court, Central Division. The Complaint alleges that Stanford Health Care (formerly Stanford Hospital) specifically targets high dollar women's health services including breast biopsies and preventative mastectomy with unlawful upcoding and unbundling of standard codes to achieve unjust enrichment, far above what other comparable hospitals receive for the same service.

The case is captioned, United States vs. Stanford and Stanford Healthcare et. al., Case No. CV 17-08726-DSF (AFMx). (https://www.docketbird.com/court-documents/United-States-of-America-et-al-v-Stanford-Healthcare-Billing-Office-et-al/FIRST-AMENDED-COMPLAINT-against-Defendants-Frederick-Dirbas-Does-Stanford-Health-Care-Stanford-Health-Care-Advantage-Stanford-Healthcare-Billing-Department-The-Board-of-Directors-of-the-Lucile-Salter-Packard-Childrens-Hospital-at-Standord-The-Board-o/cacd-2:2017-cv-08726-00015) The Complaint alleges that Stanford Health Care's billing schemes to defraud Medicare and commercial payors reach back to at least 2010 and are ongoing.

The newly amended Complaint includes alleged copies of multiple Stanford bills showing the fraudulent upcharges. The Law Offices of Gloria Juarez is a Los Angeles and Orange county Firm

New Complaint Filed in United States vs Stanford Health Care, Stanford Hospital's Alleged Billing Fraud Case

that represents whistleblowers in fraud against Medicare and the government; here they represent the Relator. The Complaint alleges that Stanford employs more than 311 "billers" for the 613 bed Stanford Hospital.

The complaint alleges that national benchmarks for a breast biopsy with sentinel lymph node exam costs an average of $6,700-$15,870, on January 15, 2020 Stanford billed patient Ms. Perla Ni and HealthNet of California a staggering $143,396.66 for the same simple procedure; Stanford forced Ms. Ni to pre-pay Stanford more than $6000 out-of-pocket for her deductible.

The complaint further alleges as another example, going back to 2012, Stanford billed another young woman $153,488 for an 18-hour observation and preventative mastectomy. Stanford ultimately conceded in writing in having billed the 2012 case more than $17,940 falsely and upcoded, having since refunded $341.97 to the patient, and purportedly $15,000 to the carrier (Anthem Blue Cross). The Complaint includes alleged copies of Stanford's refund check for the unbundled pre-operative visit, as well as Stanford Health Care's letter from Ms. Chantel Susztar admitting to Stanford's upcoding of multiple units of surgical supplies, which were not even used.

The filed Complaint alleges Stanford University also collects money from Stanford Hospital through an undisclosed hefty slush fund entitled the "Dean's Tax," whereby fraudulently obtained healthcare dollars which are also tax privileged through SHC's "non-profit" status, are diverted to the University. Allegedly, Stanford doctors who are professors in the University are mandated to upcode to satisfy the Dean's quotas and "Dean's Tax." The Complaint alleges that Stanford doctors are told by their Division Chief to "CLICK, CLICK, CLICK, CLICK, and it's that easy to get higher codes and more money for Stanford," referring to Stanford's alleged misuse of its Epic Electronic Medical Record (EMR) System.

The lawsuit was filed on behalf of taxpayers as an under-seal Complaint, which means it was prohibited from disclosure by federal court order. The case remained under seal from December 2017 to August 2, 2019 pursuant to 31 U.S. Code 3279 et. seq., which governs False Claims Actions.

The Complaint also alleges that "according to the California Attorney General Xavier Becerra (http://petris.org/wp-content/uploads/2018/03/CA-Consolidation-Full-Report_03.26.18.pdf)), the same medical service in Stanford Health Care's area (Northern California) is nearly double the fee at comparable Southern California hospitals."

The lawsuit in Federal Court alleges ongoing and institutional healthcare fraud by Stanford and Stanford Healthcare in Stanford, California. The suit also alleges that Stanford Vice President and "Healthcare Billing Compliance Officer" Debra Zumwalt, a named Defendant in this case, is one of the "masterminds" behind Stanford Health Care's fraud schemes designed to maximize profits over

32

safety. Interestingly Ms. Zumwalt is concurrently a named Defendant in another "fraud" action pending in the San Francisco State Court CGC-18-565596 captioned Devesa vs. Stanford-StartX

Stanford Healthcare are organized under IRS rules as purported not-for-profit organizations that pay no taxes. The lawsuit alleges that Stanford Healthcare collected more than $4 billion dollars of healthcare revenues in 2016 alone, and that Stanford's tax returns show it nearly doubled its Medicare revenues from the government from 2012 ($460.4 million) to 2016 ($755.7 million), through ill-gotten means, healthcare fraud, and institutional upcoding.

The last widely publicized FCA lawsuit against Stanford University was the 1996 false claims action brought by Paul Biddle on behalf of the U.S. and the taxpayers. That suit resulted in a major change at Stanford where the then Stanford President, Donald Kennedy, resigned after testifying before a Congressional Committee on the fraud allegations. The suit was ultimately dismissed by Stanford through its then counsel, Ms. Debra Zumwalt, who is now a named defendant in the current fraud lawsuit.

The Los Angeles Division of the Department of Justice also recently lodged a "Statement of Interest" in Federal Court in support of this first publicly litigated false claims action ("FCA"), i.e. healthcare fraud against Stanford Health Care, in more than two decades.

Now it will be up to Federal Judge, the Honorable Dale Fisher to determine if Stanford Health Care, Dr. Fred Dirbas, Ms. Debra Zumwalt, and remaining Stanford defendants will be put on trial for their alleged Medicare and government billing fraud spanning more than a decade.

Contact Information:
GJLAW
Gloria Juarez
949-288-3402
Contact via Email (https://www.pr.com/press-release/807582/contact)
thegjlaw.com

SHARES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2020, I caused a copy of the **MOVING DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)** to be served upon the following counsel and parties in interest via the Court's CM/ECF system and First Class U.S. Mail:

Gloria Juarez, Esq.
Law Offices of Gloria Juarez
26081 Merit Circle, Suite 112
Laguna Hills, CA 92653

**Counsel for Relator**

Frank D. Kortum
Assistant United States Attorney
Room 7516, Federal Building
300 N. Los Angeles St.
Los Angeles, CA 90012

**Counsel for the United States of America**

 /s/  *Frank E. Sheeder III*
Counsel for Moving Defendants

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 10(a)