KIMBERLY K. CHEMERINSKY (State Bar No. 277637)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
Email: kim.chemerinsky@alston.com

FRANK E. SHEEDER III (Admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899
E-mail: frank.sheeder@alston.com

Attorneys for Moving Defendants
**STANFORD HEALTH CARE, STANFORD HEALTH CARE ADVANTAGE, THE LELAND STANFORD JUNIOR UNIVERSITY (A/K/A THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY), DEBRA ZUMWALT, and FREDERICK DIRBAS**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA

and

THE STATE OF CALIFORNIA
*Ex. Relator* Emily Roe., an individual;

Plaintiffs,

v.

STANFORD HEALTHCARE BILLING DEPARTMENT, STANFORD HEALTH CARE (FORMERLY KNOWN AS STANFORD HOSPITALS AND CLINICS), DR. FREDERICK DIRBAS, DEBRA ZUMWALT, THE BOARD OF DIRECTORS OF THE STANFORD HEALTH CARE, THE BOARD OF DIRECTORS OF THE LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, THE LELAND JUNIOR UNIVERSITY, THE BOARD OF TRUSTEES OF STANFORD UNIVERSITY, STANFORD HEALTH CARE ADVANTAGE and DOES 1-10, inclusive.

Defendants.

Case No. 2:17-cv-08726-DSF-AFM
Assigned to the Honorable Dale S. Fischer, [Courtroom 7D]

**REPLY IN SUPPORT OF MOVING DEFENDANTS' MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT**

[Filed concurrently with Declaration of Frank E. Sheeder III in Support of Sections VI. and VII. of Moving Defendants' Reply in Support of Motion to Dismiss and Strike Second Amended Complaint]

Hearing

Date: July 13, 2020
Time: 1:30 p.m.
Ctrm: 7D

Complaint Filed: December 4, 2017

# TABLE OF CONTENTS


**Page(s)**

I. INTRODUCTION .......... 1

II. RELATOR'S CLAIMS ARE PROHIBITED BY THE PUBLIC DISCLOSURE BAR .......... 2

III. THE SAC FAILS TO STATE A CLAIM UNDER CAUSES OF ACTION ONE THROUGH SIX .......... 4

A. Relator does not "identify representative examples of *false* claims" to the government. .......... 5

B. Relator does not allege "reasonable indicia that lead to a strong inference" that false or fraudulent claims were submitted to the government. .......... 6

IV. THE SAC FAILS TO SATISFY RULE 9(B) .......... 7

V. RELATOR'S SEVENTH CAUSE OF ACTION IS BARRED BY THE COURT'S PREVIOUS ORDER AND FAILS AS A MATTER OF LAW .......... 8

VI. RELATOR FAILED TO SERVE DR. DIRBAS WITH PROCESS .......... 9

VII. RELATOR VIOLATED LOCAL RULE 5.2-1 .......... 11

VIII. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ..... 5

*United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996) ..... 5

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619 (C.D. Cal. July 16, 2019) ..... 3, 4

**FEDERAL STATUTES**

31 U.S.C. § 3729(a)(1)(G) ..... 8

**STATE STATUTES**

Cal. Civ. Proc. Code § 415.20 ..... 10

**RULES**

Rule 4 ..... 2, 10, 11

Rule 8(a) ..... 1

Rule 9(b) ..... 1, 5, 8, 9

Rule 12(b)(5) ..... 11

Rule 12(b)(6) ..... 1, 5

Local Rule 5.2-1 ..... 2, 11, 2

Stanford Health Care ("SHC"), Stanford Health Care Advantage ("SHCA"), The Leland Stanford Junior University (a/k/a The Board of Trustees of the Leland Stanford Junior University) (the "University"), Debra Zumwalt ("Ms. Zumwalt"), and Frederick Dirbas ("Dr. Dirbas") (collectively, "Moving Defendants") file this Reply in Support of their Motion to Dismiss and Strike Second Amended Complaint (the "Motion").

## I. <u>INTRODUCTION</u>

The FCA's "public disclosure bar" compels dismissal because Relator's claims are expressly based on public Medicare data she claims to have received from the government in response to FOIA requests. The government has never opposed dismissal on this basis, and Relator admits in her SAC that the FOIA information is itself "*prima facie* evidence of the fraud" she alleges. Nothing Relator alleges about other public information or her own 2012 surgery as a commercially insured patient changes this result. As the Court has already noted, none of this is "independent information [that] 'materially adds' to the [public] information acquired from the government." *See* ECF No. 54, at 2.

Relator's claims also fail under Rules 8(a), 9(b), and 12(b)(6). The two "exemplars" Relator offers for her first cause of action are not "representative examples of false claims" to the government, and she does not identify a single government claim for any other cause of action. Instead, Relator rests each of her causes of action on speculative inferences she attempts to draw from public information and her own surgery. Her medical case, however, cannot support *any* claim under the FCA because it did not involve a *single* claim to a government program. She cannot contest this point, so she once again ignores it in the Opposition.

No doubt recognizing the many fatal flaws in her Second Amended Complaint ("SAC"), Relator uses her Opposition to toss her own pleadings aside and propose the opposite of what she alleged in the SAC or suggested in its exhibits. For example, after admitting in the SAC that the public Medicare data is itself "*prima facie*

evidence of the fraud" she alleges, Relator now says that it is not. She does this again when attempting to explain why she disregarded the Court's order barring new claims or parties, arguing that her new seventh cause against new parties was merely "clerical oversight." Relator also contends to have served Dr. Dirbas with process after he purportedly rejected many requests to waive service under Rule 4(d), but the attachments to her Opposition show she has never requested a waiver and has yet to serve Dr. Dirbas with a live pleading. Relator likewise attempts to excuse her violation of Local Rule 5.2-1 by claiming it does not apply to civil cases and directing the Court to a website that says just the opposite of what she represents. In the end, the Opposition does nothing to save the unsustainable SAC, and the government does not oppose dismissal of the SAC with prejudice to Relator and without prejudice to the United States.

## II. RELATOR'S CLAIMS ARE PROHIBITED BY THE PUBLIC DISCLOSURE BAR

Relator's entirely unoriginal claims must be dismissed under the "public disclosure bar." *See* Mot. 4:1-10:11. Her claims are (and have always been) expressly based on publicly disclosed FOIA information and improper inferences she attempts to draw from her own 2012 surgery as a commercially insured patient. *Id.* In the SAC, Relator adds even more public information and increasingly imaginative descriptions of her "investigation" of that information, but none of this can transform her into an "original source" or save her allegations from inevitable dismissal under the public disclosure bar. *See* Mot. 8:9-10:11, 15:4-19:10.

Relator even concedes that she is not an "original source" by readily asserting in the SAC that the public Medicare data she received *from* the government is itself "*prima facie* evidence of the fraud" she alleges, providing the "who," "what," "when," and "why." SAC ¶ 70; *see also* Mot. 5:3-6:14. Thus, even assuming her allegations were true, she could never "materially add" any permissibly "original" information to public data that was already in the government's possession and which

she admits was sufficient to put the government on notice of the alleged fraud. *See id.* 5:3-6:14.

No doubt realizing that her allegations perish under the public disclosure bar, Relator resorts to refuting her own allegations. *Compare* SAC ¶ 70 (alleging that FOIA data is itself "*prima facie* evidence of the fraud") *with* Opp'n 9:23-10:4 (contradicting the SAC and arguing that the FOIA data is not alone *prima facie* evidence of fraud). Relator's newest self-contradictory position not only asks the Court to assume that Relator's allegations are simultaneously true and untrue, but it also demonstrates that she cannot "materially add" to what has already been publicly disclosed. Whether it is based on Relator's allegations or her recent attempt to flip them upside-down, the result is the same—the SAC should be dismissed under the public disclosure bar.

Despite abandoning her own allegations, Relator still cannot cope with the vast authorities that compel dismissal of the SAC under the public disclosure bar. She now desperately resorts to a series of "straw man" arguments, mischaracterizations, and subterfuge. For example, Relator accuses Moving Defendants of "misconstrue[ing] the public disclosure bar" by highlighting her extensive reliance on sources published by others both before and after she filed her Complaint, but in doing so she misses the point—she is not the "original source" of *any* public information cited in the SAC, regardless of when it was published. *See* Opp'n 8:19-28. Relator also devises a contradiction where none exists by taking a parenthetical from the Motion about *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619, at *2, 6-8 (C.D. Cal. July 16, 2019), out of context so she can further sidestep her own pleadings. Opp'n 10:13-27. Even then, she still cannot cite to the "novel findings" of her "investigation" of public data, instead repeating the same tired information that is apparent from the face of the Medicare data (*e.g.*, timing of surgical claims) and offering fanciful generalizations like "Defendants conceded their false claims

scienter" for the Medicare claims by issuing a refund for a mistake in a 2012 case involving a *commercial insurance company*. *See* Opp'n 9:8-13; 10:28-11:9.

Relator's repeated reference to *Integra Med* is puzzling because it underscores why she is not an "original source" of "her" claims. In that case, the relator alleged that a statistical analysis showed "high rates of coding" compared to *other* hospitals, provided claim examples to support every theory, and alleged non-public information about each defendant's practices. *See Integra Med*, 2019 WL 3282619, at *2-3. Here, by contrast, Relator's allegations are not based on statistics at all, and her citation to a non-FCA case about "plausible" statistics is inapposite. *See* Opp'n 10:28-11:9. She has not alleged any statistical comparison of coding rates among providers, nor has she offered any statistical analysis or methodology for extrapolation. She has simply strung together public information about some of the Defendants, including allegations from other whistleblowers, various public documents, and selected publicly available Medicare claims data she thinks is suspicious—all based on impermissibly speculative inferences she tries to draw from her own surgery. *See, e.g.*, Mot. 15:16-19:10. Additionally, unlike the claims at issue in *Integra Med*, Relator's two "exemplars" involve a timing issue that is apparent from the public data alone, and she has even stated the public data is itself *prime facie* evidence of the fraud she alleges. This distinguishes her allegations from every case she cites, which involved theories that were either not ascertainable from public sources or that came from insiders who, unlike Relator, had "original" information about claims submitted to the government.

## III. <u>THE SAC FAILS TO STATE A CLAIM UNDER CAUSES OF ACTION ONE THROUGH SIX</u>

As demonstrated in the Motion, the SAC fails to state any claim for relief under the FCA. *See* Mot. 10:22-23:12. To survive dismissal, a relator's allegations must (1) "identify representative examples of false claims" to the *government* or (2) allege "reliable indicia that lead to a strong inference that [false] claims were actually

submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010). Relator's SAC does neither, and her Opposition does nothing to avoid that reality.[1]

**A. Relator does not "identify representative examples of *false* claims" to the government.**

Although Relator claims that the SAC is "chocked full of false government claims," she can only reference the FOIA data in general terms, point to two inadequate "exemplars" in support of her first cause of action,[2] and add a puzzling reference to paragraph 54 of the SAC. *See* Opp'n 11:11-25. Paragraph 54 is not associated with any specific cause of action and does not identify any specific claim to the government. Opp'n 11:11-13, 23-26. Instead, it presents generalizations about 17 undisclosed claims over some unspecified timeframe that supposedly involved CPT 19340. *See* SAC ¶ 54. Relator's basis for alleging that these phantom claims are "false" is equally baffling. She asserts they must be "false" because Dr. Dirbas said in Exhibit I that he personally was not aware of anyone performing a CPT 19340-type surgery at SHC, but Exhibit I says nothing about CPT 19340 or anything else alleged in paragraph 54. This does not satisfy Rules 12(b)(6) or 9(b).

The "exemplars" Relator cites in support of her first cause of action, two of the same examples that were insufficient to support her FAC, fare no better. *See* Mot. 11:15-15:3. Relator has simply picked two pre-operative visits from the FOIA data she received from the government and asserted they *must* be false because *sometimes*

[1] Although the Ninth Circuit has discussed falsity and scienter together, nothing in the Motion should be construed to suggest they are the same. *See* Mot. 13:21-26; ECF No. 70 ("SOI"), at 2:1-23; *see also, e.g.*, *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996) ("For a certified statement to be 'false' under the Act, it must be an intentional, palpable lie."). Rather, Moving Defendants show that Relator's pleadings fail under each of these elements. Relator's attempt to conflate these elements—like asserting conclusions about the scienter requirement from portions of a case that is expressly limited to the falsity requirement—should be rejected as discussed in the SOI. *See, e.g.*, Opp'n 19:15-18.

[2] Relator makes absolutely no attempt to identify a single "representative example" of a claim submitted to the government in support of her second through sixth causes of action, and she cannot claim otherwise in her Opposition. *See generally* SAC *and* Opp'n; *see also* Mot. 12:3-14; 16:1-12.

pre-surgical visits are not reimbursable by Medicare.[3] *See, e.g.*, SAC ¶¶ 122, 124. But she never alleges what is *false* about these claims, that they were performed "after the decision for surgery," or that they failed to satisfy an express exception to the very "rule" she cites. *See, e.g., id.* ¶¶ 143-144, Ex. Z (describing exceptions to billing rule); Mot. 12:15-15:3. Nor could she make these allegations—her "investigation" of government claims was limited to information apparent from the face of the FOIA data, like timing of pre-surgical claims, and she does not allege to have reviewed a single Medicare claim or medical record. Mot. 16:1-12. As explained in the Motion, Relator cannot state a cause of action under the FCA simply by alleging the mere *possibility* of error. Mot. 12:22-15:3.[4]

### B. Relator does not allege "reasonable indicia that lead to a strong inference" that false or fraudulent claims were submitted to the government.

Relator does not allege "reasonable indicia that lead to a strong inference" that false or fraudulent claims were submitted to the government. *See* Mot. 15:4-19:10. Instead, she offers conjecture about "Stanford's" business operations, speculation about publicly available information, and unsupported generalizations about her 2012 surgery (which did not involve a single claim to a government entity). *See id.*

---

[3] Relator attempts to create a diversion by quarreling with Moving Defendants' statement that "Medicare billing guidance *alone* cannot be the basis of an FCA action" and one of the cases they cite in support, but, as the government explained in the SOI, a relator must allege *each* of the elements of an FCA claim. *See* Mot. 14:23-25 (emphasis added); Opp'n 3:4-25, 12:22-27; SOI 2:21-23.

[4] Relator's reference to these "exemplars" also confirms that her case must be dismissed under the public disclosure bar. The timing of these pre-surgical visits is readily apparent from the *public* data she obtained *from* the government, and she could never be an "original source" of that information. *See, e.g.*, SAC, Exs. AA, BB, CC; *see also* SAC ¶ 70 (alleging that the public Medicare data is itself "*prima facie* evidence of the fraud"). Likewise, if all pre-surgical visits were prohibited by Medicare billing rules, the government would have continued to pay these pre-surgical claims and a later surgical claim despite having "actual knowledge" that they were not reimbursable *based on their dates of service alone*. But, as the government seems to suggest in its SOI, the timing of these claims alone cannot show an "actual violation" of the FCA. *See* SOI 4:1-28. Either way, the SAC must be dismissed.

In the SAC and now in her Opposition, Relator admits outright that her case is based on claims submitted to her own commercial insurance company and those claims are merely "buttressed" by the Medicare data. *See* SAC ¶¶ 3, 174 n.3, 197 n.4, 278; Opp'n 19:3-6. Each of Relator's "causes of action" expressly relies on allegations about her surgery and conclusions she attempts to draw from it, including speculative guesses about "countless" medical and surgical records in unrelated Medicare cases, not one of which has she allegedly reviewed. Mot. 16:1-12. But, as shown in the Motion, Relator's surgery cannot support *any* claim under the FCA because it undeniably did not involve a *single* claim to a government program, and this is fatal to each of her allegations. *See id.* 16:13-17:19.

Unable to escape from the many authorities in the Motion that show Relator's own surgery cannot support "reliable indicia that lead to a strong inference that [false] claims were actually submitted" to the *government*, she instead ignores them and attempts to create bizarre distractions. For example, Relator characterizes Moving Defendants' citation to cases unfavorable to her as "injection of untrue and extraneous material" requiring conversion of the Motion to "MSJ," Opp'n 2:4-10; recasts Moving Defendants' arguments about her extensive reliance on other people's allegations as an attempt to "strike the expert testimony," Opp'n 14:25-27; and asserts that the Motion is based on "disputed facts" that she neither explains nor identifies in the Opposition, Opp'n 23:20-28. In the end, the Opposition simply repeats the same inadequate and speculative inferences about Relator's own surgery, information from other lawsuits and litigants, and conspiracy theories about "STANFORD's" business practices, none of which are sufficient to support her claims. Mot. 15:4-20:19.

## IV. <u>THE SAC FAILS TO SATISFY RULE 9(B)</u>

The Opposition also reveals the SAC's failure to supply the "who, what, where, when and how" required by Rule 9(b). *See* Opp'n 22:20-21:19. Although the Court previously cautioned that many defendants "appear to be thrown into the

complaint for no particular reason," ECF. No. 54, at 3, Relator resorts to the same shotgun pleading approach in her SAC—lumping Defendants together as "STANFORD," "Defendants," or "STANFORD HEALTH CARE et al." *See* Mot. 19:11-20:19. Her Opposition fares no better, maintaining that the SAC offers specificity while reciting little more than a sweeping allegation that all defendants collectively committed some kind of fraud for years. Opp'n 22:22-23:19. Relator (like Moving Defendants) is unable to figure out which allegations she is asserting against which specific defendants in the SAC because her Opposition also refers to "Stanford" and "Defendants" generally, directs the Court to yet more materials from her commercial medical case, and never once explains why the SAC fails to: (1) make any substantive reference to "Stanford Healthcare Billing Department," "The Board of Directors of the Stanford Health Care," "The Board of Directors of the Lucile Salter Packard Children's Hospital at Stanford," or The Leland Stanford Junior University (a/k/a The Board of Trustees of the Leland Stanford Junior University); or (2) contain plausible and particular facts that could support FCA liability against Dr. Dirbas or Ms. Zumwalt, or show that they were "personally making false Medicare billing decisions." ECF No. 54, at 3; *see* Mot. 19:11-20:19; Opp'n 22:20-23:19. Relator's Opposition conveniently avoids these fatal flaws, and her SAC fails to satisfy Rule 9(b).

## V. RELATOR'S SEVENTH CAUSE OF ACTION IS BARRED BY THE COURT'S PREVIOUS ORDER AND FAILS AS A MATTER OF LAW

Relator ignores this Court's order prohibiting her from asserting any "new claims" in the SAC and attempts for the first time to manufacture a cause of action for alleged wrongful *retention* of government money under 31 U.S.C. § 3729(a)(1)(G). *See* ECF No. 54, at 3. Relator never referenced § 3729(a)(1)(G) in her FAC, nor did she plead its elements as part of her supposed FCA claims. *See* FAC ¶¶ 337-44. Furthermore, as explained in the Motion, this new claim would fail as a matter of law even if it were not barred by this Court's clear order (which it is).

*See* Mot. 20:20-23-12. Among other failures, the SAC does not allege any false record or statement material to an obligation *to pay* the government, and this new cause of action is based expressly on supposed harm to California and commercial insurance payors, not the federal government. *See id.*

Relator cannot present a single straight-faced argument in support of her barred and deficient new seventh cause of action. First, she claims that it is not new because the FAC alleged some combination of Defendants created or used inaccurate records *to get money from the government*. Opp'n 24:3-15. But her new cause of action is about just the opposite—records related to an obligation *to pay money to the government*—and is thus barred by this Court's previous order. Second, in yet another attempt to have the Court accept the exact opposite of what is alleged in the SAC, Relator argues that her new cause of action is alleged against non-federal government entities simply due to "clerical oversight" but tellingly provides no explanation why she also served these non-federal agencies with a copy of the SAC or why the Certificate of Service described them as "parties" in this action. *See* Opp'n 24:5-20; SAC, 73:2-21. Finally, unable to present any justification for her fabrication of a new cause of action in violation of the Court's clear directive, Relator takes aim at the Court's order and attempts to excuse her choice not to heed it because the SAC was simply "Relator's first attempt to cure 'deficiencies' in the pleadings." Opp'n 24:19-20. Relator has now attempted and failed three times to assert a viable cause of action under the FCA, and her selective memory cannot alter that reality or the Court's orders.[5]

## VI. RELATOR FAILED TO SERVE DR. DIRBAS WITH PROCESS

Although Relator claims that Dr. Dirbas has been served with process, the attachments to her Opposition show just the opposite. Relator claims that Dr. Dirbas

[5] Strikingly, this is not the only new cause of action Relator is apparently attempting to sneak into her SAC. Her Opposition also cites to case law involving a separate cause for unjust enrichment under California law and claims that her "allegations sufficiently pleaded that Defendants were unjustly enriched." Opp'n 23:27-24:2.

"was served at Stanford" when she left a copy of the Summons and FAC with a medical "receptionist" on January 27, 2020. *See* Opp'n 3:27-28; Juarez Decl. ¶ 14, Ex. I, at 42, Ex. L, at 60.[6] That is not service of process under the Rules.[7] *See* Rule 4(e)(2)(A)-(C). Nor is it service of process under "state law." *See* Rule 4(e)(1). The only state law that *could* apply says that leaving copies of "the complaint and summons" at a person's "office[,] . . . usual place of business, or usual mailing address" with someone "who is apparently in charge" is not service until the "10th day *after*" the same documents are subsequently mailed to the same location. *See* Cal. Civ. Proc. Code § 415.20(a), (b) (emphasis added). Thus, even under that rule, Relator could not have "served" Dr. Dirbas with the FAC until March 1, 2020, weeks after it had been dismissed. *See* ECF No. 54, at 3 (dismissing FAC on February 4, 2020); Juarez Decl. ¶ 15 (claiming to have mailed the FAC on February 20, 2020).

Relator's actions also contradict her claim that she properly effectuated service of process on Dr. Dirbas. If she had properly served him on January 27, 2020, as she asserts, she would have no reason to attempt service after that date. *See* Juarez Decl. Ex. H, at 37 (attempting personal service nine times after that date), Ex. J (attempting service by mail after that date). Furthermore, Ms. Juarez obviously recognized that she had not properly served Dr. Dirbas because she emailed a copy of the SAC to him and asked him to agree "to electronic service for service in this case." *See* ECF No. 63-3, ¶¶ 2, 4, Ex. A, at 4, Ex. B, at 78; *see also* SAC, 73:21-23 (certifying in SAC that Dr. Dirbas had been served by email). This is not service under Rule 4, Rule 5, or any other standard. Relator has yet to serve Dr. Dirbas with process, she knows it, and her own documents reveal it. *See* Mot. 23:21-24:9, 24:23-28.

---

[6] Because the Exhibits to Ms. Juarez's Declaration are not paginated as required by the Local Rules, Moving Defendants cite to the ECF page numbers on the top of her respective Exhibits.

[7] She admittedly did not deliver copies of the Summons and FAC to Dr. Dirbas "personally," leave it at his "dwelling or usual place of abode with someone . . . who resides there," or deliver it to "an agent authorized by appointment or by law to receive service of process." Rule 4(e)(2)(A)-(C); *see* Juarez Decl. Ex. H (confirming no personal service on Dr. Dirbas, anyone who resides at his "dwelling or usual place of abode," or anyone alleged to be his authorized agent); ECF 63-3, ¶ 3 (same).

Relator attempts to avoid the consequences of her errors by presenting demonstrably false allegations about service in this case. For example, she claims that Dr. Dirbas "failed to comply with Relator's early requests to execute a Rule 4(d) waiver," but her own documents show that she has never requested a waiver under that Rule. *See, e.g.*, ECF No. 73, at 14:22-15:2, 16:8-17:28. She also claims that Dr. Dirbas waived his defense under Rule 12(b)(5) by not including it in the motion to dismiss the FAC, but that motion was filed by *other* defendants weeks *before* she claims to have served him. *See, e.g.*, Opp'n 4:4-10, 8:6-10, 25:10-12; *see* ECF 52-1, Ex. J, at 39-40 (conferring about insufficient service of FAC for other defendants). Finally, she claims that counsel has represented "*all Defendants*" in this matter "since case inception" and agreed by email in mid-December to accept "electronic service as to this entire action," but the filings in this case and her own communications show this is false. Opp'n 25:2-10; Juarez Decl. ¶¶ 3 n.1, 18. Mr. Sheeder is counsel of record for Moving Defendants, did not represent Dr. Dirbas until *after* the SAC was filed, and never agreed to accept service of the SAC for Dr. Dirbas. *See* Juarez Decl. ¶ 17 (claiming she first learned Mr. Sheeder was representing Dr. Dirbas *after* she had filed the SAC), ¶ 18 (omitting copy of email in which she contends counsel supposedly agreed to "accept[] electronic service as to this entire action" for all defendants); ECF No. 63-3, ¶ 4; Decl. of Frank E. Sheeder III in Support of Sections VI. and VII. of Moving Defs.' Mot. to Dismiss and Strike Second Am. Compl. ("Sheeder Decl.") ¶¶ 2-5. Relator's misstatements cannot cure her insufficient service of process on Dr. Dirbas.

## VII. RELATOR VIOLATED LOCAL RULE 5.2-1

Unable to contend with her clear violation of Local Rule 5.2-1, Relator's Opposition presents absolutely no explanation why she included Ms. Zumwalt's residential address in the SAC. *See* Opp'n 24:21-25:2. Her argument about Dr. Dirbas is not any better. She claims that the address she included for Dr. Dirbas in the SAC is not a residential address because a business with which he is affiliated

(which is not a party here) is linked to it, but the very website she cites in support shows just the opposite. *See id.*; Juarez Decl. ¶ 19. Even worse, her justification for not correcting the violation—that Moving Defendants' did not do her work for her—contradicts Local Rule 5.2-1's guidance that it is the *filer's* responsibility to redact residential addresses and failure to comply may subject her to the "disciplinary power of the Court." *See* Opp'n 25:1-2. Relator cannot blame anyone for her violation or for her refusal to correct it.[8]

## VIII. CONCLUSION

For these reasons and those outlined in the Motion, the Court should dismiss the SAC *with prejudice* to Relator and *without prejudice* to the United States.

Dated: June 29, 2020

**ALSTON & BIRD LLP**

By: /s/ *Frank E. Sheeder III*
Attorneys for Moving Defendants
**STANFORD HEALTH CARE, STANFORD HEALTH CARE ADVANTAGE, THE LELAND STANFORD JUNIOR UNIVERSITY (A/K/A/ THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY), DEBRA ZUMWALT, and FREDERICK DIRBAS**

---

[8] In response to Moving Defendants' multiple requests that Relator correct her violation of Local Rule 5.2-1, Ms. Juarez: (1) denied that the SAC contained the addresses (apparently without reviewing it) because she "did not recall" them being in it; (2) published a press release further broadcasting the offending SAC online; (3) insinuated that the addresses were included in the SAC because "your clients were evading service"; (4) claimed that Local Rule 5.2-1 of this Court's "Local Civil Rules" did not apply to civil cases; (5) told Moving Defendants that they would have to prepare the filings necessary to correct Relator's live pleading; and (5) proposed for the first time on the eve of this filing (nearly *four* months after having been alerted to the issue) a self-serving draft stipulation to redact the SAC that never mentions Local Rule 5.2-1, claims that the addresses are "public record," describes her delay as "reasonable," ignores the same violation in the SAC's Certificate of Service (which does not fall under the "return of service" exception), and does not include a copy of Ms. Juarez's declaration in support. *See* Mot. 25:3-17; ECF No. 63-2, ¶¶ 2-8, Ex. C, at 10; ECF No. 73-1, Ex. C, at 18-19; Sheeder Decl. ¶ 6.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2020, I caused a copy of the **REPLY IN SUPPORT OF MOVING DEFENDANTS' MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT** to be served upon the following counsel and parties in interest via the Court's CM/ECF system:

Gloria Juarez, Esq.
Law Offices of Gloria Juarez
26081 Merit Circle, Suite 112
Laguna Hills, CA 92653

**Counsel for Relator**

Frank D. Kortum
Assistant United States Attorney
Room 7516, Federal Building
300 N. Los Angeles St.
Los Angeles, CA 90012

**Counsel for the United States of America**

/s/ *Frank E. Sheeder III*
Counsel for Moving Defendants